Mike Arias (CSB #115385)
  mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
  alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:  (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
  swoodrow@woodrowpeluso.com
Patrick H. Peluso*
  ppeluso@woodrowpeluso.com
Taylor T. Smith*
  tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

Attorneys for Plaintiff and the alleged Classes

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **Edwardo Munoz,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**7-Eleven, Inc.,** a Texas corporation,<br><br>Defendant. | Case No.  2:18-cv-03893-RGK-AGR<br><br><br>**PLAINTIFF EDWARDO MUNOZ'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: August 27, 2018<br>Time: 9:00 a.m.<br>Place: Courtroom 850 |

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iii

I.      INTRODUCTION ...........................................................1

II.     STATEMENT OF FACTS ...............................................1

III.    ARGUMENT ...................................................................3

    A.    7-Eleven's Disclosure is riddled with extraneous information and
          is not, as a matter of fact or law, set forth "in a document that
          consists solely of the disclosure." ........................................3

        1.    7-Eleven's Disclosure unlawfully combines the disclosures
              for consumer reports with the disclosures required for
              investigative consumer reports. ........................................5

        2.    7-Eleven's Disclosure also improperly includes extraneous
              acknowledgement, statements, and agreements. ................12

    B.    7-Eleven fails to address Munoz's allegations that the Disclosure
          is not "clear and conspicuous." ........................................15

    C.    Given that Plaintiff has stated a valid claim under the FCRA, his
          UCL claim should remain as well. ........................................17

IV.     CONCLUSION ...............................................................17

**TABLE OF AUTHORITIES**

*Anderson v. Wells Fargo Bank, N.A.*, 266 F.Supp.3d 1175 (D.S.D. 2017)............12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................3

*Avila v. NOW Health Group, Inc.*, No. 14 C 1551, 2014 WL 3537825 (N.D. Ill. July 17, 2014)...................................................................................................13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008)..........................................3

*Case v. Hertz Corp.*, No. 15-CV-02707-BLF, 2016 WL 1169197 (N.D. Cal. Feb. 26, 2016) ..................................................................................................12, 13

*Gillespie v. Equifax Information Services, L.L.C.*, 484 F.3d 938 (7th Cir. 2007)..........................................................................16

*Harris v. Home Depot U.S.A., Inc.*, 114 F.Supp.3d 868 (N.D. Cal. 2015)..............13

*Kelchner v. Sycamore Manor Health Center*, 305 F.Supp.2d 429 (M.D. Penn. 2004) .................................................................................................................6

*Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140 (D. Ariz. Dec. 14, 2016)..................................................................................12

*Newton v. Bank of America*, Case No. 2:14-cv-03714-CBM-MRWx, 2015 WL 10435907 (C.D. Cal. May 12, 2015)...............................................................15

*Poinsignon v. Imperva, Inc.*, Case No. 17-cv-05653-EMC, 2018 WL 1709942 (N.D. Cal. Apr. 9, 2018) .................................................................................11

*Singleton v. Domino's Pizza, LLC*, Civil Action No. DKC 11-1823, 2012 WL 245965 (D. Md. Jan. 25, 2012) ...........................................................................13

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017).....................................4, 13, 15

*Walker v. Fred Meyer, Inc.*, 2018 WL 2455915 (D. Ore. May 7, 2018)................14

**STATUTES, RULES, SECONDARY SOURCES**

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ..................................... *passim*

FTC Advisory Opinion to Willner (03-25-99) .....................................................6, 8

# I.    INTRODUCTION

7-Eleven, Inc.'s background check disclosure ("Disclosure") is riddled with extraneous information in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA" or "Act"). Yet rather than acknowledge this misstep—let alone take steps to fix it—7-Eleven seeks a quick exit from the case, moving to dismiss on the grounds that, supposedly as a matter of law, none of the extraneous information present in its Disclosure runs afoul of the Act's "standalone" disclosure requirement.

Fortunately for Plaintiff Edwardo Munoz ("Munoz" or "Plaintiff") and other applicants and employees who've been subjected to 7-Eleven's faulty Disclosure, Defendant's attacks lack merit. Unable to show how its Disclosure honors the FCRA's plain language that the disclosure be made "in a document consisting solely of the disclosure," 7-Eleven instead just disagrees with the allegations that the extraneous information present in its Disclosure violate the FCRA. In the process, 7-Eleven impermissibly views the allegations in a light most favorable to itself, discounts long-standing FTC guidance (cautioning against the mixing of "consumer report" disclosures with "investigative consumer report" disclosures and other extraneous information), and ignores the harm to applicants and employees, as recognized by Congress, that flows from information overload caused by extraneous information.

7-Eleven also fails to address Plaintiff's allegations that Defendant violates the FCRA's requirement that the Disclosure be "clear and conspicuous." 7-Eleven's Disclosure is mired in fine print packed onto a single page, contains duplicative and irrelevant statements, and serves to confuse the average applicant.

Accordingly, and as set forth more fully below, Munoz has plausibly stated a claim for relief, and 7-Eleven's motion to dismiss should be denied.

# II.    STATEMENT OF FACTS

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**      - 1 -

1    7-Eleven is a Texas corporation based in Irving, Texas. (Compl. ¶ 9.)

2    Defendant has thousands of employees and job applicants. (Compl. ¶ 23.) During its

3    employment process, 7-Eleven presents its applicants and employees with a

4    document entitled "Disclosure Regarding Background Investigation." (Compl. ¶ 16.)

5    The Disclosure includes unnecessary extraneous information, which renders the

6    document confusing to the average consumer. (Compl. ¶¶ 6, 17.)

7    In January 2018, Plaintiff Munoz applied for a position with 7-Eleven at a

8    store in Los Angeles, California. (Compl. ¶ 14.) During the application process,

9    Plaintiff was required to complete various acknowledgments of company disclosures

10   including the disclosure regarding background and criminal history. (Compl. ¶ 15.)

11   The Disclosure presented to Plaintiff was riddled with additional information,

12   including disclosures for both a consumer report and an investigative consumer

13   report (including details regarding the nature and scope of any investigation), and

14   other extraneous information. (Compl. ¶ 16.) In addition to the investigative

15   consumer report disclosures, the Disclosure also contained: (1) extensive details

16   about Sterling Talent Solutions, its privacy policy, and a reservation of rights

17   regarding prospective consumer reporting agencies, (2) acknowledgments that the

18   signer understands that by signing the disclosure 7-Eleven may revoke a previously-

19   extended offer of employment, (3) an authorization purporting to grant "any party or

20   agency contacted by 7-Eleven" to furnish whatever information that 7-Eleven

21   requests, and (4) other repetitive and unnecessary information. (*Id.*) The inclusion of

22   such extraneous information renders the Disclosure confusing to Munoz and the

23   average consumer such as Plaintiff. (Compl. ¶¶ 6, 17.) Shortly after being hired by 7-

24   Eleven, Plaintiff was fired based on information procured as a result of the

25   disclosure. (Compl. ¶ 19.)

26   Given that such extraneous information nakedly violates the FCRA's dual

27   requirements that the disclosure be both "clear and conspicuous" and in a "document

28

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**          - 2 -

1   that consists solely of the disclosure" Munoz filed the instant lawsuit. As set forth

2   below, none of 7-Eleven's arguments for dismissal have merit and the Court should

3   deny the Motion to Dismiss.

4   **III.    ARGUMENT**

5          "To survive a motion to dismiss, a complaint must contain sufficient factual

6   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

7   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial

8   plausibility when the plaintiff pleads factual content that allows the court to draw the

9   reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A]

10  complaint attached by a Rule 12(b)(6) motion to dismiss does not need detailed

11  factual allegations" but requires "more than labels and conclusions, and a formulaic

12  recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v.*

13  *Twombly*, 550 U.S. 544, 555 (2008) (citations omitted).

14         As set forth below, Munoz has stated a plausible claim for relief and 7-

15  Eleven's Motion to Dismiss, which effectively seeks judgment on the pleadings in its

16  favor, should be denied.

17         **A.    7-Eleven's Disclosure is riddled with extraneous information and is**

18                **not, as a matter of fact or law, set forth "in a document that consists**

19                **solely of the disclosure."**

20         7-Eleven's argument-in-chief is that none of the allegedly extraneous

21  information detailed in the Complaint prevents the Disclosure from "standing alone."

22  To hear 7-Eleven tell it, all of the extra notices supposedly enhance the background

23  check disclosure such that it cannot be said to violate the Act. Such assertions fall

24  apart.

25         The FCRA states in relevant part:

26

27

28  **PLAINTIFF'S RESPONSE IN OPPOSITION**
    **TO DEFENDANT'S MOTION TO DISMISS**        - 3 -

1    Except as provided in subparagraph (B), a person may not procure a
2    consumer report, or cause a consumer report to be procured, for
3    employment purposes with respect to any consumer, unless--

4    (i) a *clear and conspicuous* disclosure has been made in
5    writing to the consumer at any time before the report is
6    procured or caused to be procured, in a document that
7    consists *solely of the disclosure*, that a consumer report
8    may be obtained for employment purposes; and

9    (ii) the consumer has authorized in writing (which
10   authorization may be made on the document referred to
11   in clause (i)) the procurement of the report by that
12   person.

13   15 U.S.C. § 1681b(b)(2)(A) (emphasis added). In analyzing this "stand-alone"
14   disclosure requirement, the Ninth Circuit explained that the term "solely" should be
15   given its ordinary meaning "'[a]lone; singly' or '[e]ntirely; exclusively.'" *Syed v. M-*
16   *I, LLC*, 853 F.3d 492, 500 (9th Cir. 2017) (citing American Heritage Dictionary of
17   the English Language 1666 (5th ed. 2011)). Further, the only exception to the stand-
18   alone disclosure rule is that an employer may include the consumer's authorization
19   on the disclosure. *See Syed*, 853 F.3d at 501 ("[T]he authorization clause is an
20   express exception to the requirement that the document consist 'solely of the
21   disclosure.'").

22   Applied here, 7-Eleven's disclosure plainly violates the FCRA's stand-alone
23   disclosure requirement. As set forth below, the document not only improperly
24   includes disclosures for investigative consumer reports, it contains a blanket
25   authorization allowing 7-Eleven to request information from any person, disclosures
26   regarding a company called Sterling Talent Solutions and its privacy policy, website
27   links to the FTC's summary of FCRA rights, a vague reference to possible, yet
28

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**            - 4 -

1   unnamed, state statutes, an acknowledgement that employees may be terminated

2   based on information received, and other extraneous (and thus unlawful) details.

3       As such, and as explained further below, the Court should deny 7-Eleven's

4   Motion to Dismiss.

5         **1.**    **7-Eleven's Disclosure unlawfully combines the disclosures for**

6                 **consumer reports with the disclosures required for**

7                 **investigative consumer reports.**

8       7-Eleven first takes aim at Munoz's allegations that its Disclosure unlawfully

9   combines the disclosures required for investigative consumer reports with the

10  disclosure that must be provided prior to an employer's obtaining of a consumer

11  report. According to 7-Eleven, while it admittedly mixed the two disclosures

12  together, the combination was "'very limited' in nature." (Def. Mot. at 6.) Such

13  attacks cannot stand.

14      As an initial matter, the FCRA requires two different types of disclosures for

15  consumer reports and investigative consumer reports. The Act defines a consumer

16  report as:

17          any written, oral, or other communication of any information by a

18          consumer reporting agency bearing on a consumer's credit worthiness,

19          credit standing, credit capacity, character, general reputation, personal

20          characteristics, or mode of living which is used or expected to be used

21          or collected in whole or in part for the purpose of serving as a factor

22          in establishing the consumer's eligibility for--

23          (A) credit or insurance to be used primarily for personal, family, or

24          household purposes;

25          (B) employment purposes; or

26          (C) any other purpose authorized under section 1681b of this title.

27

28  **PLAINTIFF'S RESPONSE IN OPPOSITION**
    **TO DEFENDANT'S MOTION TO DISMISS**     - 5 -

15 U.S.C. § 1681a(d)(1). On the other hand, an "investigative consumer report" is defined as:

> a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. However, such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer.

15 U.S.C. § 1681a(e). Hence, as shown by the plain language of the FCRA, the key distinction between the two types of reports is that investigative consumer reports feature the gathering of information through personal interviews. *See Kelchner v. Sycamore Manor Health Center*, 305 F.Supp.2d 429, n.2 (M.D. Penn. 2004) ("By comparison, an investigative consumer report is far more invasive to a consumer's privacy, and the Act provides special protections to consumers when employers seeks to procure such reports.").

Attempts by employers to combine these distinct disclosures into a single document is nothing new. Rather, for 19 years the FTC has warned employers that that, in its view, an employer may only combine a "very limited" investigative consumer report disclosure with a consumer report disclosure to avoid running afoul of the FCRA's stand-alone requirement. (*See* "Advisory Opinion to Willner," a true and accurate copy is attached hereto as Ex. A ("[W]e believe that an employer may combine only a very limited Section [1681d(a)] notice with the general Section

[1681b(b)(2)(A)] notice without running afoul of the latter section's requirement that the required disclosure be in a stand-alone document.").) As Willner explained:

> In the Steer letter, we opined that the employer could also include the authorization required by Section [1681b(b)(2)(A)(ii)], because the authorization would contain limited verbiage and would enhance the Section [1681b(b)(2)(A)(i)] disclosure, rather than detract from it. We believe that a limited Section [1681d(a)] disclosure would also be permissible, on the same theory. For example:

>> A consumer report may be obtained on you for employment purposes. It may be an "investigative consumer report" that includes information as to your character, general reputation, personal characteristics and mode of living. You have a right to request disclosure of the nature and scope of the report, which involves personal interviews with sources such as your neighbors, friends, or associates.

> The first sentence (the general consumer report disclosure for employers) sets forth the disclosure without elaboration, and the second and third sentences (the initial investigative consumer report disclosure) are **sufficiently brief** and in accord with the first sentence that we would consider it as emphasizing the Section [1681b(b)(2)(A)(i)] disclosure, and thus be permissible under that section on the theory set forth in the Steer letter. **However, a Section [1681d(b)] notice setting forth the nature and scope of the investigation would of necessity be much more detailed and would likely be held to overshadow [1681b(b)] disclosure in violation of [1681b(b)(2)(A)(i)]. Therefore, we believe that an employer may**

**combine only a very limited Section [1681d(a)] notice with the general Section [1681b(b)(2)(A)(i)] notice without running afoul of the latter section's requirement that the required disclosure be in a stand-alone document. The surest way for an employer to comply, of course, would be to provide the Section [1681b(b)(2)(A)] notice and the Section [1681d] notice in separate documents.**

(Ex. A (emphasis added).) As such, to the extent that the Court accepts the FTC's conclusion that the mixing of the two types of disclosures is permitted on a limited basis (despite the fact such guidance violates the plain language of the Act), the FTC itself has only endorsed a severely restricted combination.

Rather than stay within the FTC's bounds, 7-Eleven's Disclosure features extensive details regarding the nature and scope of any investigation that may be performed. 7-Eleven's Disclosure stacks up as follows:

| 7-Eleven's Disclosure | Disclosure Approved in Willner |
| --- | --- |
| The report may contain information from federal, state and other agencies, learning institutions, information service bureaus, past/present employers, and other individuals or sources concerning your character, general reputation, personal characteristics, mode of living, work habits and/or credit standing. Such information may include your driving history, your credit history, your education | A consumer report may be obtained on you for employment purposes. It may be an "investigative consumer report" that includes information as to your character, general reputation, personal characteristics and mode of living. You have a right to request disclosure of the nature and scope of the report, which involves personal interviews with sources such as your neighbors, friends, or associates. |

1    history, records of military service,
2    insurance claims involving you,
3    your criminal history and your
4    employment history, including the
5    reasons for termination. The
6    information contained in the report
7    may be obtained from private and/or
8    public record sources, and the
9    investigation can also involve
10   personal interviews with sources
11   such as your current and past
12   employers, friends, family members
13   or associates. Information included
14   in the report will only be requested
15   when permitted by law and where
16   such information is substantially
17   related to the duties and
18   responsibilities of the position for
19   which you are applying. 7-Eleven,
20   Inc. will not obtain information
21   about your credit history, credit
22   worthiness, credit standing, or credit
23   capacity unless permitted by
24   applicable State and local law. You
25   have the right, upon written request
26   made within a reasonable time after
27   receipt of this notice, to request

28   **PLAINTIFF'S RESPONSE IN OPPOSITION**
     **TO DEFENDANT'S MOTION TO DISMISS**        - 9 -

| disclosure of the nature and scope of any investigative consumer report from 7 Eleven, Inc. | |

(*See* 7-Eleven Disclosure, a true and accurate copy of which is attached hereto as Ex. B.) As evidenced by a side-by-side comparison, 7-Eleven's Disclosure is nearly three times longer than the disclosure permitted in Willner such that it overshadows and overwhelms the consumer report disclosure. Compounding the confusion is the fact that the bulk of this extra information is repeated just below the Disclosure in the Authorization, which, in turn, states:

> I have carefully read and understand the preceding Disclosure and the below Authorization form. In connection with and for the duration of my employment (including contract for services) with 7 Eleven, Inc., I authorize and understand that investigative background inquires and/or consumer report inquires may be made about me to the extent permitted by applicable federal, state, and local laws. In connection with these inquires, I consent that 7 Eleven, Inc., may obtain consumer, criminal, driving, education, employment and other reports at any time prior to and/or during my employment to the extent permitted by applicable law. These reports may include information as to my character, general reputation, personal characteristics, mode of living, work habits, credit standing, driving history, credit history, education history, military service record, criminal history and employment history, including the reasons for termination. Further, I understand that, and hereby authorize, 7 Eleven, Inc. to request information from various federal, state and other agencies, learning institutions, information service bureaus, past/present employers, and other individuals or sources which maintain information concerning

1       my past activities. These reports may relate to my driving record,

2       criminal record, credit, civil and other experiences, as well as

3       information in the files of insurance companies pertaining to claims

4       involving me.

5       By electronically signing below, I consent to the preparation of

6       background reports by Sterling Talent Solutions, and to the release of

7       such reports to 7-Eleven, Inc. and its designated representatives for

8       the purpose of assisting 7-Eleven, Inc. in making a determination as to

9       my employment, promotion, retention, contract assignment or for

10      other lawful purposes. I authorize, without reservation, any party or

11      agency contacted by 7-Eleven, Inc. to furnish the above mentioned

12      information; and also understand that any offer of employment made

13      by 7-Eleven, Inc. may be revoked if unacceptable information is

14      found in an investigative background inquiry or consumer report at

15      any time after my employment has already begun subject to applicable

16      law.

17  (*See* 7-Eleven Disclosure, Ex. B.) Of course, it makes little sense to allow an

18  employer to pack the authorization with extraneous information that would

19  otherwise be barred from the disclosure. *See Poinsignon v. Imperva, Inc.*, Case No.

20  17-cv-05653-EMC, 2018 WL 1709942, at *4 (N.D. Cal. Apr. 9, 2018) ("To permit

21  in the same disclosure document an authorization loaded up with other fine print

22  dilutes the force and clarity of the disclosure mandated by the statute.").

23      Hence, 7-Eleven's Disclosure goes well beyond even the permissive rules set

24  forth in the FTC's Willner Advisory Opinion. Put simply, *any* investigative

25  consumer report disclosure violates the plain language of the Act that the consumer

26  report disclosure be made "in a document that consists solely of the disclosure." Yet

27  even if a "very limited" investigative consumer report disclosure were allowed, as

28

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**     - 11 -

1   suggested by the FTC in Willner, 7-Eleven's Disclosure still violates the Act because

2   it is not "very limited"—it contains, *inter alia*, (repeated) voluminous disclosures

3   regarding the nature and scope of any investigation that may ultimately be

4   performed. In short, it is certainly plausible that the inclusion of such extra

5   disclosures violated the Act's plain requirement that the consumer report disclosure

6   "stand-alone".

7          Ultimately, 7-Eleven asks that the Court construe such allegations in a light

8   most favorable to itself. This is of course the opposite of the standard on a Rule 12

9   Motion. As such, 7-Eleven's bid for dismissal based on its self-serving conclusion

10  that the Disclosure "stands-alone" as a matter of law thus falls apart.

11              **2.      7-Eleven's Disclosure also improperly includes extraneous**

12                    **acknowledgement, statements, and agreements.**

13         7-Eleven next argues that the Complaint's allegations of additional extraneous

14  information are permissible under the FCRA because they supposedly make the

15  disclosure more helpful to applicants. (Def. Mot. at 5-7.) In reality, just the opposite

16  is true.

17          "As the FTC has explained, '[t]he reason for requiring that the disclosure be

18  in a standalone document is to prevent consumers from being distracted by other

19  information side-by-side with the disclosure.'" *Case v. Hertz Corp.*, No. 15-CV-

20  02707-BLF, 2016 WL 1169197, at *4 (N.D. Cal. Feb. 26, 2016); *see also Anderson

21  v. Wells Fargo Bank, N.A.*, 266 F.Supp.3d 1175 (D.S.D. 2017) (citation omitted),

22  ("[A]n employer 'does create a real risk of harm' when it uses 'a disclosure that,

23  because it is merely one section of a larger document, results in 'information

24  overload' which inhibits a consumer's ability to agree to a background check with

25  full knowledge of their rights and the potential consequences.'"); *Mix v. Asurion Ins.

26  Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *5 (D. Ariz. Dec.

27  14, 2016), reconsideration denied, No. CV-14-02357-PHX-GMS, 2017 WL 131566

28

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**          - 12 -

1  (D. Ariz. Jan. 13, 2017) ("The same is true for a disclosure that, because it is merely

2  one section of a larger document, results in 'information overload' which inhibits a

3  consumer's ability to agree to a background check with full knowledge of their rights

4  and the potential consequences.")[1]

5      Accepting 7-Eleven's logic would write an exception into the FCRA for an

6  extraneous information that the employer could show actually helped the applicant

7  or employee better understand the disclosure. But the Act contains no such

8  provision. Indeed, "Congress's express exception to the "solely" requirement,

9  allowing the disclosure document to also contain the authorization to procure a

10 consumer report, does not mean that the statute contains other implicit exceptions as

11 well." *See Syed*, 853 F.3d at 501. "[I]n light of Congress's express grant of

12 permission for the inclusion of an authorization, the familiar judicial maxim

13 *expressio unius est exclusio alterius* counsels against finding additional, implied,

14 exceptions." *Id.* As such, the Court should reject 7-Eleven's articulation of the law as

15 a general matter.

16      And more specifically, 7-Eleven ignores the confusing nature of its extra

17 provisions. Again, the Disclosure not only contains an authorization for 7-Eleven to

18 receive information contained in an applicant's consumer report, it goes beyond that

19 _____

20 [1] Not surprisingly, courts across the Country have held that including additional
   extraneous information in an FCRA disclosure runs afoul of the FCRA's stand-alone

21 requirement. *See Case v. Hertz Corp.*, No. 15-CV-02707-BLF, 2016 WL 1169197,

22 at *5 (N.D. Cal. Feb. 26, 2016) (finding information regarding time frames to
   challenge the accuracy, circumstances under which an applicant can receive a report,

23 state specific disclosures, and an acknowledgement that employment decisions were

24 non-discriminatory to be sufficient to state a claim); *see also Harris v. Home Depot
   U.S.A., Inc.*, 114 F.Supp.3d 868, 870 (N.D. Cal. 2015) (finding the inclusion of a

25 liability waiver to be sufficient to state a claim); *see also Singleton v. Domino's

26 Pizza, LLC*, Civil Action No. DKC 11-1823, 2012 WL 245965, at *8 (D. Md. Jan.
   25, 2012) (same); *see also Avila v. NOW Health Group, Inc.*, No. 14 C 1551, 2014

27 WL 3537825, at *2 (N.D. Ill. July 17, 2014) ("[E]ach form contains information that
   is not the disclosure, contrary to the express language of the FCRA").

28

and includes a blanket consent purporting to allow 7-Eleven to receive *any* information from *any* source—even those unlawfully obtained. (*See* Ex. B, at para. 5 ("Further, I understand that, and hereby authorize, 7 Eleven, Inc. to request information from various federal, state and other agencies, learning institutions, information service bureaus, past/present employers, and other individuals or sources which maintain information concerning my past activities.").) The Disclosure also includes information regarding Sterling Talent Solutions, a website link to Sterling's privacy policy, and as a reservation of right for 7-Eleven to use other consumer reporting agencies if it chooses. The Disclosure then provides a link to the FTC's summary of rights despite already providing applicants with a copy of the same summary. Next, the disclosure makes that vague statement that, "State statutory provisions may also provide additional protections for consumer reports." (*See* Ex. B, para. 4.) This only serves to confuse applicants, who are never provided such disclosures or altered to their location. (Compl.¶¶ 6, 17.) The Disclosure also contains an acknowledgment on behalf of the applicant or employee regarding the revocation of employment and the submission of an applicant's date of birth to the consumer reporting agency. Taken as a whole, it is clear that 7-Eleven's Disclosure is not contained "in a document that consists solely of the disclosure."

7-Eleven's attempt to liken its disclosure to the disclosure in *Walker v. Fred Meyer, Inc.*, 2018 WL 2455915 (D. Ore. May 7, 2018), *appeal docketed*, No. 18-35592 (9th Cir. July 20, 2018) falls short. 7-Eleven's disclosure contains substantially more extraneous information than the Fred Meyer disclosure, (*compare* 7-Eleven Disclosure, Ex. B; *with* Fred Meyer Disclosure, a true and accurate copy is attached hereto as Ex. C) including a substantially greater level of detail regarding the nature and the scope of investigative consumer report disclosure than the disclosure at issue in *Fred Meyer*. In any case, *Fred Meyer* is on appeal and is of limited precedential value.

1    Consequently, the Court should find that Plaintiff has plausibly alleged that

2    the inclusion of extraneous information in 7-Eleven's Disclosure violates the

3    FCRA's stand-alone provision.

4    **B.    7-Eleven fails to address Munoz's allegations that the Disclosure is**

5    **not "clear and conspicuous."**

6    Even if 7-Eleven could show that, as a matter of law, its Disclosure "stands

7    alone" so as to comply with Section 1681b(b)(2)(A)(i)'s mandate that the disclosure

8    be set forth "in a document that consists solely of the disclosure", Plaintiff's claims

9    still withstand dismissal because the Disclosure was not "clear and conspicuous" as

10   the Act requires.

11   The question of whether a disclosure is "clear and conspicuous" is an

12   additional requirement under the FCRA and is separate and distinct from the

13   question of whether the document consists "solely" of the disclosure. *See Syed*, 853

14   F.3d at 503 ("Because the question of whether a disclosure is 'clear and

15   conspicuous' within the meaning of Section 1681b(b)(2)(A)(i) is separate from the

16   question of whether a document consists 'solely' of a disclosure, and is not one that

17   is before us here, we decide only that including the waiver violated the statute's

18   'solely' requirement."). This Court has previously opined that, "[t]he FCRA does not

19   define the term 'clear and conspicuous' and there is no binding authority interpreting

20   the term as used in § 1681b. Other courts have interpreted a 'clear and conspicuous'

21   disclosure to mean 'in a reasonably understandable form and readily noticeable to

22   the consumer.'" *Newton v. Bank of America*, Case No. 2:14-cv-03714-CBM-MRWx,

23   2015 WL 10435907, at *7 (C.D. Cal. May 12, 2015) (quoting *Rossman v Fleet Bank*

24   *(R.I.) Nat. Ass'n*, 280 F.3d 384, 390 (3d Cir. 2002)). Likewise, "[a]n accurate

25   disclosure of unclear information defeats the consumer's ability to review the credit

26   file, eliminating a consumer protection procedure established by Congress under the

27

28   **PLAINTIFF'S RESPONSE IN OPPOSITION**
     **TO DEFENDANT'S MOTION TO DISMISS          - 15 -**

1  FCRA." *Gillespie v. Equifax Information Services, L.L.C.*, 484 F.3d 938, 941 (7th
2  Cir. 2007) (analyzing the term "clear" within the context of the FCRA).

3        Here, 7-Eleven's disclosure is not presented in a "reasonably understandable
4  form." Just the opposite is true: 7-Eleven's disclosure is written in fine print and
5  contains needlessly confusing and repetitive statements, acknowledgments, and
6  agreements that only serve to confuse the average consumer. 7-Eleven begins its
7  disclosure by stating, "7-Eleven may order a 'consumer report,' 'background report'
8  or 'investigative consumer report.'" (*See* Ex. B.) Yet, throughout the rest of the
9  disclosure it primarily refers to "the report." (*See, e.g.,* Ex. B.) Applicants are left
10  guessing as to whether a particular statement refers to a "consumer report" or an
11  "investigative consumer report." To be clear, this is not a distinction without a
12  difference. As an example, the disclosure states in part,

13       **The report** may contain information from federal, state and other
14       agencies, learning institutions, information service bureaus,
15       past/present employers, and other individuals or sources concerning
16       your character, general reputation, personal characteristics, mode of
17       living, work habits **and/or credit standing**. Such information may
18       include your driving history, **your credit history**, your education
19       history, records of military service, insurance claims involving you,
20       your criminal history and your employment history, including the
21       reasons for termination. **The information contained in the report**
22       **may be obtained from private and/or public record sources, and**
23       **the investigation can also involve personal interviews with sources**
24       **such as your current and past employers, friends, family members**
25       **or associates.**

26  (*See* Ex. B (emphasis added).) The use of the term "the report"—absent any
27  specification—is problematic in this context because the FCRA places restrictions

28

1  upon where specific factual information regarding a consumer's credit can be

2  obtained via investigative interviews. *See* 15 U.S.C. § 1681a(e).

3      And again, adding to the confusion is 7-Eleven's needless repetition of

4  phrases and descriptions of the nature of the report throughout the Disclosure and

5  authorization.

6      7-Eleven's silence with respect to the unclear and inconspicuous nature of its

7  Disclosure speaks volumes. The simple truth is that Munoz has pleaded facts which,

8  if proven true, would demonstrate that 7-Eleven violated the FCRA's background

9  check disclosure requirements by presenting applicants and employees with

10  documents that were not "clear and conspicuous" as required. As such, Defendant's

11  Motion to Dismiss should be denied on these additional grounds as well.

12      **C.    Given that Plaintiff has stated a valid claim under the FCRA, his**

13          **UCL claim should remain as well.**

14      Plaintiff's UCL claim is admittedly derivative of his FCRA claims. As such, it

15  should survive dismissal for all of the reasons set forth above.

16  **IV.   CONCLUSION**

17      7-Eleven's disclosure is loaded with unnecessary provisions and fails to

18  provide any clarity to applicants at all. As a result, the disclosure runs afoul of the

19  FCRA's stand-alone and clear and conspicuous requirements and plaintiff has stated

20  a plausible claim for relief. Defendant's motion to dismiss should be denied and the

21  case should move forward as a result.

22

23                              Respectfully submitted,

24

25  Dated: August 8, 2018          **Edwardo Munoz**, individually and on behalf
                                    of all others similarly situated,
26

27                          By:    _/s/_  *Patrick H. Peluso*
                                    One of Plaintiff's Attorneys
28  **PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**          - 17 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mike Arias (CSB #115385)
  mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
  alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG &
  TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:  (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
  swoodrow@woodrowpeluso.com
Patrick H. Peluso*
  ppeluso@woodrowpeluso.com
Taylor T. Smith*
  tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on August 8, 2018.

/s/ Patrick H. Peluso

PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS                - 19 -