Mike Arias (CSB #115385)
  mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
  alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:  (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
  swoodrow@woodrowpeluso.com
Patrick H. Peluso*
  ppeluso@woodrowpeluso.com
Taylor T. Smith*
  tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

Attorneys for Plaintiff and the alleged Classes

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **Edwardo Munoz,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**7-Eleven, Inc.,** a Texas corporation,<br><br>Defendant. | Case No.  2:18-cv-03893-RGK-AGR<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: October 9, 2018<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br>Complaint Filed: May 9, 2018 |

1

## I.   INTRODUCTION

2 To hear Defendant 7-Eleven, Inc. ("7-Eleven" or "Defendant") tell it, the

3 Court cannot certify a class in this FCRA background check disclosure case for one

4 central reason: individualized inquiries are supposedly required to determine, for any

5 given class member, whether the extraneous information packed into 7-Eleven's

6 FCRA disclosure was confusing. 7-Eleven claims this fact is needed to demonstrate

7 Plaintiff Edwardo Munoz's ("Munoz" or "Plaintiff") and each class members'

8 Article III standing and, as such, defeats commonality, typicality, adequacy,

9 predominance, and superiority.

10 Fortunately, this attack, which if successful would render FCRA class actions

11 a nullity, fundamentally misunderstands the law and may be readily rejected. Put

12 simply, in a class action, "standing is satisfied if at least one named plaintiff meets

13 the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.

14 2007); *accord Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978–79 (9th Cir.

15 2011); *see also Larson v. Trans Union, LLC*, 201 F.Supp.3d 1103, 1109 (N.D. Cal

16 2016). 7-Eleven's argument in chief ignores this authority and proceeds as if each

17 individual class member must show through separate proofs that they were

18 sufficiently confused so as to have standing.

19 7-Eleven's ancillary arguments fare no better. 7-Eleven bemoans a lack of

20 evidence, but discovery has yet to open—the case management conference is set for

21 October 22, 2018, and the Parties' Rule 26(f) conference is scheduled for October

22 10, 2018[1]. Further, Plaintiff attaches the declaration of Plaintiff Edwardo Munoz,

23 which demonstrates that he has standing and that, contrary to Defendant's assertions,

24 he is willing to participate in fact-gathering and other aspects as needed in this case.

25 (*See* "Munoz declaration," a true and accurate copy of which is attached hereto as

26 Exhibit 1.) 7-Eleven is similarly mistaken in asserting that Munoz is atypical under

27

28

---

[1] Plaintiff served a set of Interrogatories, Requests to Produce, and Requests to Admit by email on July 3, 2018. 7-Eleven's counsel has indicated it will discuss a date for its response during the Rule 26(f) conference.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**  - 1 -

Rule 23(b)(2)(3) because he wouldn't have been hired had he not submitted to the background check. The harm suffered is an invasion of privacy insofar as 7-Eleven unlawfully obtained a background check on him, not simply that he wasn't hired.

Likewise, multiple courts have explained that damages determinations do not present individualized class member issues so as to defeat predominance under Rule 23(b)(3), and 7-Eleven misunderstands that the prospect of small damages awards supports classwide relief, not hundreds of individualized lawsuits. Injunctive relief is also available under the California UCL to California residents.

And perhaps most critically, however, is what 7-Eleven's Opposition fails to say. That is, nowhere does 7-Eleven claim that it used various FCRA Disclosures such that a decision with respect to the lawfulness of Munoz's disclosure wouldn't be relevant to the rest of the Class. 7-Eleven also fails to dispute that its records can be used to identify applicants and employees about whom it procured such reports. 7-Eleven's silence on these issues speaks volumes.

The simple truth is that this is a textbook case for certification. A single proceeding is needed to answer for every Class Member whether 7-Eleven's background check disclosure violated the FCRA's standalone notice provisions. As such, and as explained further below, the Court should certify the proposed Class and Subclass or defer its decision pending the completion of discovery.

## II.   ARGUMENT

### A.   7-Eleven's complaints regarding a supposed lack of evidence should be rejected—discovery has yet to commence and Munoz has provided ample evidence in support of his claims, including now a declaration to demonstrate his standing.

7-Eleven first argues that Munoz hasn't met his evidentiary burden because "the *only* evidence submitted with the motion is a declaration from Plaintiff's lawyer on his own background." (Opp. 7.) This is inaccurate. First, discovery has yet to commence, and 7-Eleven has yet to respond to requests served by email in July

1  2018. It is well-settled that plaintiffs are to be afforded an opportunity to obtain

2  evidence in support of certification through discovery. *See Mantolete v. Bolger*, 767

3  F.2d 1416, 1424 (9th Cir. 1985); *see also Kamm v. California City Development*

4  *Co.*, 509 F.2d 205, 210 (9th Cir. 1975); *see also Gray v. First Winthrop Corp.*, 133

5  F.R.D. 39, 41 (N.D. Cal. 1990) ("An order staying discovery pending class

6  certification would be unworkable, since plaintiffs must be able to develop facts in

7  support of their class certification motion.").[2] 7-Eleven cannot cite a lack of

8  evidence prior to discovery.

9       Second, Plaintiff now attaches the Munoz Declaration, which states clearly

10 that Munoz would not have agreed to a background check had he not been

11 overwhelmed and confused as a result of Defendant's unlawful FCRA disclosure.

12 (*See* Munoz Declaration ¶ 8.)

13      Finally, Munoz has presented other evidence, namely the allegedly unlawful

14 disclosure and the unrebutted allegation that 7-Eleven used the same disclosure with

15 respect to all of its applicants and employees. As such, the Court should reject 7-

16 Eleven's attempt to defeat certification based on a supposed lack of evidence.

17     **B.**    **7-Eleven's attacks on commonality, typicality, adequacy of**

18              **representation, and predominance fall apart—again, Munoz has**

19              **now submitted a declaration, and Article III standing doesn't**

20              **present individualized questions that must be answered for each**

21              **class member.**

22      7-Eleven next attacks certification by claiming there is no commonality (Opp.

23 8), typicality or adequacy of representation (Opp. 9), predominance (Opp. 11-13), or

24 superiority or manageability (Opp. 14-15) because, supposedly, "…it is self-evident

25 that whether or not Plaintiff's assertion [that he and other class members were

26

27   [2] Rule 23 was amended in 2003 to clarify that certification should be decided "at an
early practicable time" as opposed to "as soon as practicable" following the filing of

28 the Complaint out of recognition that proponents should be afforded discovery
regarding class issues.

confused by 7-Eleven's FCRA disclosure] is true requires an individualized inquiry." (Opp. 8.) 7-Eleven also claims that Munoz hasn't shown a willingness to prosecute the case and that he wouldn't have been hired had he refused to undergo a background check. (Opp. 9.) As explained below, these arguments fail.

     **1.**    **7-Eleven's repeated assertion that individualized inquiries are needed to determine whether each class member was actually confused by its FCRA disclosure misunderstands standing in class actions.**

No matter its framing, 7-Eleven's oft-repeated argument that individual inquiries are needed into each class members' relative level of confusion as a result of its unlawful FCRA Disclosure, ostensibly to show that every member of the Class suffered actual legal harm and thus enjoys Article III standing, seriously misunderstands the law. As the court in *Larson v. Trans Union, LLC* aptly explained:

> Given that Larson continues to have Article III standing to bring this case despite *Spokeo*, Trans Union's challenges to my tentative rulings on ascertainability, predominance, and superiority also fail. Each of those challenges is based on Trans Union's contentions that the class should not be certified because absent class members lack Article III standing for the same reasons as Larson, and, similarly, because individualized determinations will have to be made with respect to the concreteness of each absent class member's injury. *See* Trans Union Suppl. Br. at 12-16 (ascertainability); *id.* at 17-19 (predominance); *id.* at 19-20 (superiority). In a class action, however, "standing is satisfied if at least one named plaintiff meets the requirements." (collecting cases). Under this principle, Larson's showing of standing for himself is sufficient to establish standing for the class as a whole *See McLaughlin v. Wells Fargo Bank, NA*, No. 15–cv–02904–WHA, 2016 WL 3418337, at *6 n. 5 (N.D.Cal. June 22,

1    2016) ("[P]laintiff borrower has standing to assert her TILA claim; so
2    too does the class.") (on appeal).
3         Even if this principle did not apply, I am not convinced that
4    individualized determinations on the concreteness of each absent class
5    member's injury would be necessary. Article III standing in this case,
6    just like Trans Union's alleged liability under section 1681g(a), is
7    predicated on the character of the allegedly misleading information in
8    the credit reports disseminated to Larson and absent class members,
9    not on Larson's or absent class members' subjective interpretation of
10   that information. *See* Prior Order at 16-19 (rejecting Trans Union's
11   argument that class certification is inappropriate because the case will
12   "require individualized inquiries into whether each class member
13   actually read the relevant portion of his or her file disclosure, and
14   whether he or she was actually confused by it").
15   201 F.Supp.3d 1103, 1109 (N.D. Cal 2016).
16        This makes sense. If 7-Eleven's "self-evident" theory was accepted, no FCRA
17   class action based on allegedly faulty disclosures could ever be certified because in
18   every case individualized inquiries would be needed regarding whether each class
19   member was actually confused. There is little basis for concluding Congress ever
20   intended to bar FCRA class actions (nothing in the statute indicates they are
21   prohibited). And of course, such FCRA actions are routinely certified where, like
22   here, they present uniform, common questions regarding the legality of the
23   defendant's FCRA disclosure. *See, e.g., Hargrett v. Amazon.com DEDC LLC*, 235
24   F.Supp.3d 1320, 1326-27 (M.D. Fla. 2017); *see also Fosbrink v. Area Wide*
25   *Protective, Inc.*, 325 F.R.D. 474, 479 (M.D. Fla. 2018); *see also Thomas v. FTS*
26   *USA, LLC*, 312 F.R.D. 407, 412 (E.D. Va. 2016).
27        Hence, 7-Eleven's central argument fails. There is no need, per well-
28   established authority, for the Court to engage in individualized inquiries into whether

1   each Class Member was or wasn't confused by 7-Eleven's disclosure. As such, its

2   house of cards, built on the shakiest of foundations, falls apart.

3         2.      **7-Eleven's residual attacks on Munoz's adequacy and**

4                     **typicality fail—Munoz has shown a willingness to pursue this**

5                     **litigation and, like every other Class Member, 7-Eleven**

6                     **unlawfully obtained a consumer report about him.**

7         7-Eleven also claims that Munoz is not a typical or an adequate representative

8   because he hasn't submitted a declaration in support of his Motion. (Opp. 9-10.) The

9   attached Munoz Declaration, and the fact that discovery has yet to commence,

10   undercut such assertions. Munoz has shown his willingness to prosecute the case.

11         7-Eleven additionally asserts that because it is company policy to not hire

12   anyone who refuses to consent to a background check, Munoz cannot show

13   typicality. This is supposedly because as someone who claims he wouldn't have

14   consented to the disclosure had it been compliant with the law, Munoz would've

15   purportedly suffered the same harm that 7-Eleven claims he suffered in this case—

16   not being hired. According to 7-Eleven, the Ninth Circuit recently explained in

17   *Dutta v. State Farm Mut. Auto Ins. Co.*, 895 F.3d 1166, 1175-76 (9th Cir. 2018), that

18   if the plaintiff's harm would've resulted even if the defendant had acted in the

19   manner plaintiff claims the defendant should have acted, then the plaintiff cannot

20   show legal harm. (Opp. 10.) 7-Eleven misconstrues the harm suffered by Munoz,

21   and its reliance on *Dutta* is misplaced. In *Dutta*, the claim was based on inaccuracies

22   in the plaintiff's consumer report. *See id*[3]. However, the court, finding that defendant

23   took adverse action based on separate, accurate information in the report, held that

24   no concrete injury was established because the inaccurate information had no effect

25   on the decision. *See id.* This is in stark contrast to the present case. Here, 7-Eleven

26   procured a consumer report that it had no authority to procure. As a result, sensitive

27   [3]*Dutta* involves a separate provision of the FCRA, § 1681b(b)(3)(A), the adverse

28   action provision. 895 F.3d at 1175-1176. Munoz does not allege a violation of this
provision.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**      - 6 -

1  information was unlawfully in Defendant's possession. This is a violation of

2  Munoz's privacy rights as embodied in the FCRA and is the harm suffered—not the

3  fact that Munoz wasn't hired. Furthermore, unlike *Dutta*, had a clear disclosure been

4  presented the result would have been different because Munoz would not have

5  authorized 7-Eleven to procure the report. (Munoz Decl. ¶ 8.)

6       As such, Defendant's back-up attacks on typicality and adequacy fail as well.

7  **C.      7-Eleven also misunderstands the law on damages (differing**

8  **amounts do not defeat predominance) and superiority—the**

9  **prospect of small awards actually favors certification.**

10      Defendant next argues that differences in each class members' damages

11  calculation creates individualized issues that defeat predominance. (Opp. at 13-14.)

12  This also misstates the law. "[T]he presence of individualized damages cannot, by

13  itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Industries*

14  *Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *see also Vaquero v. Ashley Furniture*

15  *Industries, Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("[T]he 'amount of damages is

16  invariably an individual question and does not defeat class action treatment.'").

17  What matters to the damages inquiry is that the damages stemmed from the same

18  conduct. *See Leyva*, 716 F.3d 514 ("[P]laintiffs must be able to show that their

19  damages stemmed from the defendant's actions that created the legal liability.").

20      Here, the Class Members were all damaged by the exact same course of

21  conduct: 7-Eleven's unlawful procurement of consumer reports. More importantly,

22  given that all class members suffered the same injury—an invasion of privacy—

23  there is no evidence of any extreme variance of damages at all. As such, individual

24  damages questions don't defeat Rule 23(b)(3) predominance.

25      Similarly, small damages don't defeat superiority either. That is, 7-Eleven

26  asserts that a class action would not be superior because the FCRA provides for

27  awards of attorney's fees. (Opp. at 14-16.) But this has it backwards:

28

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**          - 7 -

Within the specific context of the FCRA, federal courts have regularly recognized the superiority of class litigation in suits for statutory damages:

> [I]ndividual losses, if any, are likely to be small-a modest concern about privacy, a slight chance that information would leak out and lead to identity theft. That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest [statutory] damages without proof of injury.
>
> Rule 23(b)(3) was designed for situations such as this [FCRA claim], in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.... The practical alternative to class litigation is punitive damages, not a fusillade of small-stakes claims.

*Holloway v. Full Spectrum Lending*, No. CV 06-5975 DOC (RNBx), 2007 WL 7698843, at \*9 (C.D. Cal. June 26, 2007); *see also Tchoboian v. Parking Concepts, Inc.*, No. SACV 09-422 JVS (ANx), 2009 WL 2169883, at \*9 (C.D. Cal. July 16, 2009) ("The Court is not convinced that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of the FCRA by individual actions of a scale comparable to the potential enforcement by way of class action."); *see also Reynoso v. South County Concepts*, No. SACV07-373-JVS(RCx), 2007 WL 4592119, at \*6 (C.D. Cal. Oct. 15, 2007) (same).

Accordingly, the Court should reject 7-Eleven's attack based on the availability for individual damages awards and legal fees.

**D.**      **Munoz and others may seek to reapply at 7-Eleven, and 7-Eleven hasn't shown that it now uses background check disclosures that comply with the FCRA.**

7-Eleven also contends that Munoz and the Subclass cannot meet the standard for Rule 23(b)(2) certification because they cannot demonstrate a likelihood of future injury. (Opp. at 16-17.) This is inaccurate. Plaintiff seeks a declaration that Defendant's process of procuring consumer reports violates the FCRA and an injunction requiring 7-Eleven to end these practices. Notably, 7-Eleven's disclosure does not purport to grant authority on a one-time basis. Instead, it provides a blanket authorization for 7-Eleven to continue pulling consumer reports. As such, Subclass members are solely at the mercy of 7-Eleven regarding if future reports will be procured from the Disclosure. Accordingly, there is a chance of recurrence, and 7-Eleven should be barred by this Court, with respect to every class member, from procuring additional reports absent its providing of lawful disclosures. As such, 7-Eleven's objections to certification under Rule 23(b)(2) fail as well.

**E.**      **7-Eleven fails to dispute that it used the same disclosure for every Class Member thus rendering appropriate a single adjudication of its lawfulness.**

As a final point, 7-Eleven fails to contest Munoz's central contentions on certification: first, that it used an identical disclosure across all of its locations and, second, that its records can be used to identify class members. With respect to form contracts and disclosures, "the court will, whenever reasonable, interpret the agreement 'as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing' in order to 'effectuate the reasonable expectations of the average member of the public who accepts it.'" *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2014 WL 2734953, at *22 (N.D. Cal. June 13, 2014). Indeed, courts routinely certify class actions where form disclosures or contracts are at issue. *See In re Medical Capital Securities*

*Litigation*, No. SAML 10-2145 DOC (RNBx), 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) ("Courts routinely certify class actions involving breaches of form contracts.") (collecting cases); *see also Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago*, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (cases that call for the interpretation of a form contract tend "to present the classic case for treatment as a class action."); *see also Menagerie Prods. v. Citysearch*, No. CV 08-4263, 2009 WL 3770668, at *10 (C.D. Cal. Nov. 9, 2009) ("When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.").

Likewise, nowhere has 7-Eleven contested Munoz's claim that its records may be used to identify Class Members. Discovery will confirm what already appears to be the case: that 7-Eleven procured background checks on all (or nearly all) of its applicants and employees and that it has records demonstrating as much.

As such, the Court should have little trouble certifying the proposed Class and Subclass here.

## III.    CONCLUSION

The proposed Class and Subclass meet all of the requirements for certification under Rule 23. Plaintiff therefore respectfully requests that the Court grant his motion for class certification.

Respectfully submitted,

Dated: September 25, 2018        **Edwardo Munoz**, individually and on behalf of all others similarly situated,

By:     /s/   *Patrick H. Peluso*
One of Plaintiff's Attorneys

Mike Arias (CSB #115385)
    mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG &
TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:  (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
   swoodrow@woodrowpeluso.com
Patrick H. Peluso*
   ppeluso@woodrowpeluso.com
Taylor T. Smith*
   tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on September 25, 2018.

*/s/ Patrick H. Peluso*

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**             - 12 -