Steven L. Woodrow*
    swoodrow@woodrowpeluso.com
Patrick H. Peluso*
    ppeluso@woodrowpeluso.com
Taylor T. Smith*
    tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

Attorneys for Plaintiff and the alleged Classes

[Additional counsel appearing on signature page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **Edwardo Munoz,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**7-Eleven, Inc.,** a Texas corporation,<br><br>Defendant. | Case No.  2:18-cv-03893-RGK-AGR<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**<br><br>Judge: Hon. R. Gary Klausner<br>Magistrate Judge: Hon. Alicia G. Rosenberg<br><br>Complaint Filed: May 9, 2018<br>Trial Date: July 2, 2019 |

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.      Introduction ........................................................................1

II.     Background Facts...............................................................1

III.    Argument. .........................................................................9

        A.      As a preliminary matter, willfulness under the FCRA encompasses "knowing" as well as "reckless" conduct, and the steps 7-Eleven took to comply (and any related communications) bear on whether its violations were made knowingly or recklessly. .........................11

                1.      Willfulness under the FCRA looks at both knowing and reckless conduct, though recklessness may be decided on the language of the disclosure alone where it violates an unambiguous requirement in the statute...............................11

                2.      If the Court determines that the violation was not unambiguous, 7-Eleven's reliance on pertinent authorities available at the time may be relevant to determining recklessness (although a lack of authority doesn't insulate 7-Eleven from liability)...................................................13

        B.      7-Eleven's drafting and editing of its FCRA disclosure and related communications are relevant to whether 7-Eleven acted knowingly and may be relevant as to whether 7-Eleven acted in reckless disregard of the statute. ...................................................15

        C.      7-Eleven cannot rely on the attorney-client privilege because the "ultimate decision" to implement the form was vested in and made by 7-Eleven's lawyers..................................................16

IV.     Conclusion.........................................................................19

1

## TABLE OF AUTHORITIES

2

*Brezoczky v. Domtar Corporation*, Case No.16-cv-04995-EJD (HRL), 2017 WL

3

3492008 (N.D. Cal. Aug. 15, 2017)....................................................18

4

*Bruno v. Equifax Info. Servs., LLC*, No. 2:17-CV-327-WBS-EFB, 2019 WL 633454

5

(E.D. Cal. Feb. 14, 2019) .......................................................................9

6

*Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) ...................................14

7

*EEOC v. BDO USA*, 876 F.3d 690 (5th Cir. 2017) .........................................10, 16

8

*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007).............................10, 12

9

*Lenz v. Universal Music Corp.*, No. C 07-3783 JF (RS), 2009 WL 3573990 (N.D.

10

Cal. Oct. 30, 2009) ..........................................................................9, 10

11

*ODS Tech., L.P. v. Magna Entertainment Corp.*, Case No. CV 07-32 65-

12

DDP(RCx), 2008 WL 11340376 (C.D. Cal. 2008)............................18

13

*Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615 (D. Nev. 2013) ...................................9

14

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045

15

(2007) .................................................................................................11, 12

16

*Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749 (9th Cir. 2018) ........12, 13, 14, 15

17

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) ........................................11, 12, 14

18

*Tennenbaum v. Deloitte & Touche,* 77 F.3d 337 (9th Cir. 1996)............................9

19

*U.S. v. ChevronTexaco Corp.,* 241 F.Supp.2d 1065 (N.D. Cal. 2002) ............10, 18

20

*United States v. Construction Prods. Research, Inc.*,

21

73 F.3d 464 (2d Cir. 1996)..................................................................18

22

*United States v. Richey*, 632 F.3d 559 (9th Cir. 2011)..........................................10

23

*United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009) ..............................9, 10, 16

24

25

## STATUTES, RULES, SECONDARY SOURCES

26

Fair Credit Reporting Act, 15 U.S.C. § 1681b, *et seq.*........................................1, 13

27

Fair Credit Reporting Act, 15 U.S.C. § 1681n, *et seq.*...........................................11

28

**PLAINTIFF'S MOTION TO COMPEL**                iii

## I.     Introduction

This case—a certified class action consisting of 7-Eleven employees at corporate-owned stores nationwide (dkt. 43)—challenges Defendant 7-Eleven's ("Defendant" or "7-Eleven") form background check disclosure under the Fair Credit Reporting Act, 15 U.S.C. § 1681b, *et seq*. ("FCRA" or "Act"). One of the common issues to be resolved for the Class asks whether the Defendant's alleged FCRA violations, which claim that 7-Eleven failed to provide a disclosure in a document "consisting solely of the disclosure," were willful.

Part of the willfulness inquiry asks whether 7-Eleven knew that its disclosure violated the Act (the other asks whether it acted in reckless disregard of the statute). 7-Eleven's Rule 30(b)(6) witness testified that 7-Eleven relied on both its in-house and outside counsel when drafting the form. 7-Eleven has objected on the basis of the attorney-client privilege to questions about the drafting of the documents themselves and has provided heavily redacted email communications.

While Plaintiff Edwardo Munoz ("Plaintiff" or "Munoz") agrees that 7-Eleven hasn't waived privilege simply by producing these redacted emails or agreeing to allow its Rule 30(b)(6) witness to answer general questions about the drafting of the form, 7-Eleven's Rule 30(b)(6) designee opened the door by testifying that the lawyers were tasked with making the ultimate business decision as to what form would be used. 7-Eleven disagrees, thus necessitating this Motion to Compel.

## II.    Background Facts

Plaintiff alleges that 7-Eleven's FCRA background check disclosure fails to "standalone." On October 18, 2018, the Court certified a class in this case of 7-Eleven employees nationwide who were provided the same FCRA background check disclosure as the form that was provided to Plaintiff. (Dkt. 43.) The Parties have engaged in discovery, including written interrogatories, document requests, and

**PLAINTIFF'S MOTION TO COMPEL**                    1

party depositions. Where there have been objections or disagreement, the Parties have generally resolved such issues through the meet and confer process.

Despite their meet and confer efforts, however, and as set forth more fully below, the Parties have been unable to resolve questions regarding the drafting of 7-Eleven's FCRA form.

*7-Eleven's Responses to Plaintiff's Interrogatories Set No. 1*

Plaintiff served his first set of discovery on July 3, 2018 by email and then again by mail on August 8, 2018. Following several extensions, on December 7, 2018, 7-Eleven served its discovery responses. With respect to Interrogatory No. 1, 7-Eleven answered and objected in pertinent part as follows:

**INTERROGATORY NO. 1:**

Identify and describe all steps taken and efforts made by You to comply with the FCRA or any FTC Advisory Opinions.

**RESPONSE TO INTERROGATORY NO. 1:**

…The disclosure form at issue in this lawsuit complies with 15 U.S.C. § 1681b(b)(2), and is consistent with all relevant FTC Advisory Opinions on that statute as well. Moreover, to date – and as reflected in Plaintiff's own briefing to date – there are no decisions available on the Westlaw database, let alone binding decisions, wherein a form analogous to the one at issue here was found to have violated 15 U.S.C. § 1681b(b)(2)'s requirements.

(*See* "Response of 7-Eleven, Inc. to Plaintiff's Interrogatories Set No. One," a true and accurate copy of an excerpt is attached hereto as Ex. A.) Similarly, Plaintiff's Request to Produce No. 8 had requested, "All Documents sufficient to identify any document or communication (including emails, letters, phone calls among Your employees, vendors, or other personnel) that mentions or references Plaintiff (including Plaintiff's complete personnel file), Your FCRA background check

**PLAINTIFF'S MOTION TO COMPEL**                    2

policies or procedures, or this lawsuit." (*See* "Responses and Objections of 7-Eleven, Inc. to Plaintiff's First Set of Requests for the Production of Documents," a true and accurate copy of an excerpt is attached hereto as Ex. B.) 7-Eleven objected that:

**RESPONSE TO REQUEST TO PRODUCE NO. 8:**

Responding Party objects to this request because it is so overbroad as to be unduly burdensome and oppressive, improperly compound, its scope exceeds the permissible scope of discovery given the amount of documents that could be conceivably responsive to this request without any relevance whatsoever to this lawsuit, and even appears to seek documents that would be protected from disclosure by the attorney-client privilege and/or work product doctrine. Responding Party further objects because to the extent this request seeks documents that could be within the permissible scope of discovery, the request is duplicative of other requests. Responding Party further objects to the phrase "sufficient to identify" on the grounds it is vague and ambiguous.

(Ex. B.)

Plaintiff's counsel sent a meet and confer letter on December 12, 2018, challenging, *inter alia*, 7-Eleven's objections but offering to limit the Interrogatory solely to the FCRA provisions at issue in this case, namely the background check provisions and the steps 7-Eleven took that lead it to use the form at issue. 7-Eleven responded a week later, stating in pertinent part that:

Further, your request for 7-Eleven to disclose "the steps that led [it] to use" [the FCRA form provided to Plaintiff] seeks information that would not have any relevance to this lawsuit because such steps do not have anything to do with (1) whether the Form violated 15 U.S.C. § 1681b(b)(2)(A); or (2) whether 7-Eleven's alleged violation could

1  be considered willful as that term has been defined and interpreted in

2  the FCRA. On this second point, 7-Eleven reminds Plaintiff that the

3  willfulness inquiry asks whether – from an objective standpoint – 7-

4  Eleven either knowingly or recklessly violated 15 U.S.C. §

5  1681b(b)(2)(A) with the Form in light of the existing legal authorities

6  on the matter. *See Shaw v. Experian Info. Solutions, Inc*., 891 F.3d

7  749, 760-61 (9th Cir. 2018). Thus, it is neither here nor there how a

8  company subjectively decided to engage in conduct allegedly

9  violative of the FCRA on this issue. *See id*. Finally, this line of inquiry

10  potentially invades the attorney-client privilege given the breadth of

11  the interrogatory.

12  (*See* "Dec. 19, 2018 Meet and Confer Letter," a complete and accurate copy of

13  which is attached hereto as Ex. C.)

14       Counsel for the Parties thereafter had a lengthy telephonic meet-and-confer on

15  December 21, 2018 during which they discussed these issues. 7-Eleven's counsel

16  provided a helpful recap of the meet and confer in an email sent January 2, 2019.

17  (*See* "Meet and Confer Recap," a true and accurate copy of which is attached hereto

18  as Ex. D.) The Meet and Confer Recap states, with respect to Interrogatory No. 1

19  that:

20  Plaintiff agreed to narrow the scope of this interrogatory to "all steps

21  taken and efforts made by 7-Eleven to comply with the FCRA's

22  provision 15 U.S.C. § 1681b(b)(2)(A) or any FTC Advisory Opinions

23  re same." Plaintiff further agreed that Plaintiff would not take the

24  position that 7-Eleven has waived its attorney-client privilege over

25  communications pertaining to same if 7-Eleven's response notes it did

26  have communications with outside counsel on such matters.

27

28  **PLAINTIFF'S MOTION TO COMPEL**          4

1   Following these agreements, 7-Eleven has agreed to provide a

2   supplemental response.

3   (*See* Meet and Confer Recap, Ex. D.) To date, 7-Eleven has not provided a

4   supplemental response as promised in the Meet and Confer Recap. Nevertheless, on

5   January 15, 2019, Defendant provided a Privilege Log, which it thereafter updated

6   on January 29, 2019. (*See* Defendant 7-Eleven, Inc. Privilege Log as of January 29,

7   2019 ("Privilege Log"), a true and accurate copy of which is attached as Ex. E.) The

8   privilege log notes several conversations between unnamed 7-Eleven employees and

9   unnamed "in-house counsel" and, in several instances "outside counsel." (Privilege

10  Log, Ex. E.)

11  Together with its privilege log served on January 19, 2019, 7-Eleven included

12  a two-page exhibit. The first page is completely redacted while the second page

13  shows an email sent from Natasha Wilborn at TalentWise (7-Eleven's background

14  check provider during that time) to three 7-Eleven employees). (*See* "Redacted

15  Emails," true and accurate copies of which are attached as Ex. F.)  Defendant's

16  Privilege Log for this exhibit states: "Email chain being produced but with

17  redactions of communications in email chain between outside counsel and 7- Eleven

18  employees, including its in-house counsel. As a review of the email chain produced

19  shows, the non-privileged portion of this email chain is the initial email." (Privilege

20  Log, Ex. E.)

21  *7-Eleven's Rule 30(b)(6) Deposition*

22  7-Eleven produced its Rule 30(b)(6) designee, Kristin Cope, for a deposition

23  on January 30, 2019. During the deposition, Ms. Cope was asked the following

24  questions and gave the following answers regarding edits to the FCRA form that was

25  used in this case in 2016:

26  Q. [By Mr. Woodrow] Whose ultimate decision was it to change the form in

27  2016?

28  **PLAINTIFF'S MOTION TO COMPEL**                    5

1    A. That would be our legal, our outside counsel and inside counsel.

2    Q. So the lawyers were empowered with making the ultimate decision?

3    A. Yes. I did not make any changes to the form.

4    Q. Just the lawyers?

5    A. Correct.

6    Q. Did that decision from the lawyers need to be approved by anyone on the

7    business side?

8    A. Not that I recall.

9    (*See* Cope Depo. 126:13-24, true and accurate excerpts of which are attached as Ex.

10   G.)

11         Plaintiff's counsel thereafter started to ask questions about such

12   communications when 7-Eleven's counsel objected and the following exchange

13   occurred, mostly between counsel:

14         MS. TROTTER: I'm going to object. I think you're now getting into

15         attorney-client privileged communication. This is counsel directed and

16         it was information specific to 7-Eleven, so I'm going to object and

17         instruct her not to answer.

18         MR. WOODROW: Okay.

19         MS. TROTTER: The line we had tried to draw here in communications

20         with you and I think what our agreed-upon understanding was, that

21         we'd let her testify broadly without getting into the specifics of any

22         communication because it's always been our position, as

23         communicated to you, that we're maintaining the privilege and that was

24         the compromise that we reached ahead of time.

25         MR. WOODROW: Yeah. I'm trying to figure out if the privilege

26         actually applies. It seems like the legal was tasked with making a

27         business decision here and that opens things up. So what I think we

28   **PLAINTIFF'S MOTION TO COMPEL**                6

1    should do is table those questions, take them to the  court, have them

2    decide any issues on privilege, and then if we need to come back, we

3    can.

4    MS. TROTTER: I don't think this witness has testified as to who made

5    the business decision or would she be qualified to do so.

6    MR. WOODROW: She testified literally two minutes ago that the

7    lawyers made the decision.

8    MS. TROTTER: No, she didn't.

9    MR. WOODROW: Yes, she did.

10   MS. TROTTER: She said -- she testified that she did not make the

11   decision, that she did not change the form and that the lawyers had the

12   ultimate say. That -- that means nothing more than it was the lawyers'

13   version that was implemented.

14   MR. WOODROW: Now you're testifying, Counsel, and that's

15   inappropriate. It's not what she said. It mischaracterizes her testimony.

16   MS. TROTTER: I disagree.

17   (*See* Cope Depo. 128:8 - 129:19, Ex. G.)

18        After an exchange between the attorneys, counsel for 7-Eleven made clear

19   that 7-Eleven disputed Plaintiff counsel's characterization of Ms. Cope's testimony

20   and both sides agreed to table the questions for the Court to consider. (*See* Cope

21   Depo. 131:25 - 132:1-3, Ex. G.)

22        To be sure, during the Rule 30(b)(6) deposition the witness was also asked

23   questions regarding 7-Eleven's privilege log. Ms. Cope testified, in pertinent part,

24   that:

25        Q. [By Mr. Woodrow] Okay. Is -- anywhere in this entry does it state

26        the title or position of the author and recipient of the document?

27        A. In --

28   **PLAINTIFF'S MOTION TO COMPEL**          7

1    Q. In the privileged --

2    A. In Exhibit 7?

3    Q. Correct?

4    A. It does not state the original 7-Eleven employees on the chain, no.

5    Q. Does it state their positions with the company?

6    A. No.

7    Q. Does it state the title that they hold?

8    A. No.

9    Q. Does it state who authored the e-mails?

10   A. No.

11   Q. And does it state who received the e-mails?

12   A. It says, E-mail chain between outside and 7-Eleven employees and

13   including its in-house

14   Q. Right. Does it state the names of any people though?

15   A. No.

16   Q. Okay. And we can go through each one, but I'm just going to ask a

17   blanket question that would – with the exception of the second entry

18   where Kristin Cope is mentioned, do any of the other entries include

19   the author or recipient of the document?

20   A. It does not.

21   Q. And do any of the other entries include the title or position?

22   A. None of the entries include -- title and position would be the same

23   thing to me, so...

24   (Cope Depo, 164:7-25 – 165:1-13.)

25   *Discovery Telephone Conference with Magistrate Judge Rosenberg*

26   The Parties met and conferred regarding their remaining discovery disputes

27   and submitted a Joint Statement of Discovery Disputes to the Court on February 27,

28   **PLAINTIFF'S MOTION TO COMPEL**          8

2019 in accordance with the Court's procedures. The Court held a telephonic hearing the next day, February 28, 2019. Of the three issues presented during the teleconference, the Court ordered briefing on the issue of whether the attorney-client privilege applies to communications between 7-Eleven and its in-house and outside counsel regarding the drafting or editing of its form FCRA background check disclosure.

As explained below, based on the record the Court should find the privilege does not apply to the communications at issue here because they were sought primarily for business, as opposed to legal, advise.

**III.   Argument**

7-Eleven, as the party asserting the privilege, bears the burden of establishing each element of attorney-client privilege. *See Tennenbaum v. Deloitte & Touche,* 77 F.3d 337, 341 (9th Cir.1996); *see also United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) ("After all, '[a] party asserting the attorney-client privilege has the burden of establishing the relationship *and* the privileged nature of the communication'"). For the attorney-client privilege to apply, (1) legal advice must be sought, (2) from a professional legal adviser in his or her capacity as such, (3) with the communication relating to that purpose, (4) made in confidence, (5) by the client. *Lenz v. Universal Music Corp.*, No. C 07-3783 JF (RS), 2009 WL 3573990, at *1 (N.D. Cal. Oct. 30, 2009) (citing *Admiral Ins. Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1492 (9th Cir.1989)).

"Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Ruehle*, 583 F.3d 600, 607; *see also Bruno v. Equifax Info. Servs., LLC*, No. 2:17-CV-327-WBS-EFB, 2019 WL 633454, at *4 (E.D. Cal. Feb. 14, 2019). Counsel's mere inclusion on emails is insufficient to require a finding that the attorney-client privilege applies to the communication. *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 630 (D. Nev. 2013) ("[M]erely copying or 'cc-

1  ing' legal counsel, in and of itself, is not enough to trigger the attorney-client

2  privilege. Instead, each element of the privilege must be met when the attorney-

3  client privilege is being asserted."). Rather, the attorney-client privilege protects

4  confidential communications between attorneys and clients, which are made for the

5  purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir.

6  2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

7       While admittedly a (rebuttable) presumption generally attaches to

8  communications with outside counsel, this isn't the same for communications with

9  the company's own in-house attorneys, "[b]ecause in-house counsel may operate in a

10  purely or primarily business capacity in connection with many corporate

11  endeavors." *U.S. v. ChevronTexaco Corp.,* 241 F.Supp.2d 1065, 1076 (N.D.Cal.

12  2002); *see also Lenz*, No. C 07-3783 JF (RS), 2009 WL 3573990, at *2 (N.D. Cal.

13  Oct. 30, 2009). Accordingly, "[w]ith respect to internal communications

14  involving in-house counsel, [the privilege holder] must make a 'clear showing' that

15  the 'speaker' made the communications for the purpose of obtaining or providing

16  legal advice." *Chevron Texaco Corp.*, 241 F. Supp. 2d at 1076 (citing *In re Sealed

17  Case*, 737 F.2d 94 (D.C. Cir. 1984). This requires a showing "that the 'primary

18  purpose' of the communication was securing legal advice." *Ruehle*, 583 F.3d 600,

19  607; *see also EEOC v. BDO USA*, 876 F.3d 690, 696 (5th Cir. 2017) ("Additionally,

20  'communications by a corporation with its attorney, who at the time is acting solely

21  in his capacity as a business advisor, [are not] privileged,' nor are documents sent

22  from one corporate officer to another merely because a copy is also sent to

23  counsel.").

24       As set forth below, based on the facts at hand the Court should find that the

25  attorney-client privilege does not apply to communications between Ms. Cope or

26  other 7-Eleven employees on the one hand and 7-Eleven's in-house and outside

27  counsel regarding the drafting/editing of 7-Eleven's FCRA form in 2016. Both

28  **PLAINTIFF'S MOTION TO COMPEL**       10

outside and in-house counsel were tasked with making the "ultimate decision" and the draft in-house counsel approved was implemented without any further edits from anyone. Because such communications may reveal whether 7-Eleven acted willfully under the FCRA, the Court should compel the disclosure of such information for use in this case.

**A.    As a preliminary matter, willfulness under the FCRA encompasses "knowing" as well as "reckless" conduct, and the steps 7-Eleven took to comply (and any related communications) bear on whether its violations were  made knowingly or recklessly.**

As explained below, willfulness under the FCRA requires an examination of both knowing and reckless violations. Where a violation is of an unambiguous requirement in the statute, recklessness may be decided based on the language of the offensive disclosure alone. Otherwise, recklessness requires showing that a defendant's interpretation was "a violation under a reasonable reading of the statute's terms" and "shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." To be sure, while authorities available at the time may be used by a defendant to show its interpretation was objectively reasonable, a dearth of pertinent authority does not immunize a defendant from liability.

**1.    Willfulness under the FCRA looks at both knowing and reckless conduct, though recklessness may be decided on the language of the disclosure alone where it violates an unambiguous requirement in the statute.**

Statutory and punitive damages are available under the FCRA only where a defendant "willfully fails to comply" with the statute. 15 U.S.C. § 1681n(a); *see also Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 447, 199 L. Ed. 2d 340 (2017); *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68,

PLAINTIFF'S MOTION TO COMPEL                    11

127 S. Ct. 2201, 2215, 167 L. Ed. 2d 1045 (2007). A willful violation of the FCRA occurs where a defendant knowingly or recklessly violated the FCRA. *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 760–61 (9th Cir. 2018) (citing *Safeco*, 551 U.S. at 57, 127 S.Ct. 2201). "Recklessness is an objective standard." *Id.* A defendant acts in reckless disregard when its action is both "a violation under a reasonable reading of the statute's terms" and "shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69, 127 S.Ct. 2201; *see also Syed*, 853 F.3d at 503; *see also Shaw*, 891 F.3d at 760.

With respect to recklessness, the Ninth Circuit explained in *Syed* that "where a party's action violates an unambiguous statutory requirement, that fact alone *may* be sufficient to conclude that its violation is reckless, and therefore willful."[1] *Syed*, 853 F.3d at 506 n.7 ("[I]n tort law, from which the *Safeco* Court drew its interpretation of willfulness under the FCRA, recklessness may be determined by objective evidence alone." (citing Keeton et al., *supra*, § 34 at 213–14)). As the Court in *Syed* concluded, "Because the statute <u>unambiguously</u> bars M-I's interpretation, whether or not M-I actually believed that its interpretation was correct is immaterial." 853 F.3d at 505–06 (Emphasis added) (citing *Reardon v. ClosetMaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606, at *11 (W.D. Pa. Dec. 2, 2013) (holding that there was "no issue of material fact" about whether defendant violated 15 U.S.C. § 1681b(b)(2)(A) willfully and granting plaintiff summary judgment)).

---

[1] As explained in Syed, *Safeco* did not foreclose the possibility that a party's subjective interpretation of the FCRA may be relevant in some circumstances. 551 U.S. at 70 n.20, 127 S.Ct. 2201; *see also In re Seagate Tech., LLC*, 497 F.3d 1360, 1384 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, —— U.S. ——, 136 S.Ct. 1923, 195 L.Ed.2d 278 (2016) (a FCRA defendant's "subjective beliefs may become relevant ... if [the plaintiff] successfully makes [a] showing of objective unreasonableness").

1    Hence, if the violation of the statute is unambiguous, the Court can decide the

2    issue of recklessness as a matter of law such than an inquiry regarding the

3    Defendant's subjective understanding isn't required. This does not foreclose,

4    however, the possibility that the recklessness inquiry may require a look into the

5    subjective understanding of the Defendant.[2]

6    **2.    If the Court determines that the violation was not unambiguous, 7-**

7    **Eleven's reliance on pertinent authorities available at the time may**

8    **be relevant to determining recklessness (although a lack of**

9    **authority doesn't insulate 7-Eleven from liability).**

10   7-Eleven may counter that the issue of whether its FCRA violations were

11   willful can be adjudicated based upon the wording of the disclosure *in light of*

12   *relevant legal authorities in effect at the time.* Again, during the Parties meet and

13   confer process, 7-Eleven indicated that "the willfulness inquiry asks whether – from

14   an objective standpoint – 7-Eleven either knowingly or recklessly violated 15 U.S.C.

15   § 1681b(b)(2)(A) with the Form in light of the existing legal authorities on the

16   matter." (*See* Dec. 19, 2018 Meet and Confer Letter, Ex. C (*citing Shaw*, 891 F.3d at

17   760-61.).) 7-Eleven seemingly misconstrues *Shaw*, where the Ninth Circuit found no

18   FCRA violation at all, let alone a willful one. 891 F.3d at 760 ("As we conclude that

19   Experian did not violate the FCRA, Appellants' 15 U.S.C. § 1681n claim must fail.")

20   Despite this, the *Shaw* Court went on to explain that, even assuming that Experian

21   violated the FCRA, Shaw failed to show that any violation by Experian was willful:

22

23   ───────────

     [2] It is important to note that the issue of whether recklessness may be decided from

24   an objective standpoint based on the violation of an unambiguous statutory provision
     alone says little regarding the other avenue for proving willfulness—*knowing*

25   violations. Knowledge is fundamentally subjective, and while proving recklessness
     *may* be accomplished based on the offending language alone, such an inquiry doesn't

26   reveal whether a defendant actually *knew* that its interpretation ran afoul of the
     statute. Put simply, whereas proving recklessness may in some cases hinge on the

27   offensive provisions alone, proving a defendant's *knowledge* necessarily requires a
     look beyond the disclosure itself.

28   **PLAINTIFF'S MOTION TO COMPEL**              13

1   A defendant acts in reckless disregard when its action both is "a
2   violation under a reasonable reading of the statute's terms" and "shows
3   that the company ran a risk of violating the law substantially greater than
4   the risk associated with a reading that was merely careless." *Id.* at 69,
5   127 S.Ct. 2201.

6   As to Appellants' first two claims, there was no statute, CFPB guidance,
7   or case law that "might have warned [Experian] away from the view it
8   took" or informed Experian that its approach to reporting short sales was
9   objectively unreasonable. *See id.* at 70, 127 S.Ct. 2201. To the contrary,
10  the CFPB informed Experian that it had investigated the short sale-
11  foreclosure problem and discovered that the underlying problem was not
12  due to inaccurate reporting by furnishers or CRAs. This agency guidance
13  suggests Experian's conduct, even if it were a violation of the FCRA,
14  was not objectively unreasonable and therefore not reckless. *See id.* at 70
15  & n.20, 127 S.Ct. 2201.

16  *Shaw,* 891 F.3d at 760–61. Hence, *Shaw* relied on pertinent agency guidance—
17  which supported Experian's position—to find that Experian's interpretation was
18  never objectively unreasonable in the first place.

19  To be clear, this does not mean, as 7-Eleven seems to imply, that "a lack of
20  'guidance,'…itself render[s] [a defendant's] interpretation reasonable." *Syed*, 853
21  F.3d at 505–06 ("Despite the apparent dearth of guidance on the issue at the time M-
22  I procured Syed's consumer report, M-I's inclusion of a liability waiver in the
23  statutorily mandated disclosure document comports with no reasonable
24  interpretation of 15 U.S.C. § 1681b(b)(2)(A). Therefore, we conclude that MI's
25  interpretation was 'objectively unreasonable.'")[3]; *see also Cortez v. Trans Union,*

26  _____
27  [3] Indeed, *Syed* took care to explain that, "Notwithstanding that we are the first federal appellate court to construe Section 1681b(b)(2)(A), this is not a 'borderline case.' *See Cortez*, 617 F.3d at 722. An employer "whose conduct is first examined

28  PLAINTIFF'S MOTION TO COMPEL                    14

1  *LLC*, 617 F.3d 688, 721 (3d Cir. 2010) (concluding that, in the FCRA context, a

2  "lack of definitive authority does not, as a matter of law, immunize [a party] from

3  potential liability" for statutory damages.). Rather, *Shaw*'s dicta merely indicates

4  that, to the extent the Court determines the violation is not unambiguous and not a

5  "close call," a defendant may point to relevant guidance around at the time to

6  support its assertion that its interpretation was not "objectively unreasonable."

7        As explained below, in light of these principles, the Court should find that 7-

8  Eleven's communications regarding the drafting and editing of its FCRA disclosure

9  are relevant to the issue of willfulness.

10  **B.     7-Eleven's drafting and editing of its FCRA disclosure and related**

11  **communications are relevant to whether 7-Eleven acted knowingly and**

12  **may be relevant as to whether 7-Eleven acted in reckless disregard of the**

13  **statute.**

14        It is entirely possible that, given the extent to which 7-Eleven's FCRA

15  disclosure combines the disclosures necessary for "investigative consumer reports"

16  together with the disclosures required for "consumer reports," the Court will

17  ultimately conclude (following summary judgment or trial) that the disclosure

18  unambiguously violates the FCRA so as to constitute a reckless violation as a matter

19  of law. In such a case, based on the authorities explained above, no additional

20  evidence of willfulness will be needed.

21        On the other hand, in the event the Court determines that the violation was not

22  unambiguous or a "clear case," the recklessness inquiry will turn to the question of

23  whether 7-Eleven's decision to use the form was a "violation under a reasonable

24  reading of the statute's terms" and "shows that the company ran a risk of violating

25  the law substantially greater than the risk associated with a reading that was merely

26

27  under [a] section of the Act should not receive a pass because the issue has never been decided." *Id.*

28  **PLAINTIFF'S MOTION TO COMPEL**                    15

careless." In that case, as 7-Eleven's own reading of *Shaw* seems to suggest, any cases and FTC advisory opinions in effect at the time, particularly those that 7-Eleven may have relied on, may bear on whether 7-Eleven's interpretation was reasonable. Determining this issue, and whether 7-Eleven's violations were committed knowingly, requires going beyond the language of the disclosure itself and weighing it objectively in light of available authorities—it requires disclosure of 7-Eleven's internal discussions regarding the drafting and use of the form and consideration of/reliance upon any such authorities.

7-Eleven has objected to producing such discussions based on the assertion of the attorney-client privilege. As set forth below, 7-Eleven cannot meet its burden of showing that the attorney-client privilege applies here because 7-Eleven's witness testified the ultimate decision to use the form was vested in 7-Eleven's attorneys and 7-Eleven has yet to produce any evidence showing that this was not actually the case.

**C.    7-Eleven cannot rely on the attorney-client privilege because the "ultimate decision" to implement the form was vested in and made by 7-Eleven's lawyers.**

As set forth above, to maintain the attorney-client privilege, 7-Eleven must show that the communications with its lawyers was for "the 'primary purpose' of…securing legal advice" *Ruehle*, 583 F.3d 600, 607; *see also EEOC*, 876 F.3d at 696 ("Additionally, 'communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged,' nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel."). As set forth in the Background Facts, 7-Eleven's designee testified that:

> Q. [By Mr. Woodrow] Whose ultimate decision was it to change the form in 2016?

1    A. That would be our legal, our outside counsel and inside counsel.

2    Q. So the lawyers were empowered with making the ultimate decision?

3    A. Yes. I did not make any changes to the form.

4    Q. Just the lawyers?

5    A. Correct.

6    Q. Did that decision from the lawyers need to be approved by anyone on the

7    business side?

8    A. Not that I recall.

9  (*See* Cope Depo. 126:13-24, true and accurate excerpts of which are attached as Ex.

10  G.) While 7-Eleven's counsel stated that "she testified that she did not make the

11  decision, that she did not change the form and that the lawyers had the ultimate say.

12  That -- that means nothing more than it was the lawyers' version that was

13  implemented," (Cope Depo. 128:8 - 129:19, Ex. G) that doesn't accurately

14  characterize the testimony. The witness clearly testified, at least twice, that the

15  "ultimate decision" to change the form in 2016 (and use the form provided to

16  Munoz) belonged to "our legal, our outside counsel and inside counsel." That means

17  the lawyers were not merely consulted for the purpose of securing legal advice—

18  they were tasked with making a business decision as to the changing and use of the

19  form. Indeed, even 7-Eleven's counsel's objection acknowledges that the testimony

20  was that "the lawyers had the ultimate say."

21      As such, 7-Eleven has not met its burden of showing that the attorney-client

22  privilege applies. 7-Eleven hasn't shown that Ms. Cope misspoke or that she meant,

23  by saying "Not that I recall" in response to being asked if anyone on the business

24  side had to sign off on the lawyers' decision, that she did not personally recall who at

25  7-Eleven may have had to approve of the form but that *someone* was tasked with

26  granting such approval to the lawyers' draft. Likewise, 7-Eleven hasn't identified

27  anyone within the organization supposedly had the job of approving of what the

28  **PLAINTIFF'S MOTION TO COMPEL**         17

1   lawyers had ultimately decided. Without such evidence, it appears that 7-Eleven
2   delegated the authority of redrafting and approving the changes to its FCRA form in
3   2016 to its in-house and outside counsel. Because such attorneys were involved in
4   making the ultimate business decision, their communications with 7-Eleven
5   employees are not subject to the privilege. *See, e.g., U.S. v. ChevronTexaco Corp.*,
6   241 F.Supp.2d 1065, 1076 (N.D. Cal. 2002) ("[W]here, as here, the attorneys not
7   only served as legal advisors but also helped implement the business transaction, we
8   cannot simply assume that every communication involving in-house counsel that
9   related to this transaction was made primarily for the purpose of securing legal
10  advice.").

11          Furthermore, to the extent 7-Eleven is going to argue that it relied on
12  authorities like FTC guidance or caselaw in effect at the time when it modified its
13  FCRA disclosure back in 2016 and that such authorities show 7-Eleven's
14  interpretation of the statute was not objectively unreasonable, 7-Eleven cannot claim
15  that communications that may reveal the consideration of such authorities are
16  shielded from production by virtue of the attorney-client privilege. Put simply, to the
17  extent 7-Eleven has put such authorities at issue, any communications, even those
18  with its lawyers, are not protected from disclosure. *See Brezoczky v. Domtar*
19  *Corporation*, Case No.16-cv-04995-EJD (HRL), 2017 WL 3492008, at *1 (N.D.
20  Cal. Aug. 15, 2017) ("the doctrine of implied waiver ensures that the party invoking
21  the privilege does not gain an unfair advantage by asserting claims the opposing
22  party cannot combat without access to the privileged documents." (citing *Apple, Inc.*
23  *v. Samsung Electronics Co., Ltd.*, 306 F.R.D. 234, 241 (N.D. Cal. Apr. 3, 2015))).

24          As a final point here, 7-Eleven's privilege log is inadequate. In general, a
25  privilege log must "include[] the title or position of the author and recipient of the
26  document. *See ODS Tech., L.P. v. Magna Entertainment Corp.*, Case No. CV 07-32
27  65-DDP(RCx), 2008 WL 11340376 (C.D. Cal. 2008) (citing Model Form 11:A, set

28

1  forth in The Rutter Group Practice Guide, Federal Civil Procedure Before Trial); *see*

2  *also United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d

3  Cir.), *cert. denied*, 519 U.S. 1927 (1996) ("The privilege log should: [¶] identify

4  each document and the individuals who were parties to the communications,

5  providing sufficient detail to permit a judgment as to whether the document is at

6  least potentially protected from disclosure.").

7      Here, the privilege log fails to specify who was a party to each

8  communication. As such it fails to properly preserve privilege, and Defendant should

9  be compelled to produce unredacted communications regarding the editing of the

10 FCRA form in 2016, even communications involving 7-Eleven's lawyers because

11 they were tasked with making the ultimate business decision regarding the changes

12 to the form.

13 **IV.   Conclusion**

14      The Court should grant Plaintiff's Motion to Compel. The willfulness inquiry

15 under the FCRA asks, in part, whether 7-Eleven knew that its disclosure violated the

16 FCRA. Because 7-Eleven's outside and inside counsel were tasked with making the

17 ultimate decision on the FCRA form to be used, the Court should find that the

18 attorney-client privilege does not apply to communications between 7-Eleven

19 employees and 7-Eleven's in-house and outside counsel regarding the drafting of 7-

20 Eleven's FCRA form in 2016. Such communications may reveal whether 7-Eleven

21 acted willfully under the FCRA.

22

23 Dated: March 8, 2019                    **Edwardo Munoz**, individually and on behalf

24                                         of all others similarly situated,

25                                         By:   _/s/ Steven L. Woodrow_

26                                         One of Plaintiff's Attorneys

27                                         Mike Arias (CSB #115385)

28 **PLAINTIFF'S MOTION TO COMPEL**                    19

mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
  alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:  (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow
  swoodrow@woodrowpeluso.com
Patrick H. Peluso
  ppeluso@woodrowpeluso.com
Taylor T. Smith
  tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Attorneys for Plaintiff Edwardo Munoz and the Class*

1

## CERTIFICATE OF SERVICE

2      The undersigned hereby certifies that a true and correct copy of the above

3  titled document was served upon counsel of record by filing such papers via the

4  Court's ECF system on March 8, 2019.

5                                                    /s/ Steven L. Woodrow

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION TO COMPEL**