# **EXHIBIT C**



LAWYERS

610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE 949.717.3000
FACSIMILE 949.717.3100

CALLJENSEN.COM

December 19, 2018

OUR FILE NUMBER
SEV05-13

**BY EMAIL**

Steven L. Woodrow
Woodrow & Peluso
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
swoodrow@woodrowpeluso.com

    Re:    *Munoz v. 7-Eleven, Inc. et al.*
           U.S. District Court, Central District Case No. 2:18-cv-03893 RGK (AGR)

Dear Counsel:

    This responds to your December 12, 2018 letter, and also initiates the meet-and-confer process on the topics identified in Plaintiff's Rule 30(b)(6) deposition notice. Defendant 7-Eleven, Inc. ("7-Eleven") is raising those issues now in the hopes the parties will be able to resolve them in advance of the agreed-upon January 23, 2019 date for that deposition.

    After you have a chance to review this letter, we propose holding a telephonic call between counsel to attempt to resolve these matters. As noted by email on December 13, 2018, we can be available for such a call on December 20 or 21, 2018. If neither of those dates work, we will need to set a time for early January 2019.

***7-Eleven's Special Interrogatory Responses:[1]***

    *Interrogatory No. 1:*

    This interrogatory asked that 7-Eleven "[i]dentify and describe all steps taken and efforts made by [7-Eleven] to comply with the FCRA or any FTC Advisory Opinions." 7-Eleven's response is based on the issues actually within the scope of this lawsuit – i.e. whether its use of the background check disclosure form ("Form") Plaintiff executed violated the 15 U.S.C. § 1681b(b)(2)(A), and, even if so, whether such a violation could be considered willful as that term is understood under the FCRA.

---

[1] For ease of reference, 7-Eleven is following the order Plaintiff used in his December 12, 2018 letter.

LITIGATION  •  REAL ESTATE  •  EMPLOYMENT  •  INTELLECTUAL PROPERTY  •  CLASS ACTIONS

7-Eleven notes that the interrogatory is incredibly, improperly, overbroad given (1) the FCRA consists of numerous statutory provisions (i.e. 15 U.S.C. §§ 1681-1681x); and (2) just two subsections of the FCRA – 15 U.S.C. §§ 1681b(b)(2)(A) and 1681n(a) – are relevant to Plaintiff's claims. Your letter appears to recognize this as it adds the provision "regarding the FCRA's background check provisions," which is not in the actual interrogatory. However, even then, this limitation only minorly addresses the overbreadth problem as this lawsuit involves just one issue relating to the FCRA's background check provisions – i.e. whether 7-Eleven willfully violated the FCRA with the one-page Form because it contained too much information. Further, your request for 7-Eleven to disclose "the steps that led [it] to use" seeks information that would not have any relevance to this lawsuit because such steps do not have anything to do with (1) whether the Form violated 15 U.S.C. § 1681b(b)(2)(A); or (2) whether 7-Eleven's alleged violation could be considered willful as that term has been defined and interpreted in the FCRA. On this second point, 7-Eleven reminds Plaintiff that the willfulness inquiry asks whether – from an objective standpoint – 7-Eleven either knowingly or recklessly violated 15 U.S.C. § 1681b(b)(2)(A) with the Form in light of the existing legal authorities on the matter. *See Shaw v. Experian Info. Solutions, Inc.*, 891 F.3d 749, 760-61 (9th Cir. 2018). Thus, it is neither here nor there how a company subjectively decided to engage in conduct allegedly violative of the FCRA on this issue. *See id.* Finally, this line of inquiry potentially invades the attorney-client privilege given the breadth of the interrogatory.

7-Eleven is willing to continue meet-and-confer efforts on this interrogatory, but Plaintiff's December 12, 2018 letter does nothing to rectify the above deficiencies or propose any possible solution to this impasse.

*Interrogatory No. 2*:

This interrogatory asks 7-Eleven to identify those individuals who executed the Form, and 7-Eleven agreed to do so in its response. However, because such information is private to class members, 7-Eleven agreed to provide this information to the third-party administrator as the relevance this information has stems from the need to provide notice to the class, so this approach ensures an appropriate balance between keeping this generally confidential information confidential while, at the same time, completing the necessary notice process.

Your December 12, 2018 letter demands that the objections made to this interrogatory be withdrawn, but it provides no substantive explanation as to why they should be. In addition, not one of the decisions Plaintiff's letter cites on this interrogatory supports the claim that a plaintiff and his counsel should be given the private contact information of over 57,000 people directly and without limitation in a case such as this. Further, Plaintiff's claim that he needs this contact information is directly at odds with the positions he has taken about how it will not be necessary for this case to proceed with direct involvement from class members. Finally, 7-Eleven notes that providing this information to the administrator rather than Plaintiff and his counsel directly does not – in any way, shape, or form – prevent the class notice from being disseminated, and will also enable any class member who wishes to speak to Plaintiff and his counsel the means by which to do so. Therefore, although 7-Eleven remains willing to continue meet-and-confer efforts on this interrogatory, Plaintiff's December 12, 2018 letter does not substantiate his claim

Steven L. Woodrow
December 19, 2018
Page 3

that he and his counsel should be given the contact information of class members directly and without limitation.

*Interrogatory No. 3:*

This interrogatory asked 7-Eleven to "[i]dentify and describe the location and manner in which applicant and employee personnel files are maintained." 7-Eleven answered this interrogatory with respect to the Form as that is the only possible relevance 7-Eleven's personnel files have to this lawsuit. Therefore, Plaintiff's claim that this response is non-responsive is wrong – rather, the response provided is responsive to the extent this interrogatory sought information within the permissible scope of discovery.

Plaintiff's December 12, 2018 letter does not cite to any authority that would support his claim that this information has any relevance. In addition, although the letter speculates that the information may "bear on the manageability of maintaining this case as a class action" and predominance, it does not provide any explanation as to why that might be. Moreover, neither of those issues came up during briefing on certification. As such, although 7-Eleven remains willing to continue meet-and-confer efforts on this interrogatory, Plaintiff's December 12, 2018 letter does not substantiate his claim that this interrogatory seeks potentially relevant information beyond that already provided in 7-Eleven's response.[2]

*Interrogatory No. 4:*

This interrogatory asked 7-Eleven to "[i]dentify and describe any training process that employees receive regarding procuring or relying on background checks when making employment decisions under the FCRA." Once again, this interrogatory is absurdly overbroad as this lawsuit only involves the (small) portion of the FCRA relating to the disclosure requirements that a company must follow in order to obtain such a check. Therefore, 7-Eleven's response here is based on the topics actually at issue in this lawsuit, i.e. the use of the Form, and Plaintiff's claim that it is non-responsive lacks merit. Moreover, Plaintiff's December 12, 2018 letter once again fails to provide any meaningful substantiation as to why this information is within the permissible scope of discovery. This is unsurprising because – as noted above – whether the Form complies with 15 U.S.C. § 1681b(b)(2)(A) and whether any violation of same was willful is based on an objective inquiry. As such, although 7-Eleven remains willing to continue meet-and-confer efforts on this interrogatory, Plaintiff's December 12, 2018 letter does not substantiate his claim that this interrogatory seeks potentially relevant information beyond that already provided in 7-Eleven's response.

*Interrogatory No. 5:*

Plaintiff's December 12, 2018 letter claims 7-Eleven "fails to answer" this interrogatory. That is a factually false statement. Moreover, although your letter asks for a response that notes

---

[2] 7-Eleven notes as a practical matter one possible solution to this issue is for 7-Eleven to agree to produce a Rule 30(b)(6) deponent on this topic, which is Topic No. 10 in the Rule 30(b)(6) notice already provided.

Steven L. Woodrow
December 19, 2018
Page 4

whether the Form was provided in person, online, or by mail to Plaintiff, and the date the form was provided to Plaintiff, such specifics are not directly requested in this interrogatory. If that is the information Plaintiff is seeking, it is ascertainable from Plaintiff's personnel file. In any event, 7-Eleven will provide a supplemental response to this interrogatory with that information so long as it resolves the disputes concerning this interrogatory.

*7-Eleven's Requests For Production Responses:*

*Preliminary Statement:*

Simply put, Plaintiff's December 12, 2018 letter attempts to make a mountain out of a molehill on this statement. The statement merely notes numerous default rules that would apply even without it. Moreover, no documents have been withheld from production based on the preliminary statement.

*Request for Production No. 1:*

This request demanded 7-Eleven produce "[a]ll documents sufficient to identify 7-Eleven's complete hiring policies and procedures in effect when Munoz applied to work for 7-Eleven." The request is absurdly overbroad. There are only three issues to address in this lawsuit following the Court's certification order:[3] (1) whether the Form complies with 15 U.S.C. § 1681b(b)(2)(A); (2) presuming the Form does not comply with 15 U.S.C. § 1681b(b)(2)(A), whether 7-Eleven's violation of it with the Form was willful; and (3) whether Plaintiff was in fact confused by the Form as he claims. This request does not have anything to do with any of these three issues. Further, as phrased, it would require 7-Eleven to produce *every* document it has related to hiring across the country.

Plaintiff's December 12, 2018 letter implicitly recognizes these defects as it makes a proposal to limit the scope of the request. Even so, as phrased, the proposal is ambiguous. To the extent the proposal is that 7-Eleven needs to produce Plaintiff's hiring paperwork, 7-Eleven is willing to do so. However, if the proposal includes a broader scope than that, the parties need to engage in further meet-and-confer efforts on this obviously overbroad request.

*Request for Production No. 2:*

This request demanded that 7-Eleven produce "[a]ll documents sufficient to identify all of [7-Eleven's] policies and procedures for complying with the FCRA." Again, the request is absurdly overbroad because, as phrased, it would require the production of every document that has any bearing on the FCRA whatsoever. Moreover, as also noted above, this lawsuit is not some general audit into 7-Eleven's FCRA compliance procedures. Rather, it is about (1) whether the Form complies with 15 U.S.C. § 1681b(b)(2)(A), i.e. just one subsection of the

---

[3] 7-Eleven notes that it respectfully disagrees with this ruling – especially with its failure to appreciate the need to ascertain whether a person truly was confused by the Form prior to being able to award a statutory penalty under the FCRA. Even so, given the case's current procedural posture, the three issues stated herein are what remains at issue.

Steven L. Woodrow
December 19, 2018
Page 5

FCRA, which goes from 15 U.S.C. § 1681 – 1681x; (2) presuming the Form does not comply with 15 U.S.C. § 1681b(b)(2)(A), whether 7-Eleven's violation of it with the Form was willful as that term is defined by 15 U.S.C. § 1681n(a); and (3) whether Plaintiff was in fact confused by the Form as he claims. Therefore, the request is absurdly overbroad even if it had not been awkwardly phrased. Further, and more tellingly, Plaintiff's December 12, 2018 letter – which conspicuously fails to cite to any authorities on this request – indicates a fundamental misunderstanding of how to analyze whether an alleged violation of the FCRA is willful. Plaintiff's subjective view of 7-Eleven's "compliance with other portions of the FCRA" has nothing to do with willfulness. Rather, this issue is focused solely on whether – from an objective standpoint – 7-Eleven's use of the Form constituted a knowing or reckless violation of the FCRA based on the relevant legal authorities at the time the Form was used. *See Shaw*, 891 F.3d at 760-61. Finally, this line of inquiry potentially invades the attorney-client privilege given the breadth of the request.

In sum, although 7-Eleven remains willing to continue meet-and-confer efforts on this request, Plaintiff's December 12, 2018 letter does not substantiate his claim that this request seeks potentially relevant documentation or that it is not absurdly overbroad. Therefore, a supplemental response will not be provided at this time.

*Request for Production No. 3:*

This request demanded that 7-Eleven produce "[a]ll documents sufficient to identify all of [7-Eleven's] policies and procedures for complying with the FCRA." Again, due to its awkward phrasing, this request would compel the production of every single document 7-Eleven has concerning its personnel files. Moreover, the request seeks the same information as that being sought in an interrogatory – which is doubly improper given the information is well beyond the permissible scope of discovery in this lawsuit in any event. Further, 7-Eleven notes the following statement is not well taken: "[t]he reality is that this case is a class action, and the manner by which 7-Eleven maintains its files speaks to continued manageability of the Class, the ability to identify class members, and damages." This statement does not come anywhere near close to explaining the reality of the situation. Rather, the reality is (1) personnel files have nothing to do with the manageability of the class – as shown by the fact, *inter alia*, the issue was not raised even once during *any* of the briefing on class certification; (2) personnel files and identifying class members have nothing to do with one another – as 7-Eleven has stated, it is able to identify who has executed the Form and is willing to provide those individuals' contact information to the third-party administrator to be utilized for the Class notice; and (3) the damages Plaintiff is seeking in this lawsuit are preset, statutory damages, of $100 per person, so the damages being sought in and personnel files have no relevance to one another.

*Request for Production No. 4:*

This request demanded that 7-Eleven produce "[a]ll documents sufficient to identify any training of [7-Eleven's] personnel with respect to **_any aspect of the FCRA_** . . ." The awkward phrasing once again would make any document that has anything to do with the FCRA responsive. Moreover, even if it was not awkwardly phrased, the request once again seeks documentation that has nothing whatsoever to do with the issues in this lawsuit given the entire

Steven L. Woodrow
December 19, 2018
Page 6

FCRA is not at issue here. Further, as noted above, Plaintiff's contention that willfulness under the FCRA is ascertained by some limitless audit into all FCRA compliance is wrong. Rather, as the Ninth Circuit recently made clear, that inquiry here will be focused on whether 7-Eleven's use of the Form – from an objective standpoint – constituted a knowing or reckless violation of the FCRA in light of the then-existing FCRA authorities relevant to that issue. *See Shaw*, 891 F.3d at 760-61. Although 7-Eleven remains willing to continue meet-and-confer efforts on this request, Plaintiff's December 12, 2018 letter does not substantiate his claim that this request seeks potentially relevant documentation or that it is not improperly overbroad. As such, a supplemental response will not be provided at this time.

*Request for Production No. 5:*

This request demanded that 7-Eleven produce "[a]ll documents sufficient to identify" class members in this lawsuit. As such, this awkward phrasing would have required 7-Eleven to produce essentially any and all documents it has on any of the putative class members. Further, even if not awkwardly phrased, as 7-Eleven's objections note, the request is improper because the relevant information being sought is duplicative to Interrogatory No. 2, and, as noted above, that information will be provided to the class action administrator for notice purposes. Finally, 7-Eleven notes that the explanation provided above regarding why Plaintiff's claim that he and his counsel should be provided with this private information directly and without limitation lacks merits applies equally to this request.

*Request for Production No. 6:*

As previously stated via email correspondence, the 57,000 number given in the interrogatories refers to every person who executed the Form.

*Request for Production No. 7:*

This request demanded that 7-Eleven produce "[a]ll documents sufficient to identify any emails, letters, phone calls, or other communications exchanged between Plaintiff and 7-Eleven." Due to this awkward phrasing, the call of the request seeks for more than just those communications that exist between 7-Eleven and Plaintiff in document form, which is why 7-Eleven's response is limited to the actual issues within the scope of this lawsuit. Your letter indicates that Plaintiff is seeking the communications he has had with 7-Eleven that 7-Eleven has in document form. Further meet-and-confer communications need to be taken to clarify what exactly Plaintiff is seeking.

*Request for Production No. 8:*

Plaintiff's December 12, 2018 letter characterization of what is being sought by this request is not tethered to the actual request. In light of that, the parties will need to meet-and-confer on this request further telephonically so Plaintiff can have an opportunity to make clear what he is actually seeking in this request.

Steven L. Woodrow
December 19, 2018
Page 7

*Request for Production No. 9:*

As noted in the response, 7-Eleven is not aware of any insurance coverage it may have for the claims alleged in this lawsuit, which, unsurprisingly, is why no coverage has been sought.

*Request for Production No. 10:*

This request demanded that 7-Eleven produce "[a]ll documents sufficient to identify the size of your legal department and annual budget for legal matters." The December 12, 2018 letter's claim that this phrasing limits the scope of what is being sought is inaccurate as the call of this request – due to its awkward phrasing – would require the production of essentially every document relating to 7-Eleven's legal department. Moreover, Plaintiff's contention that this request "goes directly to 7-Eleven's willfulness" – which, again, is not supported by even one citation to any legal authority – shows Plaintiff has a fundamental misunderstanding of what constitutes willfulness under the FCRA. As noted numerous times above, that inquiry will focus on whether – from an objective standpoint – 7-Eleven's use of the Form constituted a knowing or reckless violation of 15 U.S.C. § 1681b(b)(2)(A) in light of the then-existing relevant legal authorities.

*Request for Production No. 11*:

Once again, this request attempts to obtain contact information of class members without limitation. As noted above, Plaintiff's claim that he and his counsel should receive such information without limitation lacks merit.

*Request for Production No. 13:*

This request demanded that 7-Eleven produce "[a]ll documents sufficient to identify any provision of 7-Eleven's franchise agreement that mentions, references, or discussed the procurement of consumer reports regarding potential and current employees of the franchisees." As this lawsuit does not pertain to employees of franchisees, the request is not reasonably drawn to lead to the discovery of admissible evidence. Further, although your letter tries to relate this to the willfulness prong, you fail to provide any authority to support this position.

*Request for Production No. 14:*

This request demanded that 7-Eleven produce "[a]ll documents sufficient to identify the total number of Persons about whom 7-Eleven procured a consumer report regarding after [sic] they signed the Disclosure Form." The request's awkward phrasing makes an already impermissibly overbroad request even more impermissibly overbroad, and 7-Eleven has already provided this number.

Steven L. Woodrow
December 19, 2018
Page 8

*Request for Production No. 15:*

This request demanded that 7-Eleven produce "[a]ll documents sufficient to identify internal communications related to the use of Sterling Talent Solutions." The request is obviously improperly overbroad as it is not limited to the actual issues in this lawsuit, and, as Plaintiff knows, 7-Eleven's business relationship with Sterling involves far more than just the use of the Form. Although 7-Eleven remains willing to meet-and-confer over an appropriate scope to this request, given its current phrasing a supplemental response will not be provided.

*Request for Production No. 18:*

No witness statements have been obtained beyond those made at the direction of this firm following the initiation of this lawsuit. As such, no further information concerning privilege issues needs to be provided. Moreover, this request – which asks for any statements of any possible witnesses – is insanely overbroad, but the December 12, 2018 letter completely ignored that obvious defect.

**7-Eleven's Responses To The Requests For Admission**

*Request to Admit No. 1:*

In this request, Plaintiff asked 7-Eleven to admit to Plaintiff's paraphrasing of the Form. One of the objections 7-Eleven made was that it was improper for Plaintiff to seek such an admission when the one-page Form speaks for itself. The December 12, 2018 letter misinterprets that as a response when it was an objection, and 7-Eleven will stand on the objection.

*Request to Admit No. 2*:

To the extent this request sought information relating to disclosure forms not executed by Plaintiff was improper and sought information beyond the permissible scope of discovery. As such, there is no need to re-answer. As set forth in the Complaint, Plaintiff defined the class to include all persons who signed the same form as Plaintiff.

**Plaintiff's Rule 30(b)(6) Deposition Notice:**

*Topic No. 4:*

In this topic, Plaintiff has asked for Rule 30(b)(6) testimony regarding its "policies, processes, and procedures for following the FCRA." However, as noted above, the FCRA goes from 15 U.S.C. §§ 1681-1681x, and this lawsuit only pertains to two subsections in two of those statutes (15 U.S.C. §§ 1681b(b)(2)(A) and 1681n(a)). As such, a Rule 30(b)(6) deponent will only be produced on matters regarding those FCRA provisions actually at issue in this lawsuit.

Steven L. Woodrow
December 19, 2018
Page 9

*Topic No. 6:*

This topic inserts a request for Rule 30(b)(6) testimony on the size, budget, and access to counsel of 7-Eleven's legal department. Such matters are irrelevant to this lawsuit because, as explained above, based on its current posture there are only three issues in play: (1) whether the Form complies with 15 U.S.C. § 1681b(b)(2)(A); (2) presuming the Form does not comply with 15 U.S.C. § 1681b(b)(2)(A), whether 7-Eleven's violation of it with the Form was willful; and (3) whether Plaintiff was in fact confused by the Form as he claims. As such, absent an agreement on a more narrow and appropriate scope for this topic, a Rule 30(b)(6) deponent will not be provided on this issue.

*Topic Nos. 11, 14, and 15:*

The only form at issue in this lawsuit is the Form. Therefore, a Rule 30(b)(6) deponent will not be provided regarding any other forms 7-Eleven may have used.

*Topic No. 13:*

For the reasons explained above, Plaintiff's attempt to involve franchise agreements in this lawsuit is improper, and Rule 30(b)(6) testimony will not be provided on the issue.

Best,

Julie R. Trotter
For Call & Jensen
A Professional Corporation

DJD:tam