Julie R. Trotter, Bar No. 209675
 jtrotter@calljensen.com
Kent R. Christensen, Bar No. 253815
 kchristensen@calljensen.com
Delavan J. Dickson, Bar No. 270865
 ddickson@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000
Fax:  (949) 717-3100

Attorneys for Defendant 7-Eleven, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARDO MUNOZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>7-ELEVEN, INC., a Texas corporation,<br><br>Defendant. | Case No.  2:18-cv-03893 RGK (AGR)<br><br>**DEFENDANT 7-ELEVEN, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**<br><br>Date: March 28, 2019<br>Time: 10:00 a.m.<br>Judge: Hon. Alicia G. Rosenberg<br>Courtroom: 255<br><br>Complaint Filed:         May 9, 2018<br>First Am. Comp. Filed:  July 9, 2018<br>Trial Date:              July 2, 2019 |

SEV05-13:2432572_2:3-15-19

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 4

II. BACKGROUND ................................................................................................... 4

    A. Overview Of Plaintiff's Claims ................................................................. 4

    B. Overview Of 7-Eleven's Rule 30(b)(6) Deposition ................................... 4

    C. Overview Of This Issue As Plaintiff Presented It During The February 28, 2019 Telephonic Conference With The Court .................................................................................................... 7

III. DISCUSSION ....................................................................................................... 7

    A. The Attorney-Client Privilege Applies To The April 2016 Communications Referenced During 7-Eleven's Rule 30(b)(6) Deposition ........................................................................ 7

    B. Plaintiff's Arguments To The Contrary Lack Merit ................................... 9

    C. Plaintiff's Accusations Regarding 7-Eleven's Privilege Log Are Outside The Scope Of This Motion, Lack Merit, And Are An Attempt To Run Roughshod Over The Court's Meet-and-Confer Rules ........................................................................................ 12

IV. CONCLUSION ................................................................................................... 14

# TABLE OF AUTHORITIES
**Federal Cases**

*Admiral Ins. Co. v. U.S. Dist. Court. For Dist. Of Az.*,
   881 F.2d 1486 (9th Cir. 1989).................................................................................8

*Brezoczky v. Domtar Corp.*,
   2017 WL 3492008 (N.D. Cal. Aug. 15, 2017) ........................................................11

*Bruno v. Equifax Info. Servs., LLC*,
   2019 WL 633454 (E.D. Cal. Feb. 14, 2019).....................................................*passim*

*Phillips v. C.R. Bard, Inc.*,
   290 F.R.D. 615 (D. Nev. 2013)..........................................................................13, 14

*United States v. ChevronTexaco Corp.*,
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) ....................................................8, 10, 11, 13

**Federal Statutes**

15 U.S.C. § 1681b(b)(2)(A) ...........................................................................................5, 12

**Federal Rules**

Fed. R. Civ. P. 26(b) ............................................................................................................9

## I. INTRODUCTION

Plaintiff's Motion is improper for two reasons.

First and foremost, Plaintiff's Motion seeks to eviscerate the attorney-client privilege. Without any justification – and no waiver of the privilege by 7-Eleven – Plaintiff asks the Court to order 7-Eleven to disclose *every single communication* it had with counsel in 2016 regarding the background check disclosure form ("Form") at issue in this Fair Credit Reporting Act ("FCRA") lawsuit. Because such communications are plainly protected by the attorney-client privilege, Plaintiff's Motion must be denied.

Second, Plaintiff's Motion goes well beyond the scope of the issue Plaintiff presented to the Court. Specifically, Plaintiff had defined the issue to the Court as follows: "[d]eposition questions regarding any advice 7-Eleven received from its internal or external counsel regarding the use or editing of its form FCRA background check disclosure." (*See* Dkt. No. 54 at 2; Dkt. No. 55.) However, rather than file a motion on this issue, Plaintiff's Motion – in a blatant bait-and-switch – seeks a blanket order requiring a disclosure of *all communications*, not just responses to the discrete deposition questions asked. Accordingly, separate and apart from Plaintiff's improper attempt to make a mockery of the attorney-client privilege, Plaintiff's Motion is not procedurally proper because it seeks an order on issues he never presented to the Court.

## II. BACKGROUND

### A. Overview Of Plaintiff's Claims

Plaintiff's claims against 7-Eleven are premised on his allegation that 7-Eleven willfully violated the FCRA with its Form because it knew, or was reckless in not knowing, that the Form would not be considered a standalone document that is clear and conspicuous. (*See*, *generally*, Dkt. No. 23.)

### B. Overview Of 7-Eleven's Rule 30(b)(6) Deposition

Recognizing that questions seeking communications protected by the attorney-client privilege would likely be an issue in the Rule 30(b)(6) deposition based on Plaintiff's deposition notice, 7-Eleven's counsel initiated meet-and-confer discussions

with Plaintiff's counsel regarding this notice *well over a month before that deposition was set to take place*. (*See* Declaration of Julie R. Trotter ("Trotter Decl."), ¶ 2.) During these meet-and-confer efforts, Plaintiff agreed he "would not take the position that 7-Eleven has waived its attorney-client privilege over communications pertaining to [all steps taken and efforts made by 7-Eleven to comply with the FCRA's provision 15 U.S.C. § 1681b(b)(2)(A) or any FTC Advisory Opinions re same] if 7-Eleven's response notes it did have communications with outside counsel on such matters."[1] (*See id.*, ¶ 3, Exs. A and B.) Despite this agreement, Plaintiff attempted to kick the door open during deposition and now seeks to renege on his promise.

7-Eleven's Rule 30(b)(6) deponent was Kristin Cope, who is a Senior Human Resource Information Systems Analyst for 7-Eleven. (*See id.*, ¶ 4, Ex. C at 20:17-23.) It is telling that although Plaintiff claims Ms. Cope "opened the door" to Plaintiff obtaining *every, single, communication* involving 7-Eleven's internal *and* external counsel regarding the Form from 2016, counsel failed to provide the Court with all of the relevant deposition testimony on this issue. (*See*, *e.g.*, Dkt. No. 57-1 at 1:18-20, 5:26-6:10, 19:16-20.) 7-Eleven has rectified that wrong here. (*See* Trotter Decl., ¶ 4, Ex. C at 111:24-120:13, 125:14-126:24.)

As a review of *all* of the relevant testimony on this issue shows, 7-Eleven's Rule 30(b)(6) deponent testified as follows:

- The vendor 7-Eleven relies on for background checks – Sterling – provided 7-Eleven's HR department with a form in 2013, which was modified following

---

[1] Plaintiff's motion spends an odd amount of time reviewing written discovery responses, and even takes a potshot at 7-Eleven for not having provided Plaintiff with some supplemental responses to same. (*See* Dkt. No. 57-1 at 2:6-5:20.) However, not only are 7-Eleven's written discovery responses beyond the scope of what the Court ordered the Parties to address on this Motion, Plaintiff's contention regarding the supplemental responses failed to provide the Court with *crucial* context. Specifically, 7-Eleven informed Plaintiff on February 12, 2019 that it would provide supplemental responses once the parties' disputes regarding that written discovery were resolved rather than do so piecemeal. (*See* Trotter Decl., ¶ 5, Ex., D.) Plaintiff never expressed any disagreement with this approach, and, at this time, there remain issues in dispute on that discovery. (*See id.*)

efforts by 7-Eleven's in-house counsel working with 7-Eleven's outside counsel (*see id.* at 111:24-115:2);

- The final draft of this form was one provided by 7-Eleven's outside counsel in 2013 (*see id.* at 115:3-5);
- 7-Eleven made changes to this form in April 2016 – which resulted in the Form at issue in this lawsuit – and these changes were made by external counsel working with 7-Eleven's in-house counsel (*see id.* at 115:6-14, 116:7-15);
- 7-Eleven's counsel instructed Ms. Cope not to answer questions to the extent it would have resulted in her disclosing attorney-client communications regarding these 2016 changes (*see id.* at 115:15-116:6 and 117:21-118:6);
- In April 2016, the people at 7-Eleven communicating regarding the changes to the Form were Ms. Cope, a HR Service Center Supervisor at 7-Eleven, one of 7-Eleven's in-house counsel, and outside counsel for 7-Eleven (*see id.* at 116:16-118:6, 118:18-24);
- When the deponent was communicating with in-house counsel regarding the form during this time she was seeking legal advice from that in-house counsel (*see id.* at 118:7-10);
- Similarly, when the deponent was communicating with outside counsel during this time she was seeking legal advice from him as well (*see id.* at 118:11-13);
- The changes made to the form in April 2016 were the result of "a legal decision as opposed to a business decision" (*see id.*, 118:14-17);
- Ms. Cope did not recall having any discussions with the HR Service Center Supervisor during this time regarding the Form that did not include in-house and/or outside counsel (118:18-119:13);
- When asked again, Ms. Cope reiterated that when she communicated with in-house counsel during this time it was "always for the purpose of seeking [her] legal advice" (*see id.*, 119:14-22); and

- The ultimate decision to make changes to the form in April 2016 was made by attorneys (*see id.*, 125:14-126:24).

Plaintiff's entire motion is premised on this last bullet-point – in fact, it is the *only* deposition testimony Plaintiff has provided with this Motion.

### C. Overview Of This Issue As Plaintiff Presented It During The February 28, 2019 Telephonic Conference With The Court

As the Court is aware, when Plaintiff presented this issue to the Court both in the agenda his counsel drafted in advance of that conference and during it, his argument was premised exclusively on the contention 7-Eleven's Rule 30(b)(6) deponent had opened the door to Plaintiff obtaining 7-Eleven communications with counsel regarding changes to the Form that were made in April 2016. (*See* Dkt. No. 54; *see also* Trotter Decl., ¶ 6, Ex. E.) Not once did he make any argument regarding the privilege log that had been served on Plaintiff's counsel a month before the telephonic conference. (*See* Trotter Decl., ¶ 7, Ex. F.)

In fact, Plaintiff's counsel has only raised the privilege log with 7-Eleven's counsel directly one time, and, even then, his counsel was equivocal on whether Plaintiff was even claiming he believed it was deficient. (*See* Trotter Decl., ¶ 5, Ex. D (in February 5, 2019 email correspondence, Plaintiff's counsel states "7-Eleven's privilege log *may* be deficient").) In response, 7-Eleven's counsel stated that although it disagreed with the contention the privilege log provided was deficient, counsel was "happy to discuss further" any "specific communication where [Plaintiff] believe[d] he need[ed] further information" on the privilege log. (*See id.*) Plaintiff's counsel *never* accepted this request. (*See id.*)

### III. DISCUSSION

### A. The Attorney-Client Privilege Applies To The April 2016 Communications Referenced During 7-Eleven's Rule 30(b)(6) Deposition

In federal question cases such as this,

SEV05-13:2432572_2:3-15-19                                  - 7 -
DEFENDANT 7-ELEVEN, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

> The attorney-client privilege exists: (1) where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, and (8) unless the protection be waived.

*See Bruno v. Equifax Info. Servs., LLC*, 2019 WL 633454, *4 (E.D. Cal. Feb. 14, 2019) (internal quotation marks omitted); (*see also* Dkt. No. 57-1 at 9:23-25 (citing *Bruno* approvingly).) Moreover, in the context of a corporate client, "[t]he Supreme Court [has] 'held that the privilege applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation.'" *See id.* (quoting *Admiral Ins. Co. v. U.S. Dist. Court. For Dist. Of Az.*, 881 F.2d 1486, 1492 (9th Cir. 1989)). Finally, as Plaintiff's motion acknowledges, "[c]ommunications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice." *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1073 (N.D. Cal. 2002); (*see also* Dkt. No. 57-1 at 10:7-8.)

As a review of the deposition testimony detailed in the above background section shows, the attorney-client privilege clearly applies to the communications with counsel Plaintiff seeks to have disclosed regarding the 2016 changes to the Form. This is because 7-Eleven's Rule 30(b)(6) deponent testified unequivocally that: (1) the communications at issue regarding the April 2016 changes to the Form were communications seeking legal advice from attorneys for legal – as opposed to business – purposes; (2) the only parties privy to those communications were 7-Eleven corporate employees in their role as such (including in-house counsel) and their outside counsel; and (3) 7-Eleven asserted the privilege over these communications throughout that testimony. (*See, generally*, Trotter Decl., ¶ 4, Ex. C at 111:24-120:13, 125:14-126:24; *see, e.g., id.* at 117:1-20 and 118:18-24 (noting communications regarding 2016

changes to form were between Deponent, a HR Service Center Supervisor at 7-Eleven, an in-house lawyer of 7-Eleven, and outside counsel), *id.* at 118:7-13 and 119:14-22 (noting purpose of such communications were to seek legal advice), *id.* at 118:14-17 (noting edits to the form at this time were legal – not business – decisions), *id.* at 119:10-22 (noting such communications always involved counsel), and *id.* at 115:17-23 and 118:1-6 (assertion of privilege).)  As such, there can be no reasonable dispute that the basis for maintaining the privilege over communications involving counsel regarding the April 2016 changes to the Form is established on the record before the Court.

**B.     Plaintiff's Arguments To The Contrary Lack Merit**

Plaintiff's Motion makes three arguments for why the Court should issue a blanket waiver requiring the disclosure of *every, single, communication* 7-Eleven had with counsel in 2016 regarding the Form following 7-Eleven's Rule 30(b)(6) deposition.

The first is Plaintiff's contention that these communications would be relevant to determining whether 7-Eleven acted willfully in violating the FCRA with the Form on the presumption the Form does violate the FCRA.  (*See* Dkt. No. 57-1 at 11:6-16:8.)  Although Plaintiff spends more than five pages pontificating on how he believes willfulness will be judged in this case, it is much to do about nothing because these communications being relevant to the willfulness issue does not mean they should be required to be disclosed.  *See Bruno*, 2019 WL 633454, *3 (in rejecting an analogous argument regarding willfulness under the FCRA and attorney-client privileges, noting that "[w]hile attorney-client communications may be highly relevant to plaintiff's claims for violation of the FCRA, absent a waiver plaintiff is not entitled to discovery containing such communications").  In fact, all communications withheld due to a privilege are relevant in a lawsuit because otherwise they would not be discoverable *even if* the privilege did not attach.  *See*, *e.g.*, Fed. R. Civ. P. 26(b) ("Partings may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim

1  or defense") (italics added). Therefore, this argument does not support Plaintiff's
2  request for a blanket order requiring the disclosure of all communications 7-Eleven had
3  with counsel in 2016 regarding the Form.
4      Plaintiff's second argument is to claim because the attorneys made the "ultimate
5  decision" on what changes to make to the language in the Form in 2016, this somehow
6  opened the door to these communications becoming discoverable. (*See* Dkt. No. 57-1 at
7  16:18-18:10.) Tellingly, Plaintiff has failed to cite to even one decision that supports
8  this made up "ultimate decision" exception to the attorney-client privilege. (*See id.*)
9  Rather, at best, he has conflated his own imagined "ultimate decision" exception with
10 the general rule that the attorney-client privilege does not apply to communications with
11 an in-house attorney where the primary motivation is about obtaining business advice
12 rather than legal advice. *See ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076; (*see also*
13 Dkt. No. 57-1 at 9:7-9 (claiming that the communications at issue were "primarily for
14 business, as opposed to legal, advice" despite Ms. Cope's testimony that was
15 completely to the contrary) and 18:5-10 (citing *ChevronTexaco Corp.* approvingly).)
16 However, as noted in the above background section, 7-Eleven's Rule 30(b)(6) deponent
17 testified unequivocally that the communications Plaintiff now seeks were made with the
18 sole intent to seek legal advice, not business advice. (*See* Trotter Decl., ¶ 4, Ex. C at
19 114:6-25, 118:7-119:22.) Specifically:

> Q: When you were working on this disclosure form and you were talking to Allison [who is in-house counsel], were you seeking Allison's legal advice?
>
> A: Yes.
>
> Q: And when you guys were communicating with Mr. Welter [who is outside counsel], were you seeking Mr. Welter's legal advice?
>
> A: Yes.
>
> Q: Is it your testimony that the edits made to the form was a legal decision as opposed to a business decision?
>
> A: Correct.

SEV05-13:2432572_2:3-15-19 - 10 -
DEFENDANT 7-ELEVEN, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

…

Q: So, so far as you can recall, all your conversation with Chrissy [who is a HR Service Center Supervisor for 7-Eleven] about the FCRA form or any edits to be made to the FCRA form were in Allison's presence?

A: Correct. Or through e-mail communications with Allison.

Q: And always for the purpose of seeking Allison's legal advice?

A: Correct.

(*See id.*; *see also*, *generally*, *id.* at 111:24-120:13, 125:14-126:24.)  Plaintiff's motion does not challenge the accuracy of any of the above testimony, and the very decision Plaintiff relies on for this argument explicitly states that communications with in-house counsel are covered by the attorney-client privilege when it is clear those communications were "for the purpose of obtaining or providing legal advice from the lawyer."  *See ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076.  Here, not only is the record clear on this point, as the testimony highlighted above shows it is uncontroverted.  As such, Plaintiff's second argument on this issue lacks merit as well.[2]

Finally, Plaintiff's third argument is mere speculation that there is a *possibility* 7-Eleven will rely on communications that would be protected by the attorney-client privilege to argue the merits of this case.  (*See* Dkt. No. 18:11-23.)  Tellingly, in making this argument, Plaintiff has not identified even one instance where 7-Eleven has put such communications at issue, which is an obvious and necessary element of making an implied waiver argument.  (*See id.*); *see also Brezoczky v. Domtar Corp.*, 2017 WL 3492008, *1-*3 (N.D. Cal. Aug. 15, 2017) (rejecting implied waiver argument against a party when she had not placed any communications with counsel at issue); (Dkt. No. 57-1 at 11:11-23 (relies on this decision for its implied waiver argument)); *Bruno*, 2019 WL 633454, *2.  Moreover, the argument should be seen for what it is – an effort by

---

[2] 7-Eleven also notes that it is not withholding from disclosing what this "ultimate decision" was as it has produced the Form.  In fact, Plaintiff even included it as an exhibit to the operative complaint.  (*See* Dkt. No. 23, Ex. A.)

Plaintiff to renege on his agreement that he "would not take the position that 7-Eleven has waived its attorney-client privilege over communications pertaining to [all steps taken and efforts made by 7-Eleven to comply with the FCRA's provision 15 U.S.C. § 1681b(b)(2)(A) or any FTC Advisory Opinions re same] if 7-Eleven's response notes it did have communications with outside counsel on such matters." (*See* Trotter Decl., ¶¶ 3, Exs. A and B.)

### C. Plaintiff's Accusations Regarding 7-Eleven's Privilege Log Are Outside The Scope Of This Motion, Lack Merit, And Are An Attempt To Run Roughshod Over The Court's Meet-and-Confer Rules

Plaintiff's Motion premises his request for a blanket order that would require disclosure of every 2016 communication 7-Eleven ever had with an attorney regarding the Form in part on the contention that the privilege log 7-Eleven served on January 29, 2019 is deficient. (*See* Dkt. No. 57-1 at 18:24-19:12.) The Court should reject Plaintiff's contentions regarding the privilege log for three reasons.

First, contentions regarding the privilege log are outside the scope of this Motion. Plaintiff literally set the agenda on the privilege issue in dispute and did not even mention the privilege log. (*See* Dkt. No. 54; *see also* Trotter Decl., ¶ 6, Ex. E.) Accordingly, the Court's order for briefing was for the parties to address the issue Plaintiff presented, i.e. "[d]eposition questions regarding any advice 7-Eleven received from its internal or external counsel regarding the use or editing of its form FCRA background check disclosure." (*See id.*; *see also* Dkt. No. 55.) Therefore, issues regarding the privilege log are outside the scope of this motion.

The second, related, reason is that Plaintiff has not met this Court's meet-and-confer requirements as stated in the Local Rules and applicable standing order. *See*, *e.g.*, L.R. 37-1. Rather, all Plaintiff's counsel did on the privilege log before filing this Motion was make an equivocal statement as to whether Plaintiff was contending the privilege log was deficient. (*See* Trotter Decl., ¶ 5, Ex. D (in February 5, 2019 email, Plaintiff's counsel states "7-Eleven's privilege log *may* be deficient").) In addition,

Plaintiff's counsel never engaged in *any* meet-and-confer efforts after this equivocal statement despite 7-Eleven's counsel direct invitation to discuss the matter if he wished to do so. (*See id.* (in response to Plaintiff's counsel's equivocal position in the February 5, 2019 email regarding the privilege log, Defense counsel stating that although 7-Eleven disagreed with the contention the privilege log provided was deficient, counsel was "happy to discuss further" any "specific communication where [Plaintiff] believe[d] he need[ed] further information" to determine if a communication was privileged).)  In fact, given Plaintiff's counsel's failure to take 7-Eleven up on this offer, if anyone has done anything to waive a privilege argument in this matter it is him.

Third, Plaintiff's argument fails on the merits.  The privilege log only includes one 2016 email correspondence – as such, that is the only communication on the log Plaintiff is seeking on this Motion.  (*Compare* Trotter Decl., ¶ 7, Ex. F at 3 *with* Dkt. No. 57-1 at 19:16-20.)  Moreover, the privilege log notes: (1) the time periods in which the withheld communication took place; (2) the fact that the communication is all email; (3) that all of the participants were 7-Eleven employees and outside counsel; and (4) that each email in this correspondence included 7-Eleven's in-house counsel and outside counsel.  (*See* Trotter Decl., ¶ 7, Ex. F at 3.)  Further, as Plaintiff's own Motion admits, because of the inclusion of outside counsel on this correspondence, they are presumptively privileged.  *See ChevronTexaco Corp.*, 241 F. Supp. 2d at 1073; (*see also* Dkt. No. 57-1 at 10:7-8.)  In addition, Plaintiff has not submitted *any* evidence with his Motion that would do anything to overcome that presumption, and, as detailed above, the evidence in the record on communications in this time period from 7-Eleven's Rule 30(b) deponent was that all such communications were for the purpose of obtaining legal – not business – advice.  (*See*, *generally*, Trotter Decl., ¶ 4, Ex. C at 111:24-120:13, 125:14-126:24.)  Therefore, on the record before the Court, there can be no reasonable dispute that this 2016 communication on the privilege log is privileged.[3]

---

[3] Plaintiff's contentions regarding what a privilege log must include is improperly form over substance.  *See Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 636-638 (D. Nev.
Continued on the next page

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion should be denied.

Dated: March 15, 2019

CALL & JENSEN
A Professional Corporation
Julie R. Trotter
Kent R. Christensen
Delavan J. Dickson

By: */s/ Julie R. Trotter*
Julie R. Trotter

Attorneys for Defendant 7-Eleven, Inc.

---

Continued from the previous page
2013) (discussing lack of black-and-white rules for what must be included in a privilege log as the primary inquiry is a substantive one regarding whether the information provided shows the privilege attaches) (*see also* Dkt. No. 57-1 at 9:26-10:3 (citing *Phillips* approvingly).) Moreover, *even if* the Court were willing to entertain arguments regarding the privilege log despite the fact they were never presented during the February 28, 2019 telephonic conference and Plaintiff failed to come even close to meeting this Court's meet-and-confer rules, the result is not carte blanche disclosure. *See id.* at 638-639. Rather, it would be for the Court to order 7-Eleven to include any additional information it believes is necessary to the privilege log, and, if Plaintiff still is not satisfied, for him to raise the issue for resolution before the Court properly and in accord with the rules that govern the resolution of discovery disputes. *See id.*