# EXHIBIT G

Julie R. Trotter, Bar No. 209675
  jtrotter@calljensen.com
Kent R. Christensen, Bar No. 253815
  kchristensen@calljensen.com
Delavan J. Dickson, Bar No. 270865
  ddickson@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel:   (949) 717-3000
Fax:   (949) 717-3100

Attorneys for Defendant 7-Eleven, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARDO MUNOZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>7-ELEVEN, INC., a Texas corporation,<br><br>Defendant. | Case No.  2:18-cv-03893 RGK (AGR)<br><br>**DECLARTION OF JULIE R. TROTTER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION**<br><br>*[Filed concurrently with Notice of Motion and Motion for Summary Judgment, Statement of Uncontroverted Facts, Declaration of K. Cope, Request for Judicial Notice, and [Proposed] Judgment]*<br><br>Date: May 13, 2019<br>Time: 9:00 a.m.<br>Place: Courtroom: 850 |
| | Complaint Filed:        May 9, 2018<br>First Am. Comp. Filed:   July 9, 2018<br>Trial Date:             July 2, 2019 |

SEV05-13:2457182_1:4-8-19

- 1 -

DECLARTION OF JULIE R. TROTTER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Exhibit G
18

CALL & JENSEN

## DECLARATION OF JULIE R. TROTTER

I, Julie R. Trotter, declare as follows:

1.    I am a shareholder with the law firm of Call & Jensen, APC, which is counsel of record for Defendant 7-Eleven, Inc. ("7-Eleven") in this matter.  I have personal knowledge of the matters contained in this declaration and, if called on as a witness, I could and would testify competently as to the matters set forth herein.

2.    Attached hereto as **Exhibit A** is a true and correct copy of the excerpts cited from Plaintiff's February 20, 2019 deposition.

3.    Attached hereto as **Exhibit B** is a true and correct copy of Exhibit 7 from Plaintiff's February 20, 2019 deposition.

4.    Attached hereto as **Exhibit C** is a true and correct copy of Exhibit 16 from Plaintiff's February 20, 2019 deposition.


I declare under penalty of perjury, under the laws of the State of California and the United States, that the foregoing is true and correct.  Executed on April 8, 2019, at Newport Beach, California.

            */s/ Julie R. Trotter*
            Julie R. Trotter

SEV05-13:2457182_1:4-8-19                                - 2 -
DECLARTION OF JULIE R. TROTTER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR IN THE ALTERNATIVE SUMMARY ADJUDICATION

Exhibit G
19

# EXHIBIT A

Exhibit G
20

```
 1                 UNITED STATES DISTRICT COURT
 2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 3
 4    EDWARDO MUNOZ,          )
      individually and on    )
 5    behalf of all others   ) Case No. 2:18-cv-03893-
      similarly situated,     )           RGK-AGR
 6                            )
               Plaintiff,    )
 7                            )
         vs.                  )
 8                            )
      7-ELEVEN, INC., a       )
 9    Texas corporation,      )
                              )
10             Defendant.  )
      _____)
11
12
13             DEPOSITION OF EDWARDO LEE MUNOZ
14                Newport Beach, California
15              Wednesday, February 20, 2019
16
17
18    REPORTED BY:  Michelle Milan Fulmer
                    CSR No. 6942, RPR, CRR, CRC
19
20
21
22
23
24
25
```

Page 1

```
 1        Q    Okay.  You ended up working for 7-Eleven

 2   for a few weeks; right?  It's like six weeks or so?

 3        A    Yes.

 4        Q    Maybe less.  All right.

 5             Why did you decide to apply to the        10:41:50

 6   7-Eleven?

 7        A    To get a job.

 8        Q    How did you find out about that opening?

 9        A    A friend.

10        Q    Who's your -- who was the friend?         10:42:02

11        A    I forgot his name.

12        Q    So an acquaintance --

13        A    Yeah.

14        Q    -- more than a friend?

15        A    Yeah.                                     10:42:16

16        Q    Was he someone that worked at 7-Eleven?

17        A    Yes.

18        Q    Was he working at that same store?

19        A    Yes.

20        Q    Where is the store located?              10:42:21

21        A    In Pasadena.

22        Q    So Pasadena I have heard of.  That's pretty

23   far from Merced; right?

24        A    Yes.

25        Q    Were you living in Merced at the time?    10:42:29

                                                         Page 45
```

```
 1        A    I had an interview.

 2        Q    Okay.  And how did they set up the

 3   interview?  Did they call you?  Did they email you?

 4        A    They called me.

 5        Q    Called.                              11:01:23

 6             Do you recall who called you?

 7        A    I believe it was Mike.

 8        Q    Do you know Mike's last name?

 9        A    No, I do not.

10        Q    Was he the store manager?           11:01:31

11        A    Yeah, the store manager.

12        Q    Okay.  He called you on your cell phone;

13   right?

14        A    Yes.

15        Q    You provided that information?       11:01:42

16        A    Yes.

17        Q    And then what did he say?

18        A    He'd like for me to come in for an

19   interview.

20        Q    Okay.  And so you applied January 16.  When  11:01:55

21   do you think the call came in from Mike about the

22   interview?

23        A    It was, what, the day after.

24        Q    Okay.  And then when did you interview,

25   best estimate?                                11:02:08
```

Page 61

```
 1    all okay?

 2        A    Yes.

 3        Q    Okay.  How did the interview with Mike end?

 4    What were -- what were the results?

 5        A    He told me that he would call me back in a    11:06:42

 6    couple days to see if I had the job.

 7        Q    Okay.  Do you know what he needed to do,

 8    why he didn't just offer it to you right then?

 9        A    He said he needed to do the background

10    check.                                               11:06:56

11        Q    Okay.  What did you say to that?

12        A    I said, "Okay."

13        Q    Did you ask any questions about it, what it

14    would entail?

15        A    No.                                         11:07:12

16        Q    And so he said, "I'll need to run the

17    background check, but I'll call you back in a few

18    days"?

19        A    Yes.

20        Q    Okay.  What --                              11:07:21

21             When did he call you back?

22        A    Probably like maybe three days after that.

23        O    And what did he say?

24        A    He said that I had got the job.  My

25    background pass checked.  My background check        11:07:37
```

Page 66

```
  1    passed.

  2         Q    He told you straight up on the phone you

  3    passed the background check?

  4         A    Yes.  That's why they hired me.

  5         Q    Were you surprised that you passed the      11:07:52

  6    background check?

  7         A    I wasn't surprised.

  8         Q    Did you say anything about the fact you had

  9    a criminal history, just a misdemeanor?

 10         A    No.                                         11:08:19

 11         Q    Didn't bring it up?

 12         A    No.

 13         Q    No reason to; right?

 14         A    No reason to.

 15         Q    But you were okay with him running the      11:08:24

 16    background search?

 17         A    Yeah.

 18         Q    You understood when he said, "I've got to

 19    run the background search," that it could result in

 20    you not getting the job; right?                       11:08:39

 21         A    Yes.

 22         Q    But you were still okay with him running

 23    it?

 24         A    Yes.

 25         Q    Okay.  Okay.  Let's look at --              11:08:45
```

Page 67

```
 1      A      No.

 2      Q      All right.  Okay.  You can set that aside.

 3             We've been going like an hour 20.  Do you

 4   want to break for a sec?

 5             MR. PELUSO:  Sure.                        11:18:27

 6             MR. CHRISTENSEN:  We're moving pretty good,

 7   so --

 8             THE VIDEOGRAPHER:  Going off the record.

 9   The time is 11:18 a.m.

10             (Recess taken.)                           11:18:38

11             (Off the record at 11:18 a.m.  Back on the

12   record at 11:29 a.m.)

13             THE VIDEOGRAPHER:  Back on the record.  The

14   time is 11:29 a.m.

15             MR. CHRISTENSEN:  All right.  Exhibit 7.   11:29:30

16             (Whereupon, Deposition Exhibit 7 was marked

17   for identification by the Certified Shorthand

18   Reporter, a copy of which is attached hereto.)

19   BY MR. CHRISTENSEN:

20      Q      Okay.  Let's look at another exhibit here. 11:29:48

21             So Exhibit 7 is Bates labeled MUNOZ 6 and

22   it's an email dated January 24, 2018, titled,

23   "7-Eleven New Hire Paperwork."

24             Do you remember receiving this email?

25      A      Yes.                                      11:30:12
```

                                                 Page 75

```
 1       Q     And that's --

 2             It went to your email address there; right?

 3       A     Yes.

 4       Q     The one listed there.  Okay.

 5             And did you read it?                        11:30:22

 6       A     Yes.

 7       Q     What was your understanding of what you

 8   needed to do with this email, if anything?

 9       A     Do my I-9.

10       Q     Okay.  What's an I-9?                       11:30:33

11       A     The W-2s.  Right?

12       Q     Okay.  Some of the tax documents?

13       A     Yes.

14       Q     Okay.  I think it's also some immigration

15   paperwork that -- maybe a Social Security card or     11:30:45

16   something.  I don't know.  We're not held to that.

17             Neither of us know the answer to that.  How

18   about that?

19       A     Yeah.

20       Q     Okay.  All right.  Let's read this first    11:30:54

21   paragraph together.  It says, "Welcome to 7-Eleven.

22   To ensure your career gets off to a great start, you

23   must complete important payroll and new hire

24   paperwork, which may be accessed at the Employment

25   Center," and Employment Center is underlined;         11:31:18
```

                                                    Page 76

| | | | |
|---|---|---|---|
| 1 | Q | Okay. | |
| 2 | A | Yes. | |
| 3 | Q | So we saw application, January 16. Then | |
| 4 | you get a call from Mike; right? | | |
| 5 | A | Yes. | 11:32:21 |
| 6 | Q | You interviewed a day or two before | |
| 7 | January 24th; right? | | |
| 8 | A | Yes. | |
| 9 | Q | Then you get this new hire paperwork | |
| 10 | January 24; right? | | 11:32:30 |
| 11 | A | Yes. | |
| 12 | Q | Okay. Did you have any trouble accessing | |
| 13 | this site, the new hire paperwork? | | |
| 14 | A | No. | |
| 15 | Q | Okay. Did you notice, though, if you did, | 11:32:40 |
| 16 | in the middle of this email it says, "If you have | | |
| 17 | any difficulty accessing the site or questions about | | |
| 18 | the new hire documents, please contact HR at" a | | |
| 19 | 1-800 number? | | |
| 20 | A | Yes. | 11:32:56 |
| 21 | Q | Did you notice that? | |
| 22 | A | Yes. | |
| 23 | O | Did you ever contact that number? | |
| 24 | A | No. | |
| 25 | MR. CHRISTENSEN: Okay. Okay. Let's do | 11:33:03 |

Page 78

Edwardo L. Muñoz - February 20, 2019

```
 1        Q    Okay.

 2        A    Yeah.

 3        Q    To who knows where?

 4        A    Yeah.

 5        Q    All right.  So what did you do once you        11:47:25

 6   realized I can't -- can't access it from my phone?

 7        A    My -- I asked -- I asked if I could use a

 8   computer.

 9        Q    Did you call someone and ask?

10        A    Yeah.  At the store, yeah.                     11:47:40

11        Q    Okay.  Who did you call at the store?

12        A    Mike.

13        Q    Okay.  You asked Mike if you could come in

14   and use their computer --

15        A    Yes.                                           11:47:49

16        Q    -- to fill out the new hire paperwork?

17        A    Yes.

18        Q    And where is the computer located that you

19   used to do --

20        A    In their office.                              11:47:58

21        Q    Like in the back room --

22        A    Yeah.

23        O    -- or something?

24             Yeah.  Okay.

25             You're there about 40 minutes, you say?       11:48:03
```

Page 92

Exhibit G
29

Edwardo L. Munoz - February 20, 2019

```
 1      A    Yes.

 2      Q    And it was January 26, 2018?

 3      A    Yes.

 4      Q    I think --

 5           Do you remember what day of the week that    11:48:12

 6  is?

 7      A    No, I don't.

 8      Q    Who knows?  Okay.

 9           I think it was a Monday.

10      A    Monday.  Yeah.  Monday or Wednesday.  One    11:48:18

11  of those.

12      Q    Why do you say Monday or Wednesday?

13      A    Because I -- I think it was either on a

14  Monday or a Wednesday.

15      Q    Okay.  I thought you like had something      11:48:27

16  triggering your mind where you just -- okay.  Fair

17  enough.

18           So was Mike in the store at the same time

19  you were there filling out the paperwork?

20      A    Yes.                                         11:48:39

21      Q    Did you ever say, "Hey, Mike, I don't

22  understand what this is even asking me"?

23      A    No.

24      Q    Could you have done that if you wanted to?

25      A    Yes.                                         11:48:52
```

Page 93

```
 1              You didn't dispute the report; right?
 2       A     No.
 3       Q     Okay.  Let's look at the report just
 4    briefly.
 5              So go to it's like the third page,        12:15:09
 6    SEV 29.  There's a lot of language.  I don't want to
 7    spend time reading it all; but if you feel like you
 8    want to, you certainly can.
 9              In the middle of the box -- or in the
10    middle of that page, though, it has your name,       12:15:27
11    refers to your Social Security number, and your
12    address.
13              That's all you; right?
14       A     Yes.
15       Q     That's all correct information?            12:15:38
16       A     Yes.
17       Q     Okay.  Switch to the next page.  Actually,
18    okay.  Towards the bottom of that page.  So we're on
19    SEV 30.  Oh, no.  Next page.  Sorry about that.
20              MR. PELUSO:  When page are we on?          12:16:08
21              MR. CHRISTENSEN:  Good question.
22       Q     We're going to move to SEV 31.  Okay.  So
23    this shows -- and I know this is the first time
24    you're seeing this document.  So I'll just kinda
25    walk you through my understanding of it.             12:16:23
```

Page 115

```
 1              You can set that one aside.

 2              (Whereupon, Deposition Exhibit 16 was

 3     marked for identification by the Certified Shorthand

 4     Reporter, a copy of which is attached hereto.)

 5     BY MR. CHRISTENSEN:                              01:35:12

 6         Q    All right.  So I've handed you Exhibit 16,

 7     which is a declaration filed on your behalf.

 8              Have you seen this document before?

 9         A    Yes.

10         Q    And at the second-to-last page,          01:35:26

11     third-to-last page there is your electronic

12     signature; right?

13         A    Yes.

14         Q    Okay.  Do you know what the purpose of this

15     document is or was?                              01:35:42

16         A    For me to -- basically like for my rights.

17         Q    Okay.  Do you know what -- why this was

18     filed with the court?

19         A    No, I do not.

20         Q    Okay.  Did you write this document?      01:36:00

21         A    No.

22         Q    It was written for you; right?

23         A    Yes.

24         Q    And then did you have a chance to review

25     it, though, before signing it?                   01:36:13
```

Page 134

Edwardo L. Munos - February 20, 2019

```
 1    what application means.

 2           Remember when we looked at the actual

 3    application that you filled out --

 4       A    Yeah.

 5       Q    -- dated January 16?                          01:38:30

 6       A    Yes.

 7       Q    And then we looked at the new hire

 8    documents that you filled out January 26th; right?

 9       A    Yes.

10       Q    Okay.  The disclosure, if you look it's     01:38:39

11    right here attached to your declaration, that was

12    part of the new hire documents January 26th; right?

13       A    Yes.

14       Q    Okay.  So in between that time period,

15    you'd actually had an interview with Mike; right?     01:38:57

16       A    Yes.

17       Q    And so you actually filled this out in

18    connection with the new hire documents; right?

19       A    Yeah.

20       Q    Okay.                                        01:39:07

21       A    Okay.  Yeah.

22       Q    And then here it says, "Attached is a true

23    and correct copy of the disclosure," and that's

24    Exhibit A here Bates labeled 7-ELEVEN 3; is that

25    right?                                                01:39:26

                                                   Page 137
```

Exhibit G

33

Edwardo L. Muñoz - February 20, 2019

```
 1        A     Yes.

 2        Q     That's the disclosure we're talking about?

 3        A     Yes.

 4        Q     Okay.  All right.  Let's look at

 5   Paragraph 4.  It says, "The disclosure contained an      01:39:43

 6   excessive amount of information in fine print."

 7              What did you -- what do you mean

 8   by "excessive information," "excessive amount of

 9   information"?

10        A     As in -- as in not being -- not being just    01:39:59

11   one simple -- one simple -- like how do you say

12   it -- allegation or, no, like one simple thing.

13        Q     Okay.  So my -- I would define excessive as

14   like too much.

15        A     Yeah, too much.                                01:40:31

16        Q     Is that a fair definition --

17        A     Yeah, too much.

18        Q     -- of the word excessive?

19              So you're saying it contained too much

20   information; is that right?                               01:40:38

21        A     Yes.

22        Q     Okay.  When did you form the opinion that

23   there's too much information on the disclosure?

24        A     When?

25        Q     Uh-huh.                                        01:40:53
```

Page 138

Exhibit G
34

Edwardo L. Muñoz - February 20, 2019

```
 1        Q    So it's not really fine print.  Is it fine
 2   print, in your opinion?
 3        A    Yeah, because it's small.  It's --
 4        Q    Just because it's small?
 5        A    Yeah.                                  01:43:07
 6        Q    That's what you mean.  Okay.
 7             All right.  Back to your declaration,
 8   Paragraph 4.  "As a result of the excessive
 9   information, I was confused as to both what the
10   purpose of the disclosure was and what it actually  01:43:24
11   authorized."
12             You understood there was a purpose to the
13   disclosure; right?  You just were confused what that
14   purpose might be?
15        A    As in -- as in being a simple criminal     01:43:47
16   background check, yes.  That's what I thought.
17        Q    You understood it was --
18             You thought it was just a simple criminal
19   background check?  That's what you're saying?
20        A    Yes.                                     01:44:03
21        Q    Okay.  What do you mean by a simple
22   criminal background check?
23        A    As in like a background check.  That's -- I
24   thought it was just a simple background check that
25   everybody gives you.                               01:44:17
```

Page 140

Exhibit G
35

Edwardo L. Munoz - February 20, 2019

```
 1        Q    Okay.
 2        A    And --
 3        Q    And your understanding now is that's not
 4   the case?
 5        A    Yeah.                               01:44:24
 6        Q    What -- what makes it different than what
 7   everybody else does?
 8        A    Where -- where everybody can contact
 9   whoever or whomever and -- and if I would have known
10   that, like I probably wouldn't have signed it.    01:44:47
11        Q    Okay.  So your testimony is, look, I
12   thought they were going to run like a public records
13   search or something.
14        A    Yeah.
15        Q    I didn't know they would be contacting --  01:45:04
16        A    Like my grandma, my -- you know, like --
17        Q    -- contacting witnesses or something?
18        A    Yeah.
19        Q    Okay.  And if it's just a criminal
20   background search, you have no problem with that,    01:45:21
21   though; right?
22        A    Yes.
23        O    It's when they do more, to go contact other
24   witnesses and whatever else?
25        A    Yes.                               01:45:28
```

Page 141

Exhibit G
36

Edwardo L. Minto - February 20, 2019

```
 1        Q    If you were to learn that 7-Eleven actually

 2   didn't contact witnesses and only did what you call

 3   a simple criminal background check, would you still

 4   be upset?

 5             MR. PELUSO:  Objection.  Calls for          01:45:41

 6   speculation.

 7             THE WITNESS:  No.

 8   BY MR. CHRISTENSEN:

 9        Q    Okay.  You also say in here that you were

10   confused what it actually authorized.                 01:45:59

11             And I think that's kinda we're talking

12   about the same thing again.  You're saying I'm okay

13   if they run the background search and find out about

14   my misdemeanor, but I don't -- I don't want them

15   talking to witnesses and things.                      01:46:14

16        A    Yes.

17        Q    That's what you're saying?

18        A    Yes.

19        Q    And you were confused that this form

20   authorized them to do that?                           01:46:20

21        A    Yes.

22        Q    Okay.  All right.  Paragraph 5 you say,

23   "Despite not understanding the nature of the

24   information that would be disclosed, I chose to

25   execute the disclosure to continue with the           01:46:55
```

Page 142

Edwardo L. Mata - February 20, 2019

```
 1    application process."

 2         That's still true, in your opinion?

 3    A    Yes.

 4    Q    And, again, the nature of the information

 5    is the talking to witnesses; right?              01:47:07

 6    A    Yes.

 7    Q    Okay.  You then say, Paragraph 6, "Starting

 8    on January 26, 2018, I began my employment with

 9    7-Eleven."

10         It was actually January 30th; right?        01:47:24

11    A    Yes.

12    Q    Okay.  And then, "Approximately one month

13    later, on or around February 21st, 7-Eleven informed

14    me that I was terminated based upon information

15    contained in my background check."                01:47:37

16         That's still true; right?

17    A    Yes.

18    Q    That's accurate.  Okay.

19         "In short, had I understood the information

20    that would be provided to 7-Eleven, I would not have  01:47:48

21    signed the disclosure."

22         Again, the information is not the -- not

23    the misdemeanor, but additional information beyond

24    that; right?

25    A    Yes.                                          01:48:00
```

Page 143

Edwardo L. Muñoz - February 20, 2019

```
 1        Q    And that's still true?

 2        A    Yes.

 3        Q    Had it been limited to just we're just

 4   going to look up public records, criminal history --

 5   I don't know -- you have no problem signing that;        01:48:11

 6   right?

 7        A    Yes.

 8        Q    And, in fact, you told Mike, "Yeah.  Go

 9   ahead and run a background search"?

10        A    Yes.                                            01:48:19

11        Q    Okay.  All right.  Let's look at the

12   disclosure here.

13             MR. PELUSO:  Just sticking with the same

14   exhibit?  Yeah.

15             MR. CHRISTENSEN:  I guess so.  Yeah.  We're     01:48:34

16   on it, I guess.  Actually, no, you're probably

17   right.

18             Okay.  Let's grab -- if you have Exhibit 8

19   lying around.  Or you know what?  I might have a

20   better one here.                                          01:48:56

21             That's okay.  All right.  We'll stick to

22   this exhibit.  If we have to bounce around, we'll do

23   it, but we'll try to make this simple.

24        Q    All right.  So we're still on Exhibit --

25             MR. PELUSO:  16, I think.                       01:49:12
```

Page 144

Edwardo L. Munoz - February 20, 2019

```
 1              THE COURT REPORTER:  Yes.

 2    BY MR. CHRISTENSEN:

 3        Q    16.  Thank you.

 4             All right.  This is the disclosure and this

 5    is the disclosure you say you were confused by;        01:49:18

 6    right?

 7        A    Yes.

 8        Q    And did you read this disclosure?

 9        A    Yes.

10        Q    Word for word?                                01:49:32

11        A    No.

12        Q    How much of this disclosure did you read?

13        A    About the first, first sentence, first

14    couple sentences.  Yeah.

15        Q    First couple sentences.  Okay.               01:49:48

16             Let's -- let's go through so you can show

17    me what you read exactly, and then we'll talk to

18    what you understood.  All right.

19             Okay.  So the heading, and it's kinda

20    covered up by the court stamp, but it                 01:50:08

21    says, "Disclosure Regarding Background

22    Investigation."

23             Did you read that?

24        A    Yes.

25        Q    And did you understand what that was?        01:50:18
```

Page 145

Hahn & Bowersock, A Veritext Company
800.660.3187

23

Exhibit A

Exhibit G

40

Edwardo L. Muñoz - February 20, 2019

```
 1        A    No.

 2        Q    You didn't understand what that meant?

 3        A    No.

 4        Q    What did you think it meant?

 5        A    I thought it was just a background check.    01:50:27

 6        Q    Okay.  And is it your understanding now

 7   that it's not?

 8        A    Yes.

 9        Q    And the reason why, why do you think it's

10   not a background check?                               01:50:41

11        A    Because what it says right here, it says

12   consumer report, background report, and the

13   investigative consumer report --

14        Q    Okay.

15        A    -- which I have no idea of what those are.  01:50:52

16        Q    Okay.  Okay.  So you first see, "Disclosure

17   Regarding Background Investigation," and you're

18   saying I don't know what background investigation

19   means?

20        A    Yeah.                                       01:51:04

21        Q    You, at least, understood it was some kind

22   of investigation into your background, though;

23   right?

24        A    Yes.

25        Q    And you agree that that suggests it's maybe 01:51:11
```

Page 146

Exhibit G
41

```
 1    even broader than just a criminal history search;

 2    right?

 3        A    Yes.

 4        Q    All right.  So then you -- you read this

 5    first sentence, you say?                        01:51:24

 6        A    Yes.

 7        Q    And, again, this is -- just so I'm clear,

 8    you're at the 7-Eleven office on the computer;

 9    right?

10        A    Yes.                                    01:51:32

11        Q    Reading this.

12             Okay.  So let's read this first sentence

13    together.  "For the purpose" --

14             Or actually will you read it, the first

15    sentence?                                        01:51:41

16        A    "For the purpose of maintaining the safety

17    and security of our stores, customers, employees,

18    and property, 7-Eleven, Inc., may order a consumer

19    report, background report or investigate" --

20    "investigative consumer report on you in connection  01:51:56

21    with application for employment on your ongoing

22    employment with 7-Eleven."

23        O    Okay.  Good.  So that's the sentence you

24    read at the time?

25        A    Yes.                                    01:52:11

                                             Page 147
```

Edwardo L. Munoz - February 20, 2019

```
 1       Q    And I think I understand you're saying you
 2   didn't understand what this sentence was saying?
 3       A    Yes.
 4       Q    Okay.  What about it don't you understand?
 5       A    I don't know what a consumer report is,        01:52:29
 6   background report or investigative consumer report.
 7       Q    Okay.  At the time did you have any thought
 8   as to what those might mean?
 9       A    I just thought it was a background check.
10       Q    Just a background check, like you're saying   01:52:50
11   public records check or whatever?
12       A    Like every other -- every other application
13   that I've done.
14       Q    Yeah.
15       A    I thought it was the same thing --            01:52:59
16       Q    Okay.
17       A    -- with the background check.
18       Q    Okay.  But those phrases -- consumer
19   report, background report, investigative consumer
20   report -- those were foreign to you?                   01:53:10
21       A    Yes.
22       Q    Okay.  Did you say, "Mike, man, I don't
23   know what this means.  What are they talking about,
24   a consumer report, investigative consumer report"?
25       A    No.                                           01:53:23

                                                   Page 148
```

```
 1        Q    Was there anything keeping you from asking

 2    Mike about that?

 3        A    No.

 4        Q    And nothing keeping you from using your

 5    cell phone and calling HR, like the email said;      01:53:31

 6    right?

 7        A    No.

 8        Q    Okay.  So after reading this, did you

 9    continue reading on?

10        A    I just seen the background check and I      01:53:43

11    signed and that was it.

12        Q    Okay.

13        A    And then --

14        Q    So you read the first paragraph, said looks

15    like a background search to me, I'm cool with it,    01:53:55

16    signed, hit next and moved on?

17        A    Yes.

18        Q    So overall that took, what, about 30

19    seconds?

20        A    Yeah, about.                                01:54:07

21        Q    Okay.  And didn't think twice about it.

22    Just hit next and moved on; right?

23        A    Yeah.

24        Q    And the next thing you heard was something

25    from Mike in the text?                               01:54:23
```

                                                    Page 149

Edwardo L. Matos - February 20, 2019

```
 1       A    Well, first, first they hired me saying
 2   that my background passed.
 3       Q    Well, hold on.  Is that true or -- I
 4   thought Mike called you and said your background
 5   passed and then you filled out these forms.        01:54:39
 6       A    No.
 7       Q    So you filled out the forms and then you
 8   got the call to say, hey, your background passed?
 9       A    Yes.
10       Q    Okay.  So they hired you, you worked, and   01:54:52
11   then after a few weeks let go; right?
12       A    Yeah.
13       Q    All right.  Let's -- I think it's important
14   when your testimony is you were confused by what
15   this form is, is to understand what you would have   01:55:16
16   understood had you continued reading the whole
17   thing.
18            So let's read through it and we'll talk
19   through it a little bit.  All right?
20            Next paragraph here.  So the second         01:55:31
21   paragraph at the top says, "The consumer reporting
22   agency, Sterling Talent Solutions, Inc., will
23   prepare the report for 7-Eleven, Inc."
24            Do you understand that sentence?
25       A    Yes.                                        01:55:50
```

Page 150

Q Okay. "Sterling Talent Solutions, Inc., is located at," says their address, "and can be reached at," their phone number.
Do you understand that sentence?
A Yes. 01:56:02
Q Okay. And you understand that Sterling Talent Solutions is going to be doing this background report, whatever? Whatever it may be, they're the ones going to be doing it; right?
A Yeah. 01:56:16
Q They will prepare the report; yes?
A Yeah.
Q Okay. And then it says, "Further information regarding Sterling Talent Solutions, including its privacy policy, may be found online 01:56:27 at," their web address.
You understand that sentence?
A Yes.
Q Okay. Then it says, "7-Eleven reserves the right to use a different service provider to obtain 01:56:37 this information as it deems necessary."
Do you understand that one?
A Kinda.
Q What don't you understand?
A It says, "the right to use a different 01:56:49

```
 1    service provider to obtain this information."
 2         So what that -- so basically they're
 3    saying, what, they can -- they can go -- not --
 4    wait.  So they're using somebody else basically.
 5      Q    Well, they could use someone else; right?    01:57:14
 6    They say we could choose someone else.  We reserve
 7    that right.
 8      A    Yeah.
 9      Q    You get that.  Okay.
10         And then the next sentence says, "If a         01:57:23
11    different agency is used, 7-Eleven will provide you
12    with the contact information for the agency."
13         Do you understand that?
14      A    Yes.
15      Q    So if they decide to not use Sterling,       01:57:33
16    they'll tell you; right?
17      A    Yeah.
18      Q    Okay.  All right.  Let's move on.
19         Will you read the next sentence for me on
20    the start of the third paragraph?                   01:57:44
21      A    "The report may contain information from
22    federal, state, and other agencies, learning
23    institutions, information service bureaus,
24    past/present employers, and other individuals or
25    sources concerning your character, general         01:57:59
```

Page 152

Exhibit G
47

```
 1    reputation, personal characteristics, mode of

 2    living, work habits and/or creating" -- "credit

 3    standing."

 4        Q    Yeah.  Okay.

 5             So do you understand that sentence?         01:58:14

 6        A    Yes.

 7        Q    Okay.  It's essentially saying you

 8    understand that they're going to -- they may look at

 9    federal, state or other agencies, learning

10    institutions, like schools; right?                  01:58:28

11        A    Yes.

12        Q    Other past/present employers; right?

13        A    Yes.

14        Q    It's just telling you the sources of what

15    they might look at; right?                          01:58:35

16        A    Yes.

17        Q    All right.  And they're going to also --

18    they'll look it at, try to learn about your

19    character; right?  And it goes on work habits,

20    credit standing, all of those things.  You          01:58:48

21    understand what that's saying; right?

22        A    Yeah.

23        O    Okay.  And then it goes on.  Will you read

24    the next sentence?

25        A    "Such information include your driving      01:58:58
```

                                              Page 153

Edwardo L. Muñoz - February 20, 2019

```
 1    history, credit history, education, records of

 2    military service, insurance claims involving you,

 3    your criminal history and employment history,

 4    including the reasons for termination."

 5         Q    Okay.  You understand that sentence?  This    01:59:23

 6    is the type of information they're going to look

 7    for?

 8         A    Yeah.

 9         Q    Okay.  And you actually have no problem

10    with that, right, that they look at criminal        01:59:40

11    history?  No problem; right?

12         A    No.

13         Q    Employment history, no problem obviously?

14         A    No.

15         Q    Driving history?                           01:59:47

16         A    Never.

17         Q    But you don't have a problem if they look

18    at it; right?

19         A    No.

20         Q    Okay.  Credit history?                     01:59:58

21         A    No.

22         Q    Education history?

23         A    No.

24         Q    No problem?

25              No problem, records of military service or  02:00:05
```

Page 154

32

Exhibit A

Exhibit G

49

Edwardo L. Mireles - February 20, 2019

```
 1    insurance claims; right?

 2        A    No.

 3        Q    Okay.  Yeah.

 4             Okay.  So you understand that.  All right.

 5             Keep going on with this next sentence.      02:00:16

 6        A    "The information contained in the report

 7    may be obtained from private and public record

 8    sources, and the investigation can also involve

 9    personal interviews with sources, such as current

10    and past employers, friends, family members, and    02:00:39

11    associates."

12        Q    Okay.  Do you understand that sentence?

13        A    Yes.

14        Q    Okay.  They're saying we might do these --

15    we might look at private sources, personal          02:01:00

16    interviews, current and past employers, talk to

17    friends, families.  They might do those things;

18    right?  You understand that reading that sentence;

19    right?

20        A    Yes.                                        02:01:12

21        Q    Okay.  Let's go to the next sentence.

22        A    "Information included, the report will only

23    be requested when permitted by the law and where

24    such information is substantially related to the

25    duties and responsibilities of the position for     02:01:33
```

Page 155

```
 1    which you are applying."

 2         Q    Okay.  You understand that one?

 3         A    Kinda, sort of, yes.  Yeah.

 4         Q    Yeah.  Okay.

 5              Let's go to the next one.                02:01:50

 6         A    By law.

 7         Q    It starts there, "7-Eleven Inc."

 8         A    "7-Eleven, Inc., will not obtain

 9    information about your credit history, credit

10    worthiness, credit standing, or credit capacity     02:02:07

11    unless permitted by applicable state and local law."

12         Q    Yeah.  Good.

13              You understand that one?

14         A    Yeah.

15         Q    Do you know if they looked at any of your  02:02:18

16    credit history, worthiness, anything like that?

17         A    I don't think so.

18         Q    Okay.  And then let's do this last sentence

19    here.

20         A    "You have the right, upon written request   02:02:29

21    made within a reasonable time after receipt of this

22    notice, to request disclosure of the nature and

23    scope of any investigative consumer report from

24    7-Eleven, Inc."

25         Q    Okay.  You understand that one?          02:02:46

                                                    Page 156
```

Edwardo L. Mireles - February 20, 2019

```
 1        A     Yeah.

 2        Q     Yeah.  Okay.

 3              So as you read that now, does it help you

 4   see that these kinda weirder terms -- consumer

 5   report, background report, investigative consumer    02:03:00

 6   report -- are then explained below saying, look,

 7   we're going to look at sources, look into your

 8   character, general reputation, we might do personal

 9   interviews?  Does that help you understand what the

10   report might look like?                              02:03:16

11              MR. PELUSO:  Objection as to the form.

12              THE WITNESS:  Kind of.  Not really, I mean.

13   BY MR. CHRISTENSEN:

14        Q     What confuses you about that?

15        A     Because like is it all of them put into one  02:03:30

16   or --

17        Q     All of what put into one?  Sorry.

18        A     -- or is it just -- is it consumer report

19   or is it a background report or is it an

20   investigative report --                              02:03:45

21        Q     Okay.

22        A     -- or is it just all of them put

23   together --

24        Q     Sure.  So your concern --

25        A     -- basically?                             02:03:51
```

Page 157

Exhibit G

52

Edwardo L. Mireles - February 20, 2019

```
 1      Q    Your concern is the name of this report;

 2  right?

 3      A    Yes.

 4           MR. PELUSO:  Mischaracterizes the

 5  testimony.                                      02:03:57

 6           MR. CHRISTENSEN:  He said, "Yes."

 7      Q    So you're saying, look, what's the name of

 8  this report?  Is it a consumer report, background

 9  report, investigative consumer report?

10      A    Or is it just a background check?        02:04:07

11      Q    Okay.  But as you read --

12      A    Yeah.

13      Q    As we read through it and you understood

14  every single sentence, you can see what the report

15  is going to entail; right?  So whatever the name --  02:04:16

16  maybe they want to call it the background

17  investigation.  Whatever the name, it doesn't

18  matter.  It says what they're going to look at;

19  right?

20      A    Yes.                                      02:04:30

21      Q    And you understood --

22           Had you read this paragraph, you would have

23  understood, look, they might -- doesn't say they

24  will, but they might talk to friends, do personal

25  interviews, things like that; right?  You understand  02:04:43
```

Edwardo L. Martz - February 20, 2019

1    reading that?

2        A    Yes.

3        Q    Okay.  Let's read the -- you see where it

4    says, "Background Check Authorization"?

5        A    Yes.                                    02:04:57

6        Q    That big heading.  Sorry.  I'm trying to

7    make it for the record, too.

8             Did you read this heading?

9        A    Yes.  "Background Check --

10       Q    I'm sorry.  That was a bad question.      02:05:08

11       A    -- Authorization"?

12       Q    Yeah.  Let me go back.

13       A    Yes, I did.

14       Q    Okay.  All right.

15            You mentioned earlier when you were doing  02:05:16

16   the paperwork you got to -- after the first

17   paragraph, you then just skipped -- you hit next;

18   right?

19       A    Yeah.  I seen background check, you know.

20       Q    Okay.  So you didn't actually read        02:05:30

21   "Background Check Authorization" at the time you

22   were sitting in the 7-Eleven office filling out the

23   paperwork; is that right?

24       A    That's right.

25       Q    Okay.  So let's look at it now to see what  02:05:41

                                                Page 159

Edwardo L. Munoz - February 20, 2019

```
 1    it authorizes.

 2           All right.  Will you read that first

 3    sentence there?

 4       A    "I have carefully read and understand the

 5    preceding disclosure and the below authorization      02:05:55

 6    form.  In --"

 7       Q    Okay.  Let's stop there.

 8           You understand what that's saying, that you

 9    read it and you understand the preceding disclosure?

10       A    Yes.                                           02:06:12

11       Q    Okay.  Now, I'm sorry.  I cut you off.

12           Will you go with, "In connection"?

13       A    "In connection with and for the duration of

14    my employment (including contract for services) with

15    7-Eleven, Inc., I authorize and understand that       02:06:29

16    investigative background inquires or" -- "and/or

17    consumer report inquires may be made about me to the

18    extent permitted by applicable federal, state, and

19    local laws."

20       Q    Okay.  Do you understand that sentence?       02:06:51

21       A    Yeah.

22       Q    Okay.  Keep going.  This is super boring, I

23    know.  We're almost done.

24       A    "In connection with these inquiries, I

25    consent that 7-Eleven, Inc., may obtain consumer,     02:07:12
```

Page 160

Edwardo L. Mireles - February 20, 2019

```
 1    criminal, driving, education, employment and other
 2    reports at any time prior and during" -- "and/or
 3    during my employment to the work habits" -- wait.
 4    Did I skip a line?  "Employment to extent permitted
 5    by law" -- "by applicable law."                    02:07:35
 6         Q    All right.
 7         A    Yeah.  I did miss one.
 8         Q    You understand what that's saying?  You
 9    consent that they may obtain reports about consumer,
10    criminal, driving, education, employment, other      02:07:49
11    reports?
12         A    Yes.
13         Q    Okay.  Let's keep going.
14         A    "These reports may include information as
15    to my character, general reputation, personal        02:08:00
16    characteristics, mode of living, work habits, credit
17    standing, driving history, credit history, education
18    history, military service record, criminal history
19    and employment history, including the reasons for
20    termination."                                        02:08:22
21         Q    Okay.  You understand that line?
22         A    Yeah.
23         O    And you understand, it says "these
24    reports," could be multiple reports and they're
25    going to be about or could be about your character,  02:08:32
```

Page 161

Exhibit G
56

```
 1    reputation, what does it say, credit standing,

 2    driving history, all those things; right?  That's

 3    what the reports could be?

 4        A    Yes.

 5        Q    Okay.  All right.  Let's keep going.        02:08:44

 6        A    "Further, I understand that I hereby

 7    authorize 7-Eleven, Inc., to request information

 8    from various federal, state, and other concerning my

 9    past activities."

10        Q    Okay.  You understand that?                 02:09:02

11        A    Yeah.

12        Q    All right.  Let's keep going.  Finish it

13    off.

14        A    "These reports may relate to my driving

15    record, criminal record, credit, civil and other      02:09:11

16    experiences, as well as information in the files of

17    insurance companies pertaining to claims involving

18    me."

19        Q    All right.  You get that one?

20        A    Yeah.                                        02:09:25

21        Q    Okay.  Again, it's just describing what

22    these reports may contain; right?

23        A    Yes.

24        Q    Okay.  Let's -- let's read that next one,

25    then I think we're good.                              02:09:42
```

Page 162

Edwardo L. Mireles - February 20, 2019

```
 1         A      "By electronically signing below, I consist
 2    (sic) to the preparation of background reports by
 3    Sterling Talent Solutions, and to the release of
 4    such reports to 7-Eleven, Inc., and its designated
 5    representatives for the purpose of assisting        02:10:00
 6    7-Eleven, Inc., in making a determination as to my
 7    employment, promotion, retention, contract
 8    assignment or for other lawful purposes."
 9         Q      Okay.  You understand that one?
10         A      Kinda.                                  02:10:25
11         Q      What --
12         A      Promotion, retention.
13         Q      What holds you up?
14         A      Yeah.  Okay.  Yeah.
15         Q      Okay.  All right.  Let's -- and you     02:10:38
16    understand --
17                Okay.  Keep going.  Let's just -- we'll
18    finish here.
19         A      "I authorize, without reservation, any
20    party or agency contacted by 7-Eleven to furnish the 02:10:49
21    above-mentioned information; and also understand
22    that any offer of employment made by 7-Eleven, Inc.,
23    may be revoked if unapplicable information is found
24    in an investigative report" -- or no -- "background
25    inquiry or consumer report at any time after my      02:11:12
```

Page 163

```
 1    employment has already begun subject to applicable

 2    law."

 3        Q    Okay.  You understand that one?

 4        A    Yeah.

 5        Q    Okay.  You see in there a few times it says    02:11:23

 6    "I consent" or "I authorize."  You understand what

 7    that means; right?

 8        A    Yes.

 9        Q    You understand this was 7-Eleven's attempt

10    at getting your authorization to run a report that     02:11:34

11    may include --

12        A    Sterling.

13        Q    -- stuff about -- yeah, well, Sterling to

14    run it on behalf of 7-Eleven, you're right, good

15    catch, to run a report that may include stuff about    02:11:47

16    your character, characteristics, driving history,

17    credit history, all those things we read; right?

18        A    Yes.

19        Q    You understand that?

20        A    Yeah.  Now I do, yeah.                         02:11:59

21        Q    Okay.  And we spent, I don't know, maybe

22    10, 15 minutes reading through this together;

23    right?

24        A    Yes.

25        Q    And you understand what it says; right?       02:12:08
```

Page 164

Edwardo L. Munoz - February 20, 2019

```
 1        A     Yes.

 2        Q     Okay.  You understand the description of

 3    those reports; right?

 4        A     Yes.

 5        Q     And here electronic signature, I think we      02:12:18

 6    talked about it already, but that information you

 7    either had to put in or it was populated?  I can't

 8    remember what the answer was.

 9        A     Yes.

10        Q     Okay.  You didn't do anything to say I         02:12:31

11    don't consent or I don't authorize it; right?

12        A     Right.

13        Q     Okay.  And you can see why 7-Eleven would

14    then feel like they had authorization to run a

15    report; right?                                           02:12:48

16        A     Yes.

17        Q     You'll agree with me if you'd have spent

18    the time to read through it, the 10, 15 minutes,

19    whatever it took, you would have understood what

20    these reports are, what they might look at; right?       02:13:03

21        A     Kinda, yeah.

22        Q     Yeah.  Okay.

23              Let's go off the record for a minute or

24    two.

25              Before we do, has there been anything in       02:13:36
```

                                                    Page 165

Exhibit G
60

Edwardo L. Mata - February 20, 2019

```
 1        Q    Do you understand that you were terminated

 2   because of what they found in your criminal record

 3   search; right?

 4        A    Yes.

 5        Q    And so a basic criminal record search would    02:21:03

 6   have found that misdemeanor; correct?

 7        A    Yes.

 8        Q    So your understanding of a background

 9   search, that was okay for them to find; correct?

10        A    Yes.                                            02:21:16

11        Q    And what they found is what led to your

12   termination; right?

13        A    Yes.

14        Q    And you have no knowledge whether or not

15   they called your schools or they looked into your        02:21:24

16   characteristics or your mode of living; correct?

17        A    Yes.

18        Q    Do you think it's fair that you didn't read

19   this form, so you didn't understand it, and then you

20   turn around and sue 7-Eleven for not reading the         02:21:43

21   form?

22             MR. PELUSO:  Objection as to the form.

23             THE WITNESS:  What was that again?

24   BY MR. CHRISTENSEN:

25        Q    Do you think it's fair to 7-Eleven, that       02:21:54
```

                                                    Page 172

Exhibit G
61

```
 1                CERTIFICATION OF COURT REPORTER
 2                       FEDERAL JURAT

 3

 4          I, the undersigned, a Certified Shorthand
 5     Reporter of the State of California do hereby certify:
 6             That the foregoing proceedings were taken
 7     before me at the time and place herein set forth; that
 8     any witnesses in the foregoing proceedings, prior to
 9     testifying, were placed under oath; that a verbatim
10     record of the proceedings was made by me using machine
11     shorthand which was thereafter transcribed under my
12     direction; further, that the foregoing is an accurate
13     transcription thereof.
14              That before completion of the deposition, a
15     review of the transcript [X] was [ ] was not requested.
16             I further certify that I am neither
17     financially interested in the action nor a relative or
18     employee of any attorney of any of the parties.
19             IN WITNESS WHEREOF, I have this date
20     subscribed my name:  March 5, 2019.
21

22

23

                Michelle Milan Fulmer
24              CSR 6942, RPR, CRR, CRC

25

                                            Page 177
```

# EXHIBIT B

1/23/2019                    Fwd: 7-Eleven New Hire Paperwork - tsmith@woodrowpeluso.com - Woodrow &amp; Peluso, LLC Mail

From: <donotreply@equifax.com>
Date: Wed, Jan 24, 2018, 10:45 AM
Subject: 7-Eleven New Hire Paperwork
To: <eddiemunoz094@gmail.com>


EdwardO,

Welcome to 7-Eleven!

To ensure your career gets off to a great start, you must complete important payroll and new hire paperwork, which may be
accessed at the Employment Center or by copying and pasting the following URL into your browser: https://hrx.talx.com/
EmploymentCenter/default.aspx?divisionid=284

Please configure your web browser to **allow Pop-ups** for this site. You may need to turn your Pop-up Blocker off.

Use the following Login ID and Password for authentication:

**Login ID:**  Eddie94

**Password:** Your 10 digit phone number (ex. 555-555-5555 without dashes or spaces)

In preparation for completing the forms, please gather your I-9 documents.

**Acceptable I-9 Documents**

Once logged in to Employment Center, carefully read the instructions at the top of each page. Your new hire paperwork
should take approximately 30 minutes to complete. **It is essential that you complete all of the new hire documents.**

If you have any difficulty accessing the site or questions about the new hire documents, please contact HR at 1-888-886-
1801, available Monday-Friday 7am-5pm CST.

And finally – check out our employee referral program here. We're always looking for fresh talent to keep our global
organization moving forward!

On behalf of 7-Eleven, we're happy to have you!

Thank you

Human Resources



EXHIBIT
7

MUNOZ000006

# EXHIBIT C

Exhibit G
65

# Exhibit 1

49
Exhibit C



Exhibit G
66

1  Mike Arias (CSB #115385)
       mike@asstlawyers.com
2  Alfredo Torrijos (CSB #222458)
       alfredo@asstlawyers.com
3  **ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
   6701 Center Drive West, 14th Floor
4  Los Angeles, California 90045
   Telephone:  (310) 844-9696
5  Facsimile: (310) 861-0168

6  Steven L. Woodrow*
       swoodrow@woodrowpeluso.com
7  Patrick H. Peluso*
       ppeluso@woodrowpeluso.com
8  Taylor T. Smith*
       tsmith@woodrowpeluso.com
9  **WOODROW & PELUSO, LLC**
   3900 East Mexico Avenue, Suite 300
10 Denver, Colorado 80210
   Telephone: (720) 213-0675
11 Facsimile: (303) 927-0809

12 *Pro Hac Vice*

13 Attorneys for Plaintiff and the alleged Classes

14                **UNITED STATES DISTRICT COURT**

15   **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

16
17 **Edwardo Munoz,** individually and on        Case No.  2:18-cv-03893-RGK-AGR
   behalf of all others similarly situated,

18                         Plaintiff,
                                                 **DECLARATION OF**
19     v.                                        **EDWARDO MUNOZ**

20 **7-Eleven, Inc.,** a Texas corporation,

21                         Defendant.

22

23 I, Edwardo Munoz, on oath declare as follows:

24     1.     I am over the age of eighteen (18), and am the Plaintiff in the above-

25 captioned action. I make this declaration in support of Plaintiff's Reply in Support of

26 Plaintiff's Motion for Class Certification. I am able to testify to the matters set forth

27 herein if called upon to do so. I make the following statements based upon my own

28 personal knowledge.

**DECLARATION OF**
**EDWARDO MUNOZ**                          - 1 -

1  *Circumstances Surrounding My Employment With 7-Eleven*

2          2.      In or around January 2018, I applied for a position with 7-Eleven, Inc.

3  at a store located in Los Angeles, California.

4          3.      In connection with my employment application, I was required to

5  complete the document entitled Disclosure Regarding Background Investigation

6  (hereafter "Disclosure," a true and accurate copy of which is attached hereto as Ex.

7  A.).

8          4.      The Disclosure contained an excessive amount of information in fine

9  print. As a result of the excessive information, I was confused as to both what the

10  purpose of the Disclosure was and what it actually authorized.

11          5.      Despite not understanding the nature of the information that would be

12  disclosed, I chose to execute the Disclosure to continue with the application process.

13          6.      Starting on January 26, 2018, I began my employment with 7-Eleven.

14          7.      Approximately one month later, on or around February 21, 2018, 7-

15  Eleven informed me that I was terminated based upon information contained in my

16  background check.

17          8.      In short, had I understood the information that would be provided to 7-

18  Eleven, I would not have signed the Disclosure.

19          Further affiant sayeth not.

20

21

22  09/25/2018                                              *Edwardo munoz*

23  _____                          _____

    Date                                                    Edwardo Munoz

24

25

26

27

28

**DECLARATION OF**                              - 2 -
**EDWARDO MUNOZ**

Doc ID: 71f1da8bc7fec6977281f8b75b5f07e8144a36

Exhibit C
68

# EXHIBIT A

**Disclosure Regarding Background Investigation**

For the purpose of maintaining the safety and security of our stores, customers, employees and property, 7 Eleven, Inc. may order a "consumer report," "background report" or "investigative consumer report" on you in connection with your application for employment or your ongoing employment with 7-Eleven, Inc

The consumer reporting agency, Sterling Talent Solutions, Inc. ("formerly known as TalentWise), will prepare the report for 7-Eleven, Inc. Sterling Talent Solutions, Inc. is located at 19910 North Creek Parkway, Suite 200, Bothell, WA 98011, and can be reached at (877) 982-9888. Further information regarding Sterling Talent Solutions, including its privacy policy, may be found online at www.sterlingtalentsolutions.com. 7-Eleven reserves the right to use a different service provider to obtain this information as it deems necessary. If a different agency is used, 7-Eleven will provide you with the contact information for the agency.

The report may contain information from federal, state and other agencies, learning institutions, information service bureaus, past/present employers, and other individuals or sources concerning your character, general reputation, personal characteristics, mode of living, work habits and/or credit standing. Such information may include your driving history, your credit history, your education history, records of military service, insurance claims involving you, your criminal history and your employment history, including the reasons for termination. The information contained in the report may be obtained from private and/or public record sources, and the investigation can also involve personal interviews with sources such as your current and past employers, friends, family members or associates. Information included in the report will only be requested when permitted by law and where such information is substantially related to the duties and responsibilities of the position for which you are applying. 7-Eleven, Inc. will not obtain information about your credit history, credit worthiness, credit standing, or credit capacity unless permitted by applicable State and local law. You have the right, upon written request made within a reasonable time after receipt of this notice, to request disclosure of the nature and scope of any investigative consumer report from 7 Eleven, Inc.

The Fair Credit Reporting Act provides you with specific rights in dealing with consumer reporting agencies. You will find these rights in A Summary of Your Rights Under the Fair Credit Reporting Act, available at http//files.consumerfinance.gov/f/022014_cfpb_summary-rights-FCRA.pdf. State statutory provisions may also provide additional protections for consumer reports.

## Background Check Authorization

I have carefully read and understand the preceding Disclosure and the below Authorization form. In connection with and for the duration of my employment (including contract for services) with 7 Eleven, Inc., I authorize and understand that investigative background inquires and/or consumer report inquires may be made about me to the extent permitted by applicable federal, state, and local laws. In connection with these inquiries, I consent that 7 Eleven, Inc., may obtain consumer, criminal, driving, education, employment and other reports at any time prior to and/or during my employment to the extent permitted by applicable law. These reports may include information as to my character, general reputation, personal characteristics, mode of living, work habits, credit standing, driving history, credit history, education history, military service record, criminal history and employment history, including the reasons for termination. Further, I understand that, and hereby authorize, 7 Eleven, Inc. to request information from various federal, state and other agencies, learning institutions, information service bureaus, past/present employers, and other individuals or sources which maintain information concerning my past activities. These reports may relate to my driving record, criminal record, credit, civil and other experiences, as well as information in the files of insurance companies pertaining to claims involving me.

By electronically signing below, I consent to the preparation of background reports by Sterling Talent Solutions, and to the release of such reports to 7-Eleven, Inc. and its designated representatives for the purpose of assisting 7-Eleven, Inc. in making a determination as to my employment, promotion, retention, contract assignment or for other lawful purposes. I authorize, without reservation, any party or agency contacted by 7-Eleven, Inc. to furnish the above mentioned information; and also understand that any offer of employment made by 7-Eleven, Inc. may be revoked if unacceptable information is found in an investigative background inquiry or consumer report at any time after my employment has already begun subject to applicable law.

Date of birth is being requested in order to obtain accurate retrieval of records. If you do not wish to indicate your birth date on this form, you may confidentially submit it to the reporting agency by calling toll free (877) 982-9888.

### Electronic Signature

I have carefully read and understand this notice and authorization form.

| | |
|---|---|
| **First Name:** | Edwardo |
| **Full Middle Name:** | L |
| **Last Name:** | Munoz |
| **Address:** | 2196 Yosemite parkway |
| | Merced, CA  95341 |
| **Email Address:** | eddiemunoz094@gmail.com |
| **Date of Birth:** | 11/24/1994 |
| **Social Security Number:** | |

This is an electronic signature and is given in accordance with U.S. federal regulations governing the legal and binding effectiveness of electronic signatures.

## A Summary of Your Rights Under the Fair Credit Reporting Act

*Para información en español, visite www.consumerfinance.gov/learnmore o escriba a la Consumer Financial Protection Bureau, 1700 G Street N.W.,*

**Tabitha Muncey**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Monday, April 8, 2019 3:38 PM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 2:18-cv-03893-RGK-AGR Edwardo Munoz v. 7-Eleven, Inc. Motion for Summary Judgment |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Trotter, Julie on 4/8/2019 at 3:37 PM PDT and filed on 4/8/2019

| | |
|---|---|
| **Case Name:** | Edwardo Munoz v. 7-Eleven, Inc. |
| **Case Number:** | 2:18-cv-03893-RGK-AGR |
| **Filer:** | 7-Eleven, Inc. |
| **Document Number:** | 67 |

**Docket Text:**
**NOTICE OF MOTION AND MOTION for Summary Judgment as to As to All Claims in Plaintiff's Complaint filed by Defendant 7-Eleven, Inc.. Motion set for hearing on 5/13/2019 at 09:00 AM before Judge R. Gary Klausner. (Attachments: # (1) Defendant's Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment, # (2) Request for Judicial Notice in Support of Defendant's Motion for Summary Judgment, # (3) Exhibit A-E to Request for Judicial Notice in Support of Defendant's Motion for Summary Judgment, # (4) Declaration of Julie R. Trotter in Support of Defendant's Motion for Summary Judgment, # (5) Exhibit A-C to Declaration of Julie R. Trotter in Support of Defendant's Motion for Summary Judgment, # (6) Declaration of Kristin Cope in Support of Defendant's Motion for Summary Judgment, # (7) Exhibit A-C to Declaration of Kristin Cope in Support of Defendant's Motion for Summary Judgment, # (8) Proposed Judgment in Favor of Defendant Following Court's Decision to Grant Defendant's Motion for Summary Judgment) (Trotter, Julie)**

**2:18-cv-03893-RGK-AGR Notice has been electronically mailed to:**

Alfredo Torrijos     alfredo@aswtlawyers.com

Exhibit G
71

Delavan J Dickson     ddickson@calljensen.com, tmuncey@calljensen.com

Julie R Trotter     jtrotter@calljensen.com, dreigel@calljensen.com

Kent Roger Christensen     kchristensen@calljensen.com, cdaly@calljensen.com

Mike M Arias     mike@aswtlawyers.com, ilce@aswtlawyers.com, jessica@aswtlawyers.com,
ladonna@aswtlawyers.com, maricela@aswtlawyers.com, mayra@aswtlawyers.com

Patrick H Peluso     ppeluso@woodrowpeluso.com

Steven L Woodrow     swoodrow@woodrowpeluso.com

Taylor T Smith     tsmith@woodrowpeluso.com

**2:18-cv-03893-RGK-AGR Notice has been delivered by First Class U. S. Mail or by other means BY THE
FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\Defs MSJ - Notice and Motion.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/8/2019] [FileNumber=27430827-0]
[6f7342b37a0e07438232bd72853991c3bf8f4113f83aa494059a04cec21d7d15848d
158e58013c2d321e2c16aed3232d08e72e3493ccf13019c24db2f17ad649]]
**Document description:** Defendant's Statement of Uncontroverted Facts and Conclusions of Law in Support of
Motion for Summary Judgment
**Original filename:**C:\fakepath\Defs MSJ - SOUF.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/8/2019] [FileNumber=27430827-1]
[000141b92cf10c56def183a1d90327e93d8b4cbe589a8e675d713a69f14f9f9051dd
6fdcfd22a31699d35cb82f478c77270725168ec3c36fef43280245049585]]
**Document description:** Request for Judicial Notice in Support of Defendant's Motion for Summary Judgment
**Original filename:**C:\fakepath\Defs MSJ - RJN.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/8/2019] [FileNumber=27430827-2]
[aff5ed7e21cd2a3e86620b54dcc4eb84879dadd04405d7f54b8a5294d0bc641c771d
802010bd0aeb3c3a5e15687a98732054c797fc818dc4e0f7c7f1295f5ef8]]
**Document description:**Exhibit A-E to Request for Judicial Notice in Support of Defendant's Motion for
Summary Judgment
**Original filename:**C:\fakepath\Defs MSJ - RJN (Exhibits A-E) - final.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/8/2019] [FileNumber=27430827-3]
[ae1a8c7650e4913c50029962f247e7e89dc21f97369c5084003244d135714263ea00
9f766376dd874ae300f66f9633bce85f9387826e25d26b33b56e92836d00]]
**Document description:**Declaration of Julie R. Trotter in Support of Defendant's Motion for Summary
Judgment
**Original filename:**C:\fakepath\Defs MSJ - Dec of J. Trotter.pdf
**Electronic document Stamp:**

Exhibit G
72

[STAMP cacdStamp_ID=1020290914 [Date=4/8/2019] [FileNumber=27430827-4]
[0cc60dd338e95946724c849cd9b8f3f5c646337b9b3e51842ac28d4a3337d6690b89
0fc2e522d324366b0bc6544a92678b33cb427c3b7860d49bc4e2f30e59fc]]

**Document description:**Exhibit A-C to Declaration of Julie R. Trotter in Support of Defendant's Motion for Summary Judgment
**Original filename:**C:\fakepath\Defs MSJ - Dec of J. Trotter (Exhibits A-C) - final.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/8/2019] [FileNumber=27430827-5]
[b24aa25fc228a08c14f9391317db292151c0bdca9c427f117bc565b3bc60b3a93134
bc5cff573c2cd5889c439fe090da53204aa032e9da3b2e2548ace6318289]]

**Document description:**Declaration of Kristin Cope in Support of Defendant's Motion for Summary Judgment
**Original filename:**C:\fakepath\Defs MSJ - Dec of K. Cope.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/8/2019] [FileNumber=27430827-6]
[14ad05039d71f9f0d10a2764dfc2aff52fa2b1bf883e4b0bf1587f5f3ec914b2544c
f30abcf760c8b84e7f00dac73562cf809edc59b267612cd80b15cca66ec1]]

**Document description:**Exhibit A-C to Declaration of Kristin Cope in Support of Defendant's Motion for Summary Judgment
**Original filename:**C:\fakepath\Defs MSJ - Dec of K. Cope (Exhibits A-C) - final.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/8/2019] [FileNumber=27430827-7]
[02c05f18e42771190f075ca1f52bda1ac7e7aa0e6e65b400465f226c39b54143bdb4
8fa90d677e79e3b81d806f4a92a67b6012685062be68a135a88e738a39ab]]

**Document description:**Proposed Judgment in Favor of Defendant Following Court's Decision to Grant Defendant's Motion for Summary Judgment
**Original filename:**C:\fakepath\Defs MSJ - Proposed Judgment.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/8/2019] [FileNumber=27430827-8]
[864b25418adcdff71abb10757c0d97ff0af6c1411e784c32f3f9983c32cee540da22
633630756e8b87b8ec6425b5c0e08b26769572309d63573be48f63e90aaf]]

Exhibit G
73