Mike Arias (CSB #115385)
  mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
  alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:  (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
  swoodrow@woodrowpeluso.com
Patrick H. Peluso*
  ppeluso@woodrowpeluso.com
Taylor T. Smith*
  tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

Attorneys for Plaintiff and the alleged Classes

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| **Edwardo Munoz,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**7-Eleven, Inc.,** a Texas corporation,<br><br>Defendant. | Case No.  2:18-cv-03893-RGK-AGR<br><br>**NOTICE OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br>Date: July 15, 2019<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br>Complaint Filed: May 9, 2018 |

**PLEASE TAKE NOTICE** that on Monday, July 15, 2019, at 9:00 a.m., or as soon thereafter as counsel may be heard, counsel for Plaintiff Edwardo Munoz ("Plaintiff" or "Munoz") shall appear before the Honorable R. Gary Klausner or any judge sitting in his stead in Courtroom 850 of the United States District Court for the Central District of California, Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012 and present Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

This motion is made pursuant to Federal Rule of Civil Procedure 23. As explained in the accompanying memorandum, preliminary approval is justified because the class settlement is fair, reasonable, and adequate. Further, the Court should find that Plaintiff's proposed notice plan is reasonable and order that it be disseminated to the Classes.

This Motion is based on this Notice and Motion, the Memorandum in Support of the Motion and the exhibits attached thereto[1], oral argument of counsel, and any other matter that may be submitted at the hearing.

Respectfully submitted,

Dated: June 17, 2019

**Edwardo Munoz**, individually and on behalf of all others similarly situated,

By:   /s/   *Steven L. Woodrow*
One of Plaintiff's Attorneys

Mike Arias (CSB #115385)
mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
alfredo@asstlawyers.com

---

[1] Plaintiff recognizes that the attached settlement agreement does not bear the signature of 7-Eleven's corporate representative. However, 7-Eleven has confirmed that a signature will be forwarded to Plaintiff's counsel when administratively feasible.

**ARIAS SANGUINETTI WANG &
TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:  (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
    swoodrow@woodrowpeluso.com
Patrick H. Peluso*
    ppeluso@woodrowpeluso.com
Taylor T. Smith*
    tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

I.    Introduction ........................................................................................1

II.   The FCRA ...........................................................................................3

III.  Summary of the Plaintiff's Claims, the Litigation History, and the
      Settlement Process ............................................................................4

      A.    Plaintiff's Claims and the Litigation Process .........................4

      B.    The Mediation Process and Settlement History .....................6

IV.   Key Settlement Terms .......................................................................6

      A.    Class Definition .......................................................................7

      B.    Monetary Relief .......................................................................7

      C.    Prospective Relief ....................................................................8

      C.    Release of Liability ..................................................................8

V.    The Proposed Settlement is Fundamentally Fair, Reasonable, and
      Adequate, and Thus Warrants Preliminary Approval. ...................8

      A.    Plaintiff Munoz and Class Counsel have Adequately Represented
            the Classes. ..............................................................................9

      B.    The Settlement Agreement was the Result of Protracted, Arm's
            Length Negotiations Overseen by an Experienced Mediator. ......11

      C.    The Settlement Agreement provides Class Members with
            Substantial Relief. .................................................................12

      D.    The Proposal Treats Class Members Equally. .....................14

VI.   The Proposed Class Notice Plan is Reasonable. ..........................15

VII.  Conclusion .......................................................................................17

# TABLE OF AUTHORITIES

*Erami v. JPMorgan Chase Bank, N.A.*, Case No. CV 15-7728 PSG (PLAx), 2018
WL 6133654 (C.D. Cal. Mar. 5, 2018) ................................................9

*Esomonu v. Omnicare, Inc.*, Case No. 15-cv-02003-HSG, 2019 WL 499750 (N.D.
Cal. Feb. 8, 2019) ................................................13

*Feist v. Petco Animal Supplies, Inc.*, Case No. 3:16-cv-01369-H-MSB, 2018 WL
6040801 (S.D. Cal. Nov. 16, 2018) ................................................13

*Gilberg v. California Check Cashing Stores, LLC*,
913 F.3d 1169 (9th Cir. 2019) ................................................3

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................10, 12, 14

*Hefler v. Wells Fargo & Company*, Case No. 16-cv-05479-JST, 2018 WL 6619983
(N.D. Cal. Dec. 18, 2018) ................................................14

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............11

*In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. 2005) ....................11

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ................................8, 12

*In re UBER FCRA Litigation*, Case No. 14-cv-05200-EMC, 2018 WL 2047362
(N.D. Cal. May 2, 2018) ................................................13

*Lane v. Facebook, Inc.*, No. 10-16380, 2012 WL 4125857
(9th Cir. Sept. 20, 2012) ................................................9

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................15

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) ................................................3

*Terrell v. Costco Wholesale Corp.*, No. 16-2-19140 (Wash. Superior Court, King
Cnty. June 15, 2018) ................................................13

## STATUTES, RULES, SECONDARY SOURCES

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ................................................1, 3

Fed. R. Civ. P. 23, *et seq.* .................................................................. *passim*

Manual for Complex Litigation § 21.632 (4th ed. 2004) ........................................9

Conte & Newberg, 4 Newberg on Class Actions, (4th ed. 2002)..................8, 12, 15

# I.     Introduction

Plaintiff Edwardo Munoz ("Plaintiff" or "Munoz") and Defendant 7-Eleven, Inc. ("Defendant" or "7-Eleven") have reached a class action settlement, which, if approved, will resolve the above-captioned case challenging 7-Eleven's alleged use of an improper consumer report disclosure under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA" or "Act"). Specifically, Plaintiff alleges that 7-Eleven willfully violated the FCRA by providing consumer report disclosures to its applicants and employees that did not standalone as required by the Act.

The Parties have vigorously engaged in the litigation of these claims for over a year. In that time, Plaintiff has defeated a bid to dismiss the case, attained class certification for a national class and a California-only subclass, exchanged extensive written and oral discovery, disseminated notice to the certified Classes, briefed cross motions for summary judgment, and engaged in preparations for trial. In the midst of litigating, counsel for the Parties began to discuss the potential for a resolution. On January 16, 2019, following a request by the Parties, the Court referred the case to private mediation to be held no later than May 3, 2019 (Dkt. 48). Counsel for the Parties thereafter scheduled a full-day mediation session for April 9, 2019 in Toronto, Canada with nationally-recognized mediator Michael Dickstein. Despite making significant progress, the Parties did not achieve a resolution at the close of the mediation session. Instead, the Parties agreed to continue settlement discussions as they briefed their cross-motions for summary judgment and prepared for trial.

Ultimately, and with the continued assistance of the mediator, the Parties reached the proposed settlement agreement as trial preparations were underway. ("Settlement Agreement" or "Settlement," attached hereto as Exhibit A.) The result is a strong Settlement that provides class members with a meaningful recovery,

including monetary payments to class members as well as substantive changes to 7-Eleven's consumer report disclosure on a going-forward basis.

Pursuant to the Settlement Agreement, 7-Eleven has agreed to create a Settlement Fund of one million nine hundred seventy-two thousand and five hundred dollars ($1,972,500). The Settlement Fund will be used to pay all valid claims after payment of the costs of notice and administration plus any reasonable incentive award and attorneys' fees and costs that are approved by the Court. Each class member who submits a timely, valid claim will be eligible to receive one Claimant Payment. The Claimant Payments will be of equal value and will be calculated by subtracting from the Settlement Fund all amounts for notice and administration, any approved incentive award to the Class Representative, and any award of reasonable attorneys' fees and costs, and then dividing by the total number of approved claims. The Claimant Payments will be capped at a maximum of $550. Additionally, the Settlement Agreement provides class members with Notice of their rights to be excluded from, comment upon, and object to the Settlement Agreement together with the procedures for obtaining a Claimant Payment through the submission of a simple Claim Form (attached to the Settlement Agreement as Exhibit C), which can be mailed to the Settlement Administrator or submitted electronically via the Settlement Website. (*See* Settlement Agrmt., Ex. A.)

While Plaintiff/Class Representative Munoz is confident that he would have prevailed at trial had the case not settled, he is likewise cognizant of the risks of proceeding forward and the substantial and immediate relief that the agreement provides to class members. As such, and as set forth more fully below, Plaintiff moves the Court to preliminarily approve the Settlement Agreement on the terms set forth therein, approve the proposed Notice Plan, and schedule a final fairness hearing. In support, Plaintiff states as follows:

## II.     The FCRA

A brief summary of the law that forms the basis of Plaintiff's claims helps put the Settlement Agreement in context. The FCRA requires, prior to any consumer report being obtained about an applicant or employee, that the employer provide a disclosure and authorization informing the applicant or employee that such a report may be procured for employment purposes. The disclosure and authorization must be "clear and conspicuous" and presented "in a document that consists solely of the disclosure." *See* § 1681b(b)(2)(A)(i). The Ninth Circuit has made clear that the inclusion of any extraneous information in the disclosure, beyond those expressly authorized by the statute, violates the FCRA. *See Syed v. M-I, LLC*, 853 F.3d 492, 501 (9th Cir. 2017) ("Congress's express exception to the 'solely' requirement, allowing the disclosure document to also contain the authorization to procure a consumer report, does not mean that the statute contains other implicit exceptions as well."); *see also Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169, 1175 (9th Cir. 2019) ("We concluded the statute meant what it said: the required disclosure must be in a document that 'consist[s] 'solely' of the disclosure.'").

Applied here, Plaintiff believes that he would ultimately be able to show that 7-Eleven's Disclosure Regarding Background Investigation ("Disclosure") violated the FCRA's stand-alone disclosure requirement, and that it did so willfully. That is, 7-Eleven's form combines the disclosures regarding consumer reports and investigative consumer reports. Further, the form contains additional information, including vague statements about state statutory provisions, information about Sterling Talent Solutions, and a blanket authorization allowing the disclosure of information directly to 7-Eleven. Furthermore, Plaintiff would be able to demonstrate that 7-Eleven had regular access to legal counsel, that it had the

resources to comply with FCRA, and that its systematic failure to do so was willful.

**III.    Summary of the Plaintiff's Claims, the Litigation History, and the Settlement Process**

    **A.    Plaintiff's Claims and the Litigation Process.**

In February 2018, following his termination from 7-Eleven, Plaintiff Munoz contacted his counsel to discuss his legal rights. (*See* Declaration of Steven L. Woodrow ("Woodrow Decl."), attached hereto as Exhibit B.) Prior to the initiation of the Action, Class Counsel undertook an extensive investigation into Plaintiff Munoz's employment with 7-Eleven. (Woodrow Decl. ¶ 4.) The investigation began by interviewing Munoz regarding his employment and subsequent termination. (*Id.* 7.) Then, on March 9, 2018, Class Counsel sent a letter to 7-Eleven to obtain Plaintiff's complete employment file. (*Id.* 5.) On March 30, 2018, 7-Eleven responded and provided part of Munoz's employment file, which included, among other documents, the Disclosure Regarding Background Investigation. (*Id.* ¶ 6.) Following a thorough review of Munoz's employment file and additional conversations with Munoz himself, Class Counsel determined that a good faith basis existed to pursue the case as a putative class action on behalf of Plaintiff Munoz and all individuals similarly situated. (*Id.* ¶ 8.)

On May 9, 2018, Plaintiff filed a class action complaint in the United States District Court for the Central District of California against 7-Eleven alleging violations of the FCRA, which was subsequently amended on July 9, 2018. (*See* Dkts. 1, 23.) Specifically, the Complaint alleged that 7-Eleven violated the FCRA by procuring consumer reports about its job applicants and employees without first providing a lawful disclosure and a meaningful opportunity to authorize the release of the consumer reports.

Shortly thereafter, 7-Eleven moved to dismiss the Complaint. (*See* Dkt. 24.)

On September 5, 2018, following full briefing and oral argument, the Court issued its Order denying Defendant's motion to dismiss. (*See* Dkt. 37.) Directly after completing briefing 7-Eleven's motion to dismiss, the Parties worked to brief the Court regarding Plaintiff's Motion for Class Certification. (Dkts. 33, 38, 40.) On October 18, 2018, the Court issued its Order certifying Plaintiff's proposed classes. (*See* Dkt. 43.)

Plaintiff next worked to develop a notice plan, which the Court approved on February 12, 2019. (Dkt. 50.) Class Counsel then worked to effectuate the Notice Plan. This included working with Kurtzman Carson Consultants, LLC ("KCC") to finalize the notices and ensure that they were sent to the class members. (Woodrow Decl. 13.) Shortly after the notice was disseminated, Class Counsel began to field daily calls from class members seeking additional information about the case. (*Id.*) This process required Class Counsel to devote considerable time to assisting class members with various questions/concerns. (*Id.*)

Throughout the duration of this litigation, the Parties were engaged in extensive discovery. (Woodrow Decl. ¶ 15.) This includes serving and responding to discovery requests and conducting depositions—Class Counsel deposed 7-Eleven's corporate representative in Dallas, Texas on January 30, 2019, and counsel for 7-Eleven deposed Plaintiff Munoz on February 20, 2019 in Newport Beach, CA. (*Id.* ¶ 15.) Plaintiff also conducted third party discovery. (*Id.*) Counsel for both Parties regularly met-and-conferred regarding discovery disputes and, when necessary, raised the disputes with the Court. (*Id.*)

Beginning in 2019, the Parties started to discuss the possibility of scheduling a private mediation session. (Woodrow Decl. ¶ 16.) Despite both sides' confidence in their respective positions, the Parties ultimately agreed to attend a full-day mediation session. (*Id.*)

### B.    The Mediation Process and Settlement History

On April 9, 2019, counsel for both Parties engaged in a full-day mediation session in Toronto, Ontario, Canada conducted by Michael E. Dickstein—a well respected mediator with substantial class action experience. (Woodrow Decl. ¶ 17.) The mediation was adversarial with both Parties discussing their respective claims and planned defenses. (*Id.* ¶ 18.) Despite extensive discussions, the Parties were unable to reach an agreement that day. (*Id.*) Instead, the Parties agreed to proceed with briefing and arguing their cross motions for summary judgment, and preparing for the impending trial. (*Id.* ¶ 19.) At the same time, the Parties continued discussions in an effort to keep the potential for settlement alive. (*Id.* ¶ 21.)

In the midst of trial preparation—including, compiling exhibit lists, witness lists, drafting their memorandum of contentions of law and fact, drafting their jury instructions, and holding the Rule 16-2 meeting—and with the assistance of the mediator, the Parties reached an agreement in principal to resolve the claims at issue. (Woodrow Decl. ¶¶ 21, 22.) Only after an agreement was reached in principal with respect to the class members did the Parties discuss an incentive award for the Class Representative and an award of reasonable attorneys' fees for Class Counsel—which of course would be left to the Court's discretion in any case. (*Id.* ¶ 22.)

The end result of this process is a Settlement Agreement that is the result of arm's length negotiations and is free of collusion. And when compared to other FCRA settlements, the Settlement Agreement compares favorably. As such, and as set forth below, the Court should grant preliminary approval.

### IV.   Key Settlement Terms

The precise terms of the Settlement are set forth in the attached Settlement Agreement. (*See* Ex. A.) Below is a brief summary of the essential terms.

## A.    Class Definition

The "Class" is defined as all persons who fall into the definition of either class certified by the Court in its Order granting Class Certification (dkt. 43). The Classes are defined as follows:

**Disclosure Class:** All persons in the United States who (1) from a date [two years] prior to the filing of this initial complaint in this action to the date notice is sent to the Disclosure Class; (2) applied for employment with Defendant; (3) about whom Defendant procured a consumer repot; and (4) who were provided the same for FCRA disclosure and authorization as the disclosure and authorization form that Defendant provided to Plaintiff.

**California Subclass:** All members of the Disclosure Class who reside in California.

(Settlement Agrmt. § 1.7.)

## B.    Monetary Relief

The Settlement provides class members who file valid claims with substantial relief. Specifically, 7-Eleven has agreed to establish a Settlement Fund of $1,972,500 ("Settlement Fund"). (Settlement Agrmt. § 1.43.) The Settlement Fund will be used to pay all approved claims (up to a maximum per-claim amount of $550), Settlement Administration Expenses, any Incentive Award, and any Fee Award. After the subtraction of the Settlement Administration Expenses, any Incentive Award, and any Fee Award from the Settlement Fund, the remaining amount—the Net Settlement Fund—will be divided by the total number of approved claims. Each class member who submits an approved claim shall be entitled to receive one (1) Claimant Payment. Claimant Payments will be of equal value, up to a maximum of $550, and will be calculated by dividing the Net

1    Settlement Fund by the total number of approved claims.

2        **C.**    **Prospective Relief**

3        Additionally, 7-Eleven agreed to remedy the very issues that gave rise to the

4    instant litigation. That is, on a going-forward basis 7-Eleven will utilize a stand-

5    alone disclosure that does not contain any extraneous information, as required by

6    the FCRA. (Settlement Agrmt. § 2.2.)

7        **D.**    **Release of Liability**

8        In exchange for the relief described above, 7-Eleven will receive a full

9    release of any claims relating to the FCRA that belong to Plaintiff Munoz and any

10   class member who does not opt-out. (Settlement Agrmt. § 3.)

11       As explained below, the terms of the settlement are decidedly favorable to

12   the Classes and the Court should grant preliminary approval to this settlement.

13   **V.**    **The Proposed Settlement is Fundamentally Fair, Reasonable, and**

14       **Adequate, and Thus Warrants Preliminary Approval.**

15       Fed. R. Civ. P. 23(e) provides that "[t]he claims, issues, or defenses of a

16   certified class . . . may be settled, voluntarily dismissed, or compromised only with

17   the court's approval." Fed. R. Civ. P. 23(e). This requires a two-step process. Fed.

18   R. Civ. P. 23(e); *see also* 4 Herbert B. Newberg & Alba Conte, Newberg on Class

19   Actions ("Newberg"), §11.25, 3839 (4th ed. 2002). The first step is a preliminary,

20   pre-notification hearing to determine whether the proposed settlement falls "within

21   the range of possible approval." Newberg, §11.25, at 3839 (quoting Manual for

22   Complex Litigation §30.41 (3d ed. 1995)); *see also In re Syncor ERISA Litig.*, 516

23   F.3d 1095, 1110 (9th Cir. 2008). Preliminary Approval is appropriate and notice

24   should be sent to the class where "the proposed settlement appears to be the product

25   of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

26   not improperly grant preferential treatment to class representatives or segments of

27

28

the class, and falls within the range of possible approval." *Erami v. JPMorgan Chase Bank, N.A.*, Case No. CV 15-7728 PSG (PLAx), 2018 WL 6133654, at *5 (C.D. Cal. Mar. 5, 2018).

The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from settling parties. Manual for Complex Litigation, § 21.632 (4th ed. 2004). "[W]hether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, No. 10-16380, 2012 WL 4125857, at * 3 (9th Cir. Sept. 20, 2012).

In December 2018, amendments to Rule 23 became effective that clarified that courts should give consideration at the preliminary approval stage to the factors to be considered for final approval. Fed. R. Civ. P. 23(e)(1)(B). Those factors include whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). After an initial review of the factors and the Court being assured that it is likely to approve the proposal following a final fairness hearing, the Court should direct notice to the class. Fed. R. Civ. P. 23(e)(1).

A preliminary review of each of the final approval factors demonstrates that this settlement falls "within the range of possible approval" and warrants preliminary approval.

### A. Plaintiff Munoz and Class Counsel have Adequately Represented the Classes.

The first factor to consider is whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). To determine if the representation is in fact adequate, the Court must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

In its Order granting class certification (dkt. 43), this Court previously found that Class Counsel and Plaintiff Munoz would adequately represent the Classes, and that no conflicts of interest existed. Since that ruling, no conflicts have arisen and Class Counsel and Plaintiff have vigorously litigated the claims at issue. For his part, Plaintiff Munoz has demonstrated his commitment to this action by regularly communicating with counsel regarding the progress of the case, giving testimony at his deposition, responding to discovery, and preparing to testify at trial.

Similarly, Class Counsel have been working diligently to secure the best possible outcome for the class members. In furtherance of that objective, counsel have briefed and defeated a bid to dismiss the case, certified the Classes, and briefed cross motions for summary judgment. Further, counsel have deposed 7-Eleven's corporate representative, served written discovery on 7-Eleven, conducted third-party discovery, and briefed and argued several discovery disputes. In short, Class Counsel have invested substantial time and resources into furthering the interests of the Classes. Moreover, and as previously found by this Court, Class Counsel have the requisite skills and experience to effectively represent the Classes' interests and will continue to do so throughout the pendency of the action. (*See* Firm Resume of Woodrow & Peluso, LLC, a copy of which is attached to the Woodrow Decl. as Exhibit 1.) As such, Plaintiff and Class Counsel have and will

1  continue to adequately represent the interest of the members of the Classes.

2  **B.     The Settlement Agreement was the Result of Protracted, Arm's**

3  **Length Negotiations Overseen by an Experienced Mediator**

4  The second factor requires the Court to evaluate whether the proposal was

5  negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). When a settlement is

6  negotiated at arm's length by experienced counsel after meaningful discovery, there

7  exists a presumption that the end product is fair and reasonable. *See In re Heritage*

8  *Bond Litigation*, 2005 WL 1594403, at *2 (C.D. Cal. 2005). Though not

9  determinative, the presence of a neutral mediator who assisted the settlement

10 negotiations is further proof that the settlement was reached fairly and provides

11 adequate relief. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th

12 Cir. 2011).

13 The Settlement Agreement on review is the product of extensive arm's length

14 negotiations. Class Counsel have extensive experience litigating class actions and,

15 more significantly, FCRA class actions. (*See* Firm Resume, attached as Exhibit 1 to

16 the Woodrow Decl.) The combined experience of Class Counsel demonstrates that

17 the Classes were well represented at the bargaining table. For its part, 7-Eleven

18 retained experienced defense counsel to represent its interests in the negotiations as

19 well. Accordingly, there can be no serious dispute that both sides were represented

20 by experienced counsel.

21 Further, the negotiations were hard fought, protracted, and adversarial. Even

22 after a full-day mediation session overseen by a neutral mediator, the prospects of

23 settlement seemed tenuous. The Parties left the mediation session prepared to

24 litigate the case through trial and any appeals. Despite confidence in their respective

25 positions, both Parties continued to discuss a potential resolution while preparing

26 for trial. With the continued assistance of the mediator, the Parties eventually

27

28

reached an agreement. Moreover, the agreement was reached after all discovery had been completed and the Parties had an thorough understanding of each other's respective positions.

Consequently, the Settlement Agreement is not the product of collusion. Rather, it reflects an independent judgment that is both fair and reasonable to both Parties.

### C.   The Settlement Agreement provides Class Members with Substantial Relief

The third factor requires the Court to consider whether the "relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).

As this Court is undoubtedly aware, strong judicial policy exists favoring the voluntary conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg, §11.50, 155 (4th ed. 2002). While a district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027.

The instant Settlement Agreement provides substantial relief to class members. While the total potential recovery for willful violations of the FCRA—

$100 to $1,000 per violation are, to say the least, enticing. That reality only manifests itself assuming that Plaintiff's claims both survive summary judgment and prevail at trial. No small task. Even still, the prospect of an appeal would be but a foregone conclusion. All told, this case could drag on for years with the potential for no recovery at all. Conversely, when the relief provided is compared to the inherent risk that comes with protracted class litigation, it becomes apparent that the proposed settlement is clearly in the best interest of the class members. That is, the agreement provides immediate monetary payments to class members who file valid claims, and requires 7-Eleven to implement changes to remedy the very issues that gave rise to this litigation. The per-claim amount available is up to $550, which is on the higher end of the statutorily-available damages.

Additionally, this case isn't the first of its kind, and a review of recent FCRA settlements demonstrates that final approval has been granted in cases that provide less relief to class members. *See Terrell v. Costco Wholesale Corp.*, No. 16-2-19140 (Wash. Superior Court, King Cnty. June 15, 2018) (granting final approval to a $2.49 million settlement fund with 113,445 class members); *see also Feist v. Petco Animal Supplies, Inc.*, Case No. 3:16-cv-01369-H-MSB, 2018 WL 6040801 (S.D. Cal. Nov. 16, 2018) (granting final approval to a $1,200,000 settlement fund with 37,279 class members); *see also In re UBER FCRA Litigation*, Case No. 14-cv-05200-EMC, 2018 WL 2047362 (N.D. Cal. May 2, 2018) (granting final approval to a $7,500,000 settlement fund with 1,025,954 class members); *see also Esomonu v. Omnicare, Inc.*, Case No. 15-cv-02003-HSG, 2019 WL 499750 (N.D. Cal. Feb. 8, 2019) (granting final approval to a $1,300,000 with approx. 45,000 class members).

Moreover, when factoring a projected claims rate and subtracting projected expenses, the agreement continues to impress. That is, assuming a claims rate of 5%

1   (a favorable response rate), administrative fees and costs of $125,000, a $5,000

2   Incentive Award, and assuming solely for the sake of this illustration that the Fee

3   Award is ultimately 25%, then each Claimant Payment would equal approximately

4   $517. To avoid duplication, the breakdown of the claims process and how all fees

5   will be paid are described in greater detail in Section IV, B, *supra*. This amount

6   further demonstrates that the relief provided to class members falls "within the

7   range of possible approval."

8           Finally, Class Counsel will likely request twenty-five (25) percent of the

9   Settlement Fund as attorneys' fees plus costs (the Settlement Agreement allows

10  Class Counsel to seek up to 33% of the Settlement Fund as an award of reasonable

11  attorneys' fees and expenses). In the Ninth Circuit, twenty-five percent of the

12  common fund is the benchmark award for attorneys' fees. *See Hanlon*, 150 F.3d at

13  1029. Class Counsel will provide sufficient support for the fee award at least

14  fourteen (14) days prior to the opt-out/objection deadline. This will allow class

15  members who wish to comment upon the fee award or request an exclusion to do so

16  with adequate time.

17          The Court should therefore find that the Settlement Agreement provides class

18  members with adequate relief and this factor favors approval.

19      **D.    The Proposal Treats Class Members Equally.**

20          The fourth and final factor asks whether "the proposal treats class members

21  equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the "Court

22  considers whether the Settlement 'improperly grant[s] preferential treatment to class

23  representatives or segments of the class.'" *Hefler v. Wells Fargo & Company*, Case

24  No. 16-cv-05479-JST, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018) (quoting

25  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

26          Put simply, no class member or segment of the class will receive any

27

28

preferential treatment under this Settlement Agreement. Rather, all class members were subjected to the same background check process, and were presented with identical disclosures. This agreement allows every class member the right to file a claim and obtain one Claimant Payment. The Net Settlement Fund will then be divided by the total number of Claimant Payments. Thus, every individual who files a valid claim form will receive an equal payment. As such, this factor argues in favor of approval.

For the reasons stated above, the Settlement Agreement is reasonable and easily falls within the range of possible approval. As such, the Court should preliminarily approve the Agreement.

## VI. The Proposed Class Notice Plan is Reasonable

Lastly, to satisfy the requirements of Rule 23 and due process, Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). Further, notice is "adequate if it may be understood by the average class member." Newberg, § 11:53, at 167; *see also Rodriguez*, 563 F.3d at 962 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is 'adequate if it may be understood by the average class member.'")).

A brief review of the effectiveness of the prior notice plan demonstrates the reasonableness of the proposed second notice plan. In April 2019, in accordance with the notice plan approved by this Court, KCC disseminated notice to the class members. (Woodrow Decl. ¶ 13.) Out of 52,165 total potential class members, KCC mailed direct mailed notices to 52,009 individuals, or 99.7% of class members. (*Id.*

¶ 14.) To date, out of the 52,009 direct mailings, 7,111 mailings have been returned as undeliverable. (*Id.*) For these mailings, KCC will work to identify a new address to reach each individual—including, utilizing the national change of address registry, reverse phone look-ups of telephone numbers, and other appropriate methods. (*Id.*) Concurrent with the direct mailings, KCC was able to locate email addresses and direct notice via electronic mail to 49,448 class members, or 94.79% of all class members. (*Id.*) KCC was also able to determine that only 912 individuals, or 1.75 percent of all class members, did not receive notice via either electronic mail or direct mail. Overall, these results are impressive.

As evidenced by the proposed notices appended to the Settlement Agreement, the Notice Plan developed by the Parties is reasonable and would be understood by the average class member. (*See* Settlement Agrmt., Exs. A, B, & C.) Given its prior success, the Parties have selected KCC to administer the settlement notice. For the settlement notice, KCC will utilize the Class List previously provided by 7-Eleven to disseminate notice to the Classes. KCC will be able to utilize the results of the prior notice plan to increase the effectiveness of the notice. That is, within 30 days of Preliminary Approval, KCC will disseminate the Short Form (postcard) Notice, via first class mail, to the 45,447 class members who successfully received the class notice. KCC will also work to identify a current address, using all steps reasonably necessary, for the 6,562 class members whose class notice was determined to be undeliverable. Upon locating a new address, KCC will deliver the postcard notice to these individuals as well. Coupled with the additional electronic mail notice, the effectiveness of the settlement notice will likely exceed that of the class certification notice.

Further, KCC has established and will continue to maintain a Settlement Website that will host the traditional Long Form Notice. (Settlement Agrmt. § 4.1.)

Following the Court approving Plaintiff's prior notice plan, KCC established a case website at 7elevenfcralawsuit.com. To avoid confusion, this website will also serve as the Settlement Website. On it class members can find the long form notice, the settlement agreement, the preliminary approval order, and other relevant documents. Further, class members will be able to use this website to download claim forms for mailing or to submit such claim forms electronically.

The Notice Plan will provide information to class members about the settlement reached in the case at hand. (Settlement Agrmt. § 4.1.) The Notice Plan will explain the terms and provisions of the proposed settlement, including the amount of the settlement fund and how it will be distributed. (*Id.*) The Notice Plan will advise the class members of their rights, including the right to be excluded from, comment upon, and object to the Agreement and the procedures for taking such actions. (*Id.*) The Notice Plan will also refer the class members to the Settlement Website to explain the procedures for submitting a claim form (*Id.*) Finally, the notice will also include Class Counsels' contact information where class members can reach out for additional information.

The draft notices are attached as exhibits to the settlement agreement and are near final form, pending any additions or edits required by the Court.

## VII. Conclusion

For the reasons stated above, Plaintiff respectfully requests that the Court enter and Order: (1) granting preliminary approval of the Settlement Agreement in this matter, (2) approving the form and content of the Notice to be sent to the class members pursuant to the terms of the Settlement Agreement, (3) setting dates for filing claims, requesting exclusion, and objecting, and (4) scheduling a final fairness hearing.

Respectfully Submitted,

**EDWARDO MUNOZ**, individually and on behalf of all others similarly situated,

Dated: June 17, 2019

By: */s/ Steven L. Woodrow*
      One of Plaintiff's Attorneys

Mike Arias (CSB #115385)
    mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
    alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
    swoodrow@woodrowpeluso.com
Patrick H. Peluso*
    ppeluso@woodrowpeluso.com
Taylor T. Smith*
    tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on June 17, 2019.

*/s/ Steven L. Woodrow*