Mike Arias (CSB #115385)
  mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
  alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:   (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
  swoodrow@woodrowpeluso.com
Patrick H. Peluso*
  ppeluso@woodrowpeluso.com
Taylor T. Smith*
  tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

Attorneys for Plaintiff and the Classes

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **Edwardo Munoz,** individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **7-Eleven, Inc.,** a Texas corporation, <br><br> Defendant. | Case No.  2:18-cv-03893-RGK-AGR <br><br> **NOTICE OF PLAINTIFF'S MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD** <br><br> Date: November 4, 2019 <br> Time: 9:00 a.m. <br> Judge: Hon. R. Gary Klausner <br> Courtroom: 850 <br> Complaint Filed: May 9, 2018 |

**PLEASE TAKE NOTICE** that on Monday, November 4, 2019, at 9:00 a.m., or as soon thereafter as counsel may be heard, counsel for Plaintiff Edwardo Munoz ("Plaintiff" or "Munoz") shall appear before the Honorable R. Gary Klausner or any judge sitting in his stead in Courtroom 850 of the United States District Court for the Central District of California, Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012 and present Plaintiff's Motion for Award of Reasonable Attorneys' Fees, Expenses, and Incentive Award.

This Motion is based on this Notice and Motion, the Memorandum in Support of the Motion and the exhibits attached thereto, oral argument of counsel, and any other matter that may be submitted at the hearing.

Respectfully submitted,

Dated: September 20, 2019

**Edwardo Munoz**, individually and on behalf of all others similarly situated,

By:     /s/   *Steven L. Woodrow*
One of Plaintiff's Attorneys

Mike Arias (CSB #115385)
  mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
  alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:  (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
  swoodrow@woodrowpeluso.com
Patrick H. Peluso*
  ppeluso@woodrowpeluso.com
Taylor T. Smith*
  tsmith@woodrowpeluso.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

I.    Introduction ................................................................................1

II.   Legal, Factual, And Procedural Background ........................2

     A.    The FCRA .................................................................2

     B.    Plaintiff's Claims And The Litigation Process ...............3

     C.    The Mediation Process And Settlement History ...............5

     D.    Key Settlement Terms ...............................................6

         1.    Class Definition ................................................6

         2.    Monetary Relief ................................................7

         3.    Prospective Relief.............................................7

         4.    Release Of Liability ...........................................8

III. Argument ....................................................................................8

     A.    Class Counsel's Request For Attorneys' Fees Of 25% Of The Settlement Fund Is Reasonable And Consistent With Awards In Common Fund Cases In This Circuit. ...........................................10

         1.    The Settlement Is An Exceptional Result For The Class ....10

         2.    Class Counsel Faced Meaningful Risk In Taking The Case. ..............................................................12

         3.    The Settlement Also Provides Prospective Relief. ..............13

         4.    The Requested Award Equals the Ninth Circuit Benchmark. ........................................................13

         5.    Class Counsel Invested Substantial Time, Advanced Costs, And Had To Forego Accepting Other Matters During The Pendency Of This Action.........................................14

         6.    Class Counsel took this case on a Contingent Basis. ...........15

**B.**   **The Requested Fee Award Is Also Reasonable When Applying The Lodestar Method.** ................................................................**16**

**C.**   **The Court Should Also Award Class Counsel's Reasonable Expenses of $20,961.15** ..................................................................**19**

**D.**   **The Court Should Likewise Approve The Requested Incentive Award For Plaintiff Munoz's Efforts.** .............................................**19**

**IV.**   **Conclusion** ...............................................................................................**20**

# TABLE OF AUTHORITIES

*Aboudi v. T-Modile USA, Inc.*, No. 12cv2169 BTM (NLS), 2015 WL 4923602,
(S.D. Cal. Aug. 18, 2015) ..........................................................9

*Aceves v. Autozone Inc.*, No. 5:14-cv-2032 (C.D. Cal. Nov. 18, 2016) .................11

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ....................................8

*Bright v. Garberg*, Case No. CV10-7933-RGK (JCx), 2014 WL 11497797 (C.D.
Cal. Feb. 24, 2014)..........................................................10

*Chambers v. Whirlpool Corp.*, 214 F.Supp.3d. 877 (C.D. Cal. Oct. 11, 2016).......20

*Cohorst v. BRE Props., Inc.*, Case No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923
(S.D. Cal. Nov. 14, 2011) ......................................................12

*Estes v. L3 Technologies, Inc.*, Case No.: 3:17-cv-02356-H-LL, 2019 WL 141564
(S.D. Cal. Jan. 9, 2019) ......................................................11

*Feist v. Petco Animal Supplies, Inc.*, Case No.: 3:16-cv-01369-H-MSB, 2018 WL
6040801 (S.D. Cal. Nov. 16, 2018) .......................................11, 13

*Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008
WL 8150856 (C.D. Cal. July 21, 2008).........................................9

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002).........18

*Flores v. Express Services, Inc.*, CIVIL ACTION NO. 14-3298, 2017 WL 1177098
(E.D. Pa. Mar. 30, 2017) ......................................................13

*Florida v. Dunne*, 915 F.2d 542 (9th Cir. 1990) ....................................9

*Ford v. CEC Entertainment Inc.*, 2015 WL 11439033
(S.D. Cal. Dec. 14, 2015) ......................................................13

*Georgino v. Sur la Table, Inc.*, CASE NO. CV 11-03522 MMM (JEMx), 2013 WL
12122430 (C.D. Cal. May 9, 2013)...........................................15

*Gilberg v. California Check Cashing Stores, LLC*,
913 F.3d 1169 (9th Cir. 2019)...............................................3

*Good Morning to You Prod. Corp. v. Warner/Chappell Music, Inc.*,
    Case No. CV 13-4460-GHK (MRWx), 2016 WL 6156076 (C.D. Cal.
    Aug. 16, 2016) ...................................................................................16

*Hollis v. Union Pacific Railroad Co.*, Case No. EDCV 17-2449 JGB (SHKx), 2018
    WL 6267342 (C.D. Cal. Sept. 19, 2018)...............................................13

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) .............................8

*In re Bluetooth Headset Products Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011)................................................8, 10, 13, 18

*In re Heritage Bond Litig.*, No. 02–ML–1475 DT, *et al.*, 2005 WL 1594403 (C.D.
    Cal. June 10, 2005) .............................................................................11

*In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ..................20

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ...............10

*In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transaction Act
    (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014)..............9, 16, 19, 20

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ......15

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, Case No. C17-541RSM 2018 WL
    5013764 (W.D. Wash. Oct. 16, 2018) ...................................................8

*Jones v. San Diego Metro. Transit System*, Case No. 3:14-cv-01778-KSC, 2017 WL
    5992360 (S.D. Cal. Nov. 30, 2017) ......................................................8

*Kirchner v. Shred-It USA Inc.*, Civ. No. 2:14–1437 WBS EFB, 2015 WL 1499115
    (E.D. Cal. Mar. 31, 2015) ...................................................................11

*Lavalle v. Chex Systems, Inc.*, 8:08–cv–01383 (C.D. Cal. 2011)...........................11

*Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, Case No. 2:16-cv-1066, 2017 WL
    2838148 (S.D. Ohio June 30, 2017)....................................................11

*Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160 (C.D. Cal. 2010) ......17

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)........................19

*Santos v. Jasco Oil Company*, Case No.: 1:14-cv-0738 -JLT, 2015 WL 5732829

       (E.D. Cal. Sept. 29, 2015) ...................................................................13

*Schofield v. Delta Air Lines, Inc.*, 3:18-cv-00382-EMC

       (N.D. Cal. July 16, 2019) ...................................................................13

*Syed v. M-I, LLC*, 2016 WL 310135 (E.D. Cal. Jan. 26, 2016)..............................13

*Vizcaino v. Microsoft Corp.*, 142 F.Supp.2d 1299 (W.D. Wash. 2001)..............9, 16

*Weeks v. Kellogg Co.*, No. CV 09–08102, 2013 WL 6531177 (C.D. Cal. Nov. 23,

       2013) ...................................................................20

*(6) Mexican Workers v. Arizona Citrus Growers*,

       904 F.2d 1301 (9th Cir. 1990)...........................................................10

## STATUTES, RULES, SECONDARY SOURCES

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ...........................................1, 3

Fed. R. Civ. P. 23...................................................................19

Manual for Complex Litigation 4th Ed. 14.121 (2004)...........................................9

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, (3d Ed. 1992).....17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction

The settlement reached in this lawsuit—which, if finally approved, would resolve all claims brought by Plaintiff Edwardo Munoz ("Plaintiff" or "Munoz") under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA" or the "Act") on behalf of himself and the Settlement Class—represents a terrific outcome for the class. The Settlement provides cash payments to class members and requires substantive changes to Defendant 7-Eleven, Inc.'s ("Defendant" or "7-Eleven") hiring practices. Indeed, 7-Eleven has agreed to establish a settlement fund in the amount of one million nine hundred seventy-two thousand five hundred dollars ($1,972,500) that will be used to pay all valid claims. Each claim will be of equal value and will be calculated by subtracting from the Settlement Fund all amounts for notice and administration, any incentive award to the Class Representative, and an award of reasonable attorneys' fees and costs, and then dividing by the total number of valid claims (up to a cap of $550 per claim). 7-Eleven has also agreed to utilize a FCRA compliant consumer report disclosure going forward.

These results didn't materialize by sheer coincidence. Rather, the Settlement is a product of Class Counsel's vigorous prosecution of this action on behalf of Munoz and the other class members. Class Counsel invested considerable time, resources, and effort working toward the prosecution and eventual resolution of this action. In that time, Class Counsel has: (i) defeated a bid to dismiss the case, (ii) attained certification of two classes of individuals subjected to 7-Eleven's allegedly problematic disclosure, (iii) engaged in extensive discovery, both written and oral, (iv) briefed cross-motions for summary judgment, and (v) spent considerable time preparing for trial. Eventually, following a full-day mediation session in Toronto, Canada (followed by more than a month of continued settlement talks) and in the

midst of preparing for trial, the parties reached the instant Settlement.

The Settlement provides for an attorneys' fee award to Class Counsel of up to one-third of the Settlement Fund. Having reviewed the pertinent considerations, however, Class Counsel is only seeking $493,125 (or 25% of the Fund) in fees plus $20,961.15 in reimbursable expenses here. This amount is demonstrably reasonably when considering the results achieved and the prevailing benchmark for common fund settlements in this circuit. Further, the requested fees and expenses are also reasonable when examined using the lodestar method as a crosscheck (which would only require a 1.12 multiplier). Put simply, Class Counsel devoted substantial time and effort to initiate, prosecute, and successfully resolve this case.

Additionally, and in recognition of Plaintiff Munoz's dedication and contribution to the case as the representative plaintiff, the Settlement provides for an incentive payment in the amount of $5,000—which is reasonable and in line with customary practices in this circuit. Throughout the litigation, Munoz communicated regularly with Class Counsel, supplied evidence and testimony, and kept up-to-date on the status of this action.

As such, and as discussed further below, this Court should find that the requested attorneys' fees, expenses, and incentive award are reasonable and enter an Order awarding such amounts.

## II.     Legal, Factual, And Procedural Background

### A.     The FCRA

The FCRA requires, prior to any consumer report being obtained about an applicant or employee, that the employer provide a disclosure and authorization informing the applicant or employee that such a report may be procured for employment purposes. The disclosure and authorization must be "clear and conspicuous" and be presented "in a document that consists solely of the

disclosure." *See* § 1681b(b)(2)(A)(i). The Ninth Circuit has made clear that the inclusion of extraneous information in the disclosure, beyond those expressly authorized, violates the FCRA. *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169, 1175 (9th Cir. 2019) ("[T]he statute meant what it said: the required disclosure must be in a document that 'consist[s] 'solely' of the disclosure.'").

Applied here, Plaintiff believes that he would ultimately have been able to show that 7-Eleven's Disclosure willfully violated the FCRA's stand-alone disclosure requirement. 7-Eleven's form combines the disclosures regarding consumer reports with the disclosures required for investigative consumer reports. Further, the form contains additional information, including statements about state statutory provisions, Sterling Talent Solutions, and a blanket authorization allowing the disclosure of information directly to 7-Eleven. Furthermore, 7-Eleven had regular access to legal counsel and the resources to comply with FCRA.

For its part, 7-Eleven pleaded a litany of affirmative defenses, including its argument that its disclosure didn't violate the FCRA, that any violation was not committed willfully, and that any class should be decertified in light of a supposed need for individual inquiries into each class member's understanding of the form.

## B.     Plaintiff's Claims And The Litigation Process

In February 2018, Plaintiff Munoz was terminated by 7-Eleven based on the contents of his consumer report. (*See* Declaration of Steven L. Woodrow ("Woodrow Decl."), attached hereto as Exhibit A, ¶ 3.) Plaintiff then contacted Class Counsel to discuss his legal rights and remedies. (*Id.*) Prior to initiating this action, Class Counsel undertook an investigation into Plaintiff Munoz's employment with 7-Eleven and 7-Eleven's hiring practices. (*Id.* ¶¶ 4-8.) Class Counsel began by interviewing Munoz regarding his employment and subsequent termination. (*Id.* ¶ 5.) On March 9, 2018, Class Counsel sent a letter to 7-Eleven

seeking Plaintiff's complete employment file. (*Id.* ¶ 6.) On March 30, 2018, 7-Eleven responded and produced part of Munoz's employment file, which included, among other documents, 7-Eleven's Disclosure Regarding Background Investigation. (*Id.* ¶ 7.) Following a thorough review of Munoz's employment file and a review of publicly available information, Class Counsel determined that a good faith basis existed to pursue the case as an alleged class action. (*Id.* ¶¶ 8, 9.)

On May 9, 2018, Plaintiff filed his class action complaint in the United States District Court for the Central District of California.[1] (Dkt. 1.) Specifically, the Complaint alleged that 7-Eleven violated the FCRA by procuring consumer reports about its job applicants and employees without first providing a standalone disclosure and an opportunity to authorize the release of the information.

7-Eleven moved to dismiss. (*See* Dkt. 24.) On September 5, 2018, following full briefing and oral argument, the Court issued its Order denying Defendant's motion to dismiss. (*See* Dkt. 37.) The Parties then worked to fully brief Plaintiff's Motion for Class Certification. (Dkts. 33, 38, 40.) On October 18, 2018, the Court issued its Order certifying Plaintiff's proposed classes. (*See* Dkt. 43.)

Plaintiff next worked to develop a notice plan, which the Court approved on February 12, 2019. (Dkt. 50.) Class Counsel then worked to effectuate the Notice Plan. (Woodrow Decl. ¶ 15.) This included working with Kurtzman Carson Consultants, LLC ("KCC") to finalize the notices and ensure that they were sent to the class. (*Id.*) Shortly after the notice was disseminated, Class Counsel began to field daily calls from class members seeking additional information about the case. (*Id.*) This process required Class Counsel to devote considerable time to assisting class members with various questions/concerns. (*Id.*)

The Parties were also engaged in extensive written and oral discovery.

---

[1] The Complaint was subsequently amended on July 9, 2018. (*See* Dkt. 23.)

(Woodrow Decl. ¶ 16.) Class Counsel deposed 7-Eleven's corporate representative in Dallas Texas on January 30, 2019, and counsel for 7-Eleven deposed Plaintiff Munoz on February 20, 2019, at their office in Newport Beach, California. (*Id.*) Plaintiff also conducted third party discovery through a subpoena on Sterling Talent Solutions. (*Id.*) Counsel for both Parties regularly met and conferred regarding discovery disputes and, when necessary, raised the disputes with the Court in accordance with Magistrate Judge Rosenberg's discovery procedures. (*Id.*)

### C.   The Mediation Process And Settlement History

The Parties began discussing the possibility of scheduling a private mediation session in 2018. (Woodrow Decl. ¶ 18.) Despite an initial willingness to mediate, 7-Eleven's counsel indicated that no mediation could occur too early in the case. (*Id.*) Ultimately, following significant discovery the Parties agreed to attend a full-day mediation session with Michael E. Dickstein—a well-respected mediator with substantial class action experience. (*Id.* ¶¶ 19, 20.)

On April 9, 2019, counsel met for a full-day mediation session in Toronto, Canada. The mediation was hard-fought with both parties expressing confidence in their respective positions. (Woodrow Decl. ¶ 21.) Despite extensive back and forth discussions, the Parties were unable to reach an agreement with Mr. Dickstein that day. (*Id.*) Instead, the Parties agreed to proceed with briefing and arguing their cross-motions for summary judgment and preparing for trial. (*Id.*) At the same time, the Parties continued discussions in an effort to keep the potential for settlement alive. (*Id.* ¶ 22.)

In the midst of trial preparation—which included the compiling of exhibit and witness lists, the drafting of memoranda of contentions of law and fact and jury instructions, and holding a Rule 16-2 meeting of counsel—and with the continued assistance and oversight of the mediator, the Parties reached an agreement in

principal to resolve the claims at issue. (Woodrow Decl. ¶ 24.) Only after an agreement was reached in principal with respect to the class members did the Parties negotiate an incentive award for the Class Representative and an award of reasonable attorneys' fees for Class Counsel. (*Id.*)

Counsel for the Parties thereafter worked to memorialize the terms of the Settlement. (Woodrow Decl. ¶ 25.) On June 17, 2019, Plaintiff filed his Motion for Preliminary Approval of Class Action Settlement. (Dkt. 85.) On July 18, 2019, the Court continued the hearing on Plaintiff's motion and required the parties to file an addendum that clarified the language of the release, limiting it to claims that were alleged in the pleadings. (Dkt. 89) On July 30, 2019, following the filing of the amended agreement, the Court granted preliminary approval. (Dkt. 91.)

Since then, Class Counsel has worked to finalize the notice documents, including the claim form, the long form notice, the short form (postcard) notice, the email notice, the Settlement Website, and the interactive voice recording (IVR) messaging. (Woodrow Decl. ¶ 28.) Class Counsel also worked to ensure that KCC properly and timely provided notice to the class members. (*Id.* ¶ 29.) Class Counsel has received over 100 inquiries from class members regarding their rights and they continue to field calls from class members who require assistance with the claims process. (*Id.* ¶ 30.) Further, Class Counsel continue to monitor the claims process to ensure that it runs efficiently. (*Id.*)

### D.   Key Settlement Terms

The precise terms of the Settlement are set forth in the attached Settlement Agreement. (*See* Settlement Agrmt., Dkt. 90, Ex. A.) Below is a brief summary of the essential terms.

#### 1.   Class Definition

The "Class" is defined as all persons who fall into the definition of either

class certified by the Court in its Order granting Class Certification (dkt. 43). The classes are defined as follows:

> **Disclosure Class:** All persons in the United States who (1) from a date [two years] prior to the filing of this initial complaint in this action to the date notice is sent to the Disclosure Class; (2) applied for employment with Defendant; (3) about whom Defendant procured a consumer repot; and (4) who were provided the same for FCRA disclosure and authorization as the disclosure and authorization form that Defendant provided to Plaintiff.

> **California Subclass:** All members of the Disclosure Class who reside in California.

(Settlement Agrmt. § 1.7.)

### 2.     Monetary Relief

7-Eleven has agreed to establish a Settlement Fund of $1,975,000 ("Settlement Fund"). (Settlement Agrmt. § 1.43.) The Settlement Fund will be used to pay all approved claims, Settlement Administration Expenses, any Incentive Award, and any Fee Award. After the subtraction of the Settlement Administration Expenses, any Incentive Award, and any Fee Award from the Settlement Fund, the remaining amount—the Net Settlement Fund—will be divided by the total number of approved claims. Each class member who submits an approved claim shall be entitled to receive one (1) Claimant Payment. Claimant Payments will be of equal value and will be calculated by dividing the Net Settlement Fund by the total number of approved claims. Such payments are subject to a cap of $550 each.

### 3.     Prospective Relief

7-Eleven has also agreed, for a period of at least eighteen (18) months from the Effective Date, to use an updated stand-alone disclosure form that does not

contain any extraneous information. (Settlement Agrmt. § 2.2.)

### 4. Release Of Liability

As set forth in the Addendum filed on July 29, 2019, in exchange for the relief described above, 7-Eleven will receive a release of any claims relating to the factual allegations that gave rise to this case that belong to Plaintiff Munoz and any class member who does not opt-out. (Settlement Agrmt. § 3.)

As explained below, these results and the work that went into achieving them support Class Counsel's requested award for reasonable fees and expenses.

## III. Argument

The Supreme Court has consistently recognized "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010)).

While courts have discretion to employ either method, "[t]he percentage method is better suited for settlements where a common fund is created and easily quantified." *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, Case No. C17-541RSM, 2018 WL 5013764, at *6 (W.D. Wash. Oct. 16, 2018); *see also Jones v. San Diego Metro. Transit System*, Case No. 3:14-cv-01778-KSC, 2017 WL 5992360, at * 4 (S.D. Cal. Nov. 30, 2017); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) (holding that the percentage-of-recovery method is preferable to the lodestar method because it encourages efficient resolution by providing an incentive for early, yet reasonable settlement); *see also*

*Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (citing a "groundswell of support for mandating a percentage-of-the-fund approach in common fund cases"); *see also* Manual for Complex Litigation 4th Ed. 14.121 (2004) ("[I]n practice, the lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, . . . capable of manipulation . . . [and] creates inherent incentive to prolong the litigation.").

Despite a clear preference for the percentage-of-recovery method, the lodestar method is still used as "a cross-check to assess the reasonableness of the percentage award." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *9 (C.D. Cal. July 21, 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)). "The lodestar figure is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transaction Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014). Further, "[t]o restrict Class Counsel to the hourly rates they customarily charge for non-contingent work—where payment is assured—would deprive them of any financial incentive to accept contingent-fee cases which may produce nothing." *Vizcaino v. Microsoft Corp.*, 142 F.Supp.2d 1299, 1306 (W.D. Wash. 2001). As such, courts routinely find that "[m]ultipliers of 1 to 4 are . . . appropriate in common fund cases." *Aboudi v. T-Modile USA, Inc.*, No. 12cv2169 BTM (NLS), 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015).

As explained below, the requested attorneys' fees should be granted under either the percentage or lodestar method. Class Counsel spent considerable time and effort litigating this case and ultimately achieved an outstanding result for the class members while preparing for trial. As such, the Court should find that the requested fees and expenses are reasonable.

**A.**   **Class Counsel's Request For Attorneys' Fees Of 25% Of The Settlement Fund Is Reasonable And Consistent With Awards In Common Fund Cases In This Circuit.**

The Ninth Circuit has determined the benchmark for an award of reasonable attorneys' fees to be 25 percent of the settlement fund. *See In re Bluetooth*, 654 F.3d at 942; *see also Bright v. Garberg*, Case No. CV10-7933-RGK (JCx), 2014 WL 11497797, at *2 (C.D. Cal. Feb. 24, 2014) ("The Ninth Circuit has accepted a "benchmark" fee award of twenty-five percent of the entire settlement fund."). The benchmark percentage should be adjusted upward or downward "when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant facts." *See (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

When evaluating the reasonableness of a fee request under the percentage method, courts consider several non-exhaustive factors, including: (1) the extent to which class counsel achieved exceptional results for the class, (2) whether the case was risky for class counsel, (3) whether counsel's performance generated benefits beyond the cash settlement fund, (4) the market rate for the particular field of law, (5) the burdens class counsel experienced while litigating the case, and (6) whether the case was handled on a contingency basis. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (citing *Vizcaino*, 290 F.3d at 1047-50).

As explained below, each of the factors supports the requested fees here.

**1.**   **The Settlement Is An Exceptional Result For The Class.**

The first factor focuses on the benefits obtained. In this case, class members get the benefit of substantial monetary relief, which compares favorably to similar FCRA settlements, in addition to prospective relief that cures the problem that sparked the litigation in the first place. This factor supports the requested fee award.

As a result of Class Counsel's efforts, 7-Eleven has agreed to establish a $1,972,500 Settlement Fund. This is a substantial sum, which, after costs, fees, and the incentive award are deducted, will be paid to the class members. To date, approximately 2.33% of the Class has filed claims, which will likely result in payments per class member equal to $550. (Woodrow Decl. ¶ 34.) This amount frankly dwarfs individual payments in FCRA similar settlements. *See Aceves v. Autozone Inc.*, No. 5:14-cv-2032, Dkt. 58 (C.D. Cal. Nov. 18, 2016) ($20 - $40 per class member); *see also Lavalle v. Chex Systems, Inc.*, 8:08–cv–01383 (C.D. Cal. 2011) ($82 per person); *see also Kirchner v. Shred-It USA Inc.*, Civ. No. 2:14–1437 WBS EFB, 2015 WL 1499115, at *11 (E.D. Cal. Mar. 31, 2015) ($45.55 per class member); *see also Feist v. Petco Animal Supplies, Inc.*, Case No.: 3:16-cv-01369-H-MSB, 2018 WL 6040801, at *5 (S.D. Cal. Nov. 16, 2018) ($20 per disclosure class member); *see also Estes v. L3 Technologies, Inc.*, Case No.: 3:17-cv-02356-H-LL, 2019 WL 141564, at *6 (S.D. Cal. Jan. 9, 2019) ($75 per class member); *see also Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, Case No. 2:16-cv-1066, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) ($13 - $80 per class member).

The benefits obtained for the class were the direct result of Class Counsel's work. Indeed, the successful prosecution of complex class actions "requires unique legal skills and abilities." *See In re Heritage Bond Litig.*, No. 02–ML–1475 DT, *et al.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (citation omitted). As detailed above, Class Counsel have spent considerable time and resources litigating the claims from February 2018 through the present. Specifically, counsel engaged in extensive motion practice, obtained extensive information throughout the discovery process, and spent substantial time preparing for trial. Class Counsel also engaged in protracted settlement negotiations, which included a full day mediation session and over month of continued settlement discussions.

1   Thus, the Settlement results in substantial recovery for the class members and

2   was the direct result of Class Counsel's skill and effort.

3   **2.   Class Counsel Faced Meaningful Risk In Taking The Case.**

4   This case involves complicated factual and legal issues. While Class Counsel

5   are confident in the strength of the case, they are likewise mindful of the substantial

6   risk associated with proceeding. Class Counsel have vigorously litigated this matter

7   on an entirely contingent basis—to date they have received no compensation for

8   their work at all. (Woodrow Decl. ¶ 38.) For more than a year, Class Counsel

9   invested substantial time and resources in prosecuting this matter with the ever-

10  present risk of receiving nothing. (*Id.*) Class Counsel defeated a bid to dismiss the

11  case, obtained class certification, engaged in a multitude of discovery disputes, and

12  briefed cross-motions for summary judgment (which could have been decided in 7-

13  Eleven's favor). This is especially so given that the Class faced seasoned defense

14  counsel who were experienced in class litigation and prepared to mount a series of

15  defenses at trial and on appeal. *See Cohorst v. BRE Props., Inc.*, Case No. 3:10-CV-

16  2666-JM-BGS, 2011 WL 7061923, at *20 (S.D. Cal. Nov. 14, 2011) (explaining

17  that the quality and expertise of opposing counsel is an important consideration).

18  Ultimately, after balancing the strength of the Settlement against the risks of

19  proceeding, counsel determined that settlement was in the best interest of the class.

20  (Woodrow Decl. ¶ 47.)

21  Moreover, the trial itself would present serious risks. For its part, 7-Eleven

22  was prepared to mount a vigorous defense as to every issue at trial. A significant

23  portion of the trial was likely to revolve around the issue of willfulness, meaning it

24  wouldn't be sufficient to show that 7-Eleven "merely" broke the law. And even if

25  Plaintiff were to prevail at trial, 7-Eleven would have likely appealed.

26  Accordingly, the risks Class Counsel faced support the Fee Award as well.

27

28

### 3.    The Settlement Also Provides Prospective Relief.

7-Eleven has also agreed to make significant changes to its FCRA disclosure going forward. (Settlement Agrmt. § 2.2.) This resolves the very issue that gave rise to the litigation and will benefit class members that are still employed by 7-Eleven as well as future applicants. This relief goes beyond the damages available under the FCRA (and was obtained as a result of Class Counsel's decision to pursue a UCL claim) and supports the requested fee award.

### 4.    The Requested Award Equals the Ninth Circuit Benchmark.

Class Counsel's requested award of 25% is in line with the market rate for both class actions generally in this circuit and for FCRA class actions specifically. Again, the Ninth Circuit has set a benchmark of 25% for an award of reasonable attorneys' fees. *See In re Bluetooth*, 654 F.3d at 942; *see also Hollis v. Union Pacific Railroad Co.*, Case No. EDCV 17-2449 JGB (SHKx), 2018 WL 6267342, at *7 (C.D. Cal. Sept. 19, 2018) ("an award of twenty-five percent of the gross settlement amount is the "benchmark" for attorneys' fees calculations."). Thus, the requested award is entirely consistent with the benchmark.

Moreover, courts repeatedly approve fee awards of 25% or higher in similar FCRA settlements. *See Feist*, 2018 WL 6040801, at *7 (S.D. Cal. Nov. 16, 2018) (awarding 25% of a FCRA settlement); *see also Syed v. M-I, LLC*, 2016 WL 310135, at *9 (E.D. Cal. Jan. 26, 2016) (awarding 25% of a $1.6 million fund); *see also Schofield v. Delta Air Lines, Inc.*, 3:18-cv-00382-EMC, Dkt. 51 (N.D. Cal. July 16, 2019) (awarding 25% of $2.3 million fund); *see also Flores v. Express Services, Inc.*, CIVIL ACTION NO. 14-3298, 2017 WL 1177098, at *4 (E.D. Pa. Mar. 30, 2017) (awarding 33% of a $5.75 million FCRA settlement); *see also Ford v. CEC Entertainment Inc.*, 2015 WL 11439033, at *7 (S.D. Cal. Dec. 14, 2015) (awarding 33% of a settlement fund); *see also Santos v. Jasco Oil Company*, Case No.: 1:14-

cv-0738 -JLT, 2015 WL 5732829, at *20 (E.D. Cal. Sept. 29, 2015) (awarding 33% of a FCRA settlement).

In this case, although the Settlement permits Class Counsel to seek an award of up to one-third of the Settlement Fund, Class Counsel has decided to only seek 25% given the prevailing benchmark in the Ninth Circuit and comparable FCRA settlements. The Court should therefore find the 25% requested to be reasonable.

5. **Class Counsel Invested Substantial Time, Advanced Costs, And Had To Forego Accepting Other Matters During The Pendency Of This Action.**

The fifth factor inquires into the burden upon Class Counsel while litigating the case—including cost, duration, and foregoing other work.

This case required a significant commitment by Class Counsel. To date, Class Counsel have devoted substantial time and resources toward this litigation without remuneration of any kind. (Woodrow Decl. ¶¶ 36-38.) Class Counsel briefed and defeated a motion to dismiss, obtained class certification of the classes, created and successfully implemented two notice plans, briefed cross-motions for summary judgment, prepared for trial, and communicated with class members. (*Id.* ¶ 36.) Class Counsel also engaged in significant discovery—including deposing 7-Eleven corporate representative, defending Plaintiff's deposition, serving and pursuing a third party subpoena (and seeking a protective order on 7-Eleven's subpoenas), serving and responding to discovery requests, and litigating various discovery disputes. (*Id.* ¶ 16.) Class Counsel's firm is not large and its resources must be deployed strategically. (*Id.* ¶¶ 38, 47.) As a result of the work performed throughout the duration of this litigation, Class Counsel was unable to devote time to other matters and had to forgo the opportunity to take on other work. (*Id.* ¶ 38.) Further, Class Counsel advanced costs in the amount of $20,961.15, which will

increase given the need to attend the final approval hearing. (*Id.* ¶¶ 41, 42.) This investment of time and resources required a substantial commitment.

As such, this factor weighs in favor of approval as well.

### 6.   Class Counsel Took This Case On A Contingent Basis.

The final factor inquires into whether the case has been litigated on a contingent basis. This too weighs in favor of the requested award. Contingency fees provide a basis for awarding higher fees than if counsel billed by the hour or on a flat fee because it provides plaintiffs the competent representation that they could not otherwise afford. *Georgino v. Sur la Table, Inc.*, CASE NO. CV 11-03522 MMM (JEMx), 2013 WL 12122430, at *21 (C.D. Cal. May 9, 2013) (quotations omitted). Further, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). "If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Id.*

When Plaintiff contacted counsel regarding his potential claims against 7-Eleven, Class Counsel understood that the case would require considerable time and resources with the potential for zero recovery. Indeed, Class Counsel have spent over 1,169 hours litigating the case and incurred expenses of $20,961.15 to date. This represents a serious commitment of resources on the part of Class Counsel. Further, as a result of accepting Plaintiff's case, counsel were prevented from accepting other cases on an hourly basis or otherwise.

In sum, given the benefits obtained, the risks associated with the case, awards in similar cases, and the contingent nature of the representation, Class Counsel's

25% request is demonstrably reasonable.

**B.      The Requested Fee Award Is Also Reasonable When Applying The Lodestar Method.**

While the percentage of the fund method is preferred in common fund cases, the requested Fee Award is also reasonable when analyzed using the lodestar method—either as a cross-check or as the primary calculation method.

"In a lodestar analysis, the court multiplies the number of hours reasonably expended by counsel on the matter by a reasonable hourly rate and adjusts the result upward or downward depending on a variety of factors." *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. at 459-60. A multiplier is typically applied to a lodestar to account for risk of non-payment. *See Vizcaino*, 290 F.3d at 1051. For the purpose of a crosscheck, the lodestar calculation does not require mathematical precision. *See Good Morning to You Prod. Corp. v. Warner/Chappell Music, Inc.*, Case No. CV 13-4460-GHK (MRWx), 2016 WL 6156076, at *6 (C.D. Cal. Aug. 16, 2016).

To date, Class Counsel has expended a total of 1,169.2 firm hours investigating, litigating, and setting this lawsuit for a total current lodestar of $426,059.00. A break down of the hours spent by each attorney working on the case is as follows:

| Attorney Name/Firm | Title | Rate | Hours | Lodestar |
| --- | --- | --- | --- | --- |
| Steven Woodrow (WP) | Partner | $450 | 299.3 | $ 134,685.00 |
| Patrick Peluso (WP) | Partner | $350 | 451.2 | $ 157,920.00 |
| Taylor Smith (WP) | Associate | $235 | 243.3 | $ 57,175.50 |
| Stephen Klein (WP) | Associate | $235 | 110.1 | $ 25,873.5 |
| Mike Arias (ASWT) | Partner | $1,050 | 8.6 | $ 9,030.00 |
| Alfredo Torrijos (ASWT) | Partner | $750 | 54.7 | $ 41,025.00 |

| LaDonna McDuffe (ASWT) | Paralegal | $175 | 2.0 | $ 350.00 |
|---|---|---|---|---|
| **LODESTAR** | | | **1,169.20** | **$ 426,059.00** |

(Woodrow Decl. ¶ 35.) Class Counsel projects that an additional $15,000 in time will be spent attaining final approval. This time will include drafting and filing the motion for final approval, continuing to field calls from class members, assisting class members with filing claims, working to ensure that the claim process is effective, and attending the final approval hearing.

Class Counsel's hourly rates are below the market rate for comparable attorneys in this District. *See Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1173 (C.D. Cal. 2010) (approving hourly rates ranging from $445 to $675). As set forth in the Woodrow Declaration, Class Counsel's rates are reasonable and have been approved by various courts. (*See* Woodrow Decl. ¶ 39. (citing *Gergetz v. Telenav, Inc.*, Case No. 16-cv-04261-BLF, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) (approving 2018 rates for Steven Woodrow, Patrick Peluso, and Taylor Smith of $440, $340, and $225 respectively); *see also Couch v. Southwest Airlines Co.*, 3:15-cv-00367-N (N.D. TX 2016) (Couch Dkt. 43) (approving 2016's rates for Woodrow & Peluso of $430 and $330 respectively); *see also Wigod v. Wells Fargo Bank, N.A.*, Case No: 1:10-cv-2348 (N.D. Ill. 2014) (Bucklo, J.) (Wigod Dkt. 278) (approving hourly rate of $570 for attorney Woodrow in 2014)). Further, the stated hourly rate for each attorney is the same rate that is charged to hourly-paying clients. (Woodrow Decl. ¶ 40).

While a lodestar amount is presumptively reasonable, it may be adjusted upward by a multiplier typically ranging between 1 and 4 to account for the risk faced in taking the case. *See* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, 14:03 (3d Ed. 1992) (recognizing that multipliers of one to four are frequently awarded). When considering an adjustment to the lodestar, courts

consider the quality of the representation, the benefits obtained for the class members, the complexity and novelty of the issues, and the risk of nonpayment. *In re Bluetooth*, 654 F.3d at 941-42. The Ninth Circuit has concluded that lower courts may abuse their discretion where a multiplier is required but withheld. *See Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) ("It is an abuse of discretion to fail to apply a risk multiplier, however, when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky.").

A nominal multiplier is warranted here. As explained above, Class Counsel are experienced class litigators whose time, effort, and skill were instrumental in obtaining the instant Settlement, which provides an outstanding result to class members. Further, Class Counsel took this case entirely on a contingent basis and faced a significant risk of nonpayment. Additionally, Class Counsel's rates have not been adjusted to reflect that risk. (Woodrow Decl. ¶ 40.) Rather, the stated rates are both below market (in this District) and the same as those charged to hourly-paying clients. (*Id.*) In the end, Class Counsel's effort and skill resulted in a substantial recovery for the classes.

Further, the requested fee award would only require a multiplier of 1.12 of counsel's lodestar to justify. The calculation starts by taking Class Counsel's current lodestar ($426,059.00) and adding in the $15,000 in additional anticipated time. This sum is then divided by the fee request ($493,125). The result is that a multiplier of only 1.12 is needed to justify the requested fee award. This is well within the range of 1 to 4.

Hence, whether the Court utilizes the lodestar method as the primary calculation method or just as a cross-check, the application justifies the requested

fee award. Therefore, the requested fees are justified under both methods of review and the Court should award Class Counsel fees in the amount of $493,125.

### C. The Court Should Also Award Class Counsel's Reasonable Expenses of $20,961.15.

The Court may also award reasonable costs and expenses. Fed. R. Civ. P. 23(h). "'Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable.'" *In re Toys R Us-Delaware, Inc.*, 205 F.R.D. at 469. To date, Class Counsel have incurred $20,961.15 prosecuting and settling this action. (Woodrow Decl. ¶¶ 41, 42.) All of the costs are reasonable and specific to the needs of the case. (*Id.* ¶ 43.) The expenses include travel to and from several hearings, travel to and from the mediation session, filing costs, court reporter and deposition fees, and various other expenses. (*See* Woodrow Decl. ¶¶ 41-43.) None of the expenses were excessive and all would be considered expected litigation expenses. Further, Class Counsel expects to incur additional expenses associated with the final approval hearing. Hence, the expenses are reasonable and should be approved as well.

### D. The Court Should Likewise Approve The Requested Incentive Award For Plaintiff Munoz's Efforts.

Munoz contributed toward the resolution of this case and an incentive award is warranted for his efforts. Courts typically award incentive awards to compensate class representatives for the work done on behalf of the class and to make up for the financial or reputational risk undertaken in bringing the action. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Class representatives subject themselves to public attention by lending their names to the case and devote time to responding to written discovery requests, being deposed by defendants, and

consulting with class counsel regularly. *Chambers v. Whirlpool Corp.*, 214 F.Supp.3d. 877, 906 (C.D. Cal. Oct. 11, 2016).

An award of $5,000 is consistent with the amount typically awarded to class representatives. *See In re Toys R Us-Delaware, Inc.*, 295 F.R.D. at 470 (collecting cases); *see also In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (finding a $5,000 incentive award to be reasonable for a $1.725 million settlement); *see also Weeks v. Kellogg Co.*, No. CV 09–08102, 2013 WL 6531177, at *35 (C.D. Cal. Nov. 23, 2013) (approving a $5,000 incentive award).

The $5,000 incentive award sought here is plainly reasonable. Munoz supplied a detailed factual background of the case and regularly communicated with Class Counsel. (Woodrow Decl. ¶ 17.) He was deposed and responded to all discovery requests. (*Id.*) In short, Munoz was crucial in the success of the litigation and the Settlement.

Given his dedication to the case and awards in similar matters, a $5,000 incentive award to Munoz is reasonable.

## IV.   Conclusion

For the reasons stated above, Plaintiff Munoz and Class Counsel respectfully request that Court issue an Order granting their requests for $493,125 as an award for reasonable attorneys' fees, $5,000 as an incentive payment to Munoz, awarding reasonable costs and expenses in the amount of $20,961.15, and for such additional relief as the Court deems reasonable and just.

Respectfully Submitted,

**EDWARDO MUNOZ**, individually and on behalf of all others similarly situated,

Dated: September 20, 2019       By: */s/ Steven L. Woodrow*
                                      One of Plaintiff's Attorneys

Mike Arias (CSB #115385)
mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG &**
**TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on September 20, 2019.

<em>/s/ Steven L. Woodrow</em>