# EXHIBIT A

Steven L. Woodrow*
    swoodrow@woodrowpeluso.com
Patrick H. Peluso*
    ppeluso@woodrowpeluso.com
Taylor T. Smith*
    tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

Attorneys for Plaintiff and the Class


[Additional counsel appearing on signature page]

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **Edwardo Munoz,** individually and on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>    v.<br><br>**7-Eleven, Inc.,** a Texas corporation,<br><br>                                    Defendant. | Case No.  2:18-cv-03893-RGK-AGR<br><br>**DECLARATION OF STEVEN L. WOODROW**<br><br> Judge: Hon. R. Gary Klausner<br><br> Date: November 4, 2019<br>Time: 9:00 a.m.<br> Judge: Hon. R. Gary Klausner<br> Courtroom: 850<br> Complaint Filed: May 9, 2018 |

I, Steven L. Woodrow declare as follows:

1.     I am over the age of eighteen (18), and am one of the attorneys for the plaintiff and the Class in this matter. I make this declaration in support of Plaintiff's Motion for Award of Reasonable Attorneys' Fees, Expenses, and Incentive Award in connection with the class action settlement agreement reached in the above captioned litigation.

2.     I am able to testify to the matters set forth herein if called upon to do so. I make the following statements based upon my own personal knowledge and based on facts learned during the litigation of this case.

***Class Counsel's Pre-Suit Investigation***

3.     In February 2018, Plaintiff Edwardo Munoz ("Plaintiff" or "Munoz") contacted Class Counsel to discuss his legal rights and potential remedies following his termination from Defendant 7-Eleven, Inc. ("Defendant" or "7-Eleven").

4.     Thereafter, Class Counsel conducted a pre-suit investigation to evaluate Munoz's potential claims.

5.     The investigation began by interviewing Munoz regarding his employment with 7-Eleven and subsequent termination. This involved a series of conversations, including telephone calls and email communications.

6.     On March 9, 2018, Class Counsel sent a letter to 7-Eleven requesting all documents contained in Munoz's employment file.

7.     On March 30, 2018, 7-Eleven responded and provided part of Munoz's employment file. The documents produced included Plaintiff's new-hire paperwork, including the Disclosure Regarding Background Investigation.

8.     After receiving the documents related to Munoz's employment, our team of lawyers undertook an extensive investigation regarding 7-Eleven's employment of Munoz. The investigation included reviewing all of the documents provided by 7-Eleven and by Plaintiff Munoz. The investigation also included a

**DECLARATION OF STEVEN L. WOODROW**

series of follow-up interviews with Plaintiff Munoz regarding his experience with 7-Eleven and the context of how each document was provided to him. Further, Class Counsel reviewed publically available information regarding 7-Eleven's employment practices.

9.      Following the completion of the investigation, we were satisfied internally that a good faith basis existed to pursue the case on behalf of Plaintiff Munoz. Further, based upon 7-Eleven's standardized employment practices, we were also satisfied that a good faith basis existed to pursue this case on behalf of all individuals similarly-situated to Munoz.

***The Litigation History***

10.     On May 9, 2018, Plaintiff filed his class action complaint against 7-Eleven. The complaint alleged that 7-Eleven violated the FCRA by procuring consumer reports about its job applicants and employees without first providing a standalone disclosure and an opportunity to authorize the release of their consumer reports. The complaint also alleged that 7-Eleven violated the FCRA's adverse action provision by failing to provide Munoz with a copy of his consumer report prior to his termination.

11.     Following the filing of the Complaint, 7-Eleven's counsel reached out to Class Counsel and counsel for the Parties discussed each side's respective view of the case. Following these discussions and being presented with additional documentation, Plaintiff filed his First Amended Complaint on July 9, 2018, which removed his adverse-action claim.

12.     Shortly thereafter, 7-Eleven moved to dismiss the First Amended Complaint. The Parties fully briefed the Court and argued the motion on August 27, 2018. On September 5, 2018, the Court issued its Order denying Defendant's motion to dismiss.

**DECLARATION OF STEVEN L. WOODROW**

13. Immediately after briefing Defendant's motion to dismiss, Plaintiff moved for class certification. On October 18, 2018, following full briefing on class certification, the Court issued its Order certifying Plaintiff's proposed class and sub-class.

14. Following the Classes being certified, the Parties worked to identify the size and scope of the Classes. Then, Plaintiff began formulating a proposed notice plan, which the Court ultimately approved on February 12, 2019.

15. After approval, Class Counsel worked with Kurtzman Carson Consultants, LLC ("KCC") to effectuate the notice plan. Immediately following notice being mailed to the class, Class Counsel began fielding calls on a daily basis from class members seeking additional information about the case. The class member inquiries required Class Counsel to devote considerable time to responding to the requests for additional information.

16. Throughout this time period, the Parties also engaged in extensive discovery. This included serving and responding to discovery requests and effectuating subpoenas. Further, the Parties met-and-conferred regularly regarding various disputes, and, when necessary, raised the disputes with the Court. The Parties also conducted depositions. On January 30, 2019, Class Counsel deposed 7-Eleven's corporate representative, Kristin Cope, in Dallas, Texas. Later, on February 20, 2019, 7-Eleven's counsel deposed Plaintiff Munoz on February 20, 2019 in Newport Beach, California.

17. Furthermore, throughout the litigation, Munoz kept himself apprised of the status of the lawsuit and regularly communicated with Class Counsel. Munoz devoted time by traveling to his deposition in Newport Beach, California, and supplying critical testimony. Munoz also spent time responding to the discovery requests and producing personal documentation.

***The Mediation Process and Settlement History***

**DECLARATION OF STEVEN L. WOODROW**

1    18.    In 2018, 7-Eleven's counsel expressed a willingness to mediate.

2 However, following several discussions, counsel for Defendant indicated that

3 mediation could not occur too early in the case.

4    19.    In early 2019, counsel for both Parties revisited the potential for a

5 settlement, and ultimately agreed to hold a private mediation session.

6    20.    Following the exchange of potential mediators, the Parties agreed to

7 schedule a mediation session with Michael E. Dickstein. Mr. Dickstein is a

8 nationally-recognized mediator with substantial class action experience. In the lead

9 up to the mediation, the Parties exchanged mediation statements regarding their

10 respective views of the potential for a settlement.

11    21.    On April 9, 2019, the Parties met in Toronto, Ontario, Canada for a full-

12 day mediation session. The mediation was adversarial and hard fought with both

13 sides expressing confidence in their respective views. Ultimately, the session ended

14 with the Parties unable to reach an agreement. Instead, the Parties agreed to brief and

15 argue their cross-motions for summary judgment and prepare for trial.

16    22.    Counsel for the Parties also agreed, however, to continue to discuss a

17 possible resolution in the lead up to the trial. To facilitate these discussions, Mr.

18 Dickstein worked to continue the settlement talks by engaging both sides in a series

19 of telephonic negotiations.

20    23.    Throughout the discussions, the Parties finished briefing their cross

21 motions for summary judgment, prepared for and held the Local Rule 16-2 meeting,

22 and started compiling the joint exhibit list, their Memorandum of Contentions of

23 Law and Fact, the proposed jury instructions, and their witness lists.

24    24.    In the midst trial preparation and with the assistance of the mediator, the

25 Parties reached an agreement in principal to resolve the claims at issue. Only after

26 reaching an agreement in principal did the Parties discuss an amount for reasonable

27 attorneys' fees and an incentive award for Munoz.

28

**DECLARATION OF STEVEN L. WOODROW**

*Preliminary Approval & Settlement Notice*

25.    Following reaching an agreement in principal, the Parties provided notice of the settlement to the Court. Then, the parties worked to memorialize the terms of the Settlement. Given the success of the initial notice plan, the Parties agreed to select KCC to administer the settlement notice plan.

26.    Class Counsel then worked to draft its Motion for Preliminary Approval of Class Action Settlement, which was filed on June 17, 2019. (Dkt. 85.) On July 18, 2019, the Court continued the hearing on Plaintiff's motion and required the parties to file an addendum that clarified the language of the release. (Dkt. 89.) Specifically, the Court required the release to be limited to the facts that were alleged in the First Amended Complaint. Plaintiff filed the addendum on July 29, 2019. (Dkt. 90.)

27.    On July 30, 2019, the Court granted Plaintiff's Motion for Preliminary Approval and ordered that notice be disseminated to the class members.

28.    Thereafter, Class Counsel worked to finalize all of the notice documents. This includes: the claim form, the long form notice, the short form (postcard) notice, the email notice, the settlement website, and the interactive voice recording (IVR) messaging. Class Counsel also tested the functionality of the online claim submission process.

29.    Class Counsel has also worked to ensure that KCC properly and timely provided notice to the class members. This involved a series of telephone calls and email communications to keep apprised of the progression of the plan and to address various issues as they arose. To date, Class Counsel continue to monitor the claims process to ensure that it runs efficiently.

*Response to the Settlement to Date*

30.    Since notice was disseminated, Class Counsel has received over 100 inquires from class members regarding their rights. My firm continues to field calls

**DECLARATION OF STEVEN L. WOODROW**

on a daily basis from class members who require assistance with the claims process. Overall, class members have expressed satisfaction with the result.

31.     As a result of the first notice plan, forty-one (41) individuals elected to opt-out of remaining in the lawsuit. These individuals did not receive notice of the settlement and will not have their legal rights affected by the settlement.

32.     To date, only twelve (12) of the 52,159 class members have elected to opt-out of the settlement. The small number of opt-outs is further evidence of satisfaction with the results. Further, no class members have objected to the settlement.

33.     The $1,972,500 Settlement Fund will be used to pay all approved claims, Settlement Administration Expenses, any Incentive Award, and any Fee Award. After the subtraction of the Settlement Administration Expenses, any Incentive Award, and any Fee Award from the Settlement Fund, the remaining amount—the Net Settlement Fund—will be divided by the total number of approved claims. Each class member who submits an approved claim shall be entitled to receive one (1) Claimant Payment. Claimant Payments will be of equal value and will be calculated by dividing the Net Settlement Fund by the total number of approved claims. Such payments are subject to a cap of $550 each.

34.     Presently, 1,630 class members have filed claims, which represents approximately 2.33% of the Class. If paid today, this would result in payments to class members equal to $550.

***Class Counsel's Hours and Rates***

35.     After reviewing my firm's time keeping records, as of the filing of this Motion, Class Counsel have expended the following hours[1] litigating and settling of this case:

| Attorney Name/Firm | Title | Rate | Hours | Lodestar |
|---|---|---|---|---|

---

[1] Class Counsel's time sheets are available upon request for the Court's review.

**DECLARATION OF STEVEN L. WOODROW**

| Steven Woodrow (WP) | Partner | $450 | 299.3 | $ 134,685.00 |
| Patrick Peluso (WP) | Partner | $350 | 451.2 | $ 157,920.00 |
| Taylor Smith (WP) | Associate | $235 | 243.3 | $ 57,175.50 |
| Stephen Klein (WP) | Associate | $235 | 110.1 | $ 25,873.5 |
| Mike Arias (ASWT) | Partner | $1,050 | 8.6 | $ 9,030.00 |
| Alfredo Torrijos | Partner | $750 | 54.7 | $ 41,025.00 |
| LaDonna McDuffe | Paralegal | $175 | 2.0 | $ 350.00 |
| **LODESTAR** | | | **1,169.20** | **$ 426,059.00** |

36.     The time spent to date is reasonable. Class Counsel devoted substantial time to prosecuting this matter. Even before filing the complaint, Class Counsel spent considerable time performing legal research, reviewing documents, and interviewing Mr. Munoz to understand the potential claims and put forth a legal theory with the best chances of success. After initiating this lawsuit, Class Counsel spent more than a year immersed in litigation. As previously stated, Class Counsel spent meaningful time briefing various motions, effectuating two notice plans, attending a mediation session, and obtaining substantial discovery. Class Counsel has also been responsive to the needs of class members and have promptly returned all inquires.

37.     Class Counsel also estimates that an additional $15,000 in further attorney time will be expended to finalize this settlement.

38.     It is also important to note that Class Counsel took this case on a contingent fee basis. Class Counsel litigated this case and advanced expenses with the possibility that they would receive nothing in return. Furthermore, as a result of the time and monies spent on this action, Class Counsel were unable to devote time and resources to other cases and pursuing new clients.

**DECLARATION OF STEVEN L. WOODROW**

39.     Furthermore, Class Counsel's hourly rates are reasonable. Class Counsel's rates have been approved by various courts. *See Gergetz v. Telenav, Inc.*, Case No. 16-cv-04261-BLF, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) (approving 2018 rates for Steven Woodrow, Patrick Peluso, and Taylor Smith of $440, $340, and $225 respectively); *see also Couch v. Southwest Airlines Co.*, 3:15-cv-00367-N (N.D. Tex. 2016) (Couch Dkt. 43) (approving Woodrow & Peluso's 2016 rates of $430 (for Woodrow) and $330 (for Peluso)); *see also Wigod v. Wells Fargo Bank, N.A.*, Case No: 1:10-cv-2348 (N.D. Ill. 2014) (Bucklo, J.) (Wigod Dkt. 278) (approving hourly rate of $570 for attorney Woodrow in 2014); *see also Schulken v. Washington Mutual Bank*, No. 09-CV-02708-LHK (N.D. Cal.) (Schulken Dkt. 223) (Koh J.) (approving attorney Woodrow's former hourly rate of $500 in 2012).

40.     Additionally, the stated hourly rate for each attorney is the same rate that is charged to hourly-paying clients, are have not been adjusted to reflect the risk associated with accepting this case.

### Class Counsel's Out of Pocket Expenses

41.     In addition to the time spent litigating the case, Class Counsel incurred significant out-out-pocket expenses. These expenses include our filing fees, service of process cost, travel to and from the hearing on the motion to dismiss, court reporters and deposition fees, travel to and from the mediation, and various other litigation expenses. Class Counsel's expenses in this matter total $19,783.70. (*See* Expense Report, a true and accurate copy of which is attached hereto as Exhibit 1.)

42.     Further, Local Counsel also incurred expenses in the sum of $1,177.45. These expenses include: filing fees, court costs, mileage & parking, messenger delivery and postage. (*See* Declaration of Mike Arias, a true and accurate copy of which is attached hereto as Exhibit 3.)

**DECLARATION OF STEVEN L. WOODROW**

43.     Having reviewed the expenses, I can attest that they are necessary and reasonable, and were incurred as a result of the demands imposed by the litigation. None of the expenses were for lavish accommodations or for unnecessary items. Additionally, Class Counsel expended monies for these items without any guarantee of payment. Accordingly, the Court should approve the requested expenses of $20,961.15.

### *Class Counsel's Opinion of the Settlement Agreement*

44.     The terms of the Settlement Agreement are unquestionably strong when viewed against other FCRA settlements. The Settlement Agreement provides substantial monetary relief to the class members, and redresses the very issue that gave rise to the instant litigation. That is, the agreement requires 7-Eleven to utilize an FCRA compliant disclosure on a going forward basis.

45.     Further, assuming the claims rate holds steady, the per claimant amounts will equal $550 for each class member who files a claim. This is an unquestionably strong result.

46.     Moreover, the strength of the Settlement Agreement is most apparent when view in contrast to the continuation of the litigation. Here, both Parties were willing to litigate this case through summary judgment and trial. And an adversarial ruling or a verdict in 7-Eleven's favor would have left the class members with potentially no recovery at all.

47.     Further, regardless of the result of summary judgment and the impending trial, the decision likely would have been appealed. Altogether, this process could drag out for several years. Fortunately for class members, this Settlement Agreement will provide them with immediate and substantial relief.

48.     My firm has extensive experience litigating FCRA class actions, has devoted substantial resources to the present litigation, and will continue to do so throughout its pendency. (*See* Woodrow & Peluso Firm Resume, attached hereto as

**DECLARATION OF STEVEN L. WOODROW**

1   Exhibit 2.) Our local counsel was also instrumental. (*See* Declaration of Mike Arias,

2   attached hereto as Exhibit 3.)  We support this Settlement as being fair, reasonable,

3   and adequate and in the best interest of the class members.

4        Further affiant sayeth not.

5        Signed this 20th day of September 2019 in Denver, Colorado.

6

7              /s/ Steven L. Woodrow

8              Steven L. Woodrow

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF STEVEN L. WOODROW**

# EXHIBIT 1

# Woodrow & Peluso LLC

## Expense Report 7-Eleven

| Date | Type of Expense | | Amount |
|---|---|---|---|
| 5/14/2018 | Certificates of Good Standing for PHV Motions | $ | 15.00 |
| 5/15/2018 | Search for 7-Eleven's registered agent | $ | 1.03 |
| 5/15/2018 | Filing Fee | $ | 400.00 |
| 8/22/2018 | Hotel for MTD Hearing | $ | 183.94 |
| 8/22/2018 | Airport Parking MTD Hearing | $ | 48.00 |
| 8/22/2018 | Flights to and from MTD Hearing | $ | 488.96 |
| 10/15/2018 | Hotel for CMC | $ | 230.22 |
| 10/15/2018 | flights to and from CMC | $ | 620.96 |
| 1/2/2019 | Service of process of subpoena on Sterling | $ | 115.00 |
| 1/8/2019 | Flights to and from 30(b)(6) | $ | 411.96 |
| 1/16/2019 | Service of process | $ | 115.00 |
| 1/22/2019 | Woodrow Hotel 30(b)(6) | $ | 278.96 |
| 2/15/2019 | Munoz airport shuttle | $ | 80.24 |
| 2/15/2019 | Munoz flight for deposition | $ | 198.00 |
| 2/15/2019 | Peluso flight for deposition | $ | 563.96 |
| 2/15/2019 | Hotels for Munoz and Peluso for deposition | | $643.14 |
| 2/21/2019 | 30(b)(6) court reporter fee | $ | 1,542.90 |
| 2/21/2019 | Mediation fee | $ | 8,000.00 |
| 3/1/2019 | Shipping discovery requests | $ | 41.28 |
| 4/1/2019 | flights to mediation | $ | 897.21 |
| 4/1/2019 | flights back from mediation | $ | 927.93 |
| 4/1/2019 | hotel rooms for mediation (2 people, 2 nights) | $ | 2,980.31 |
| 4/15/2019 | Munoz deposition court reporter invoice | $ | 999.70 |
| | TOTAL | $ | 19,783.70 |

# EXHIBIT 2

<u>WOODROW & PELUSO, LLC FIRM RESUME</u>

WOODROW & PELUSO, LLC ("Woodrow & Peluso" or the "firm") is a plaintiff's class action and commercial litigation firm based in Denver, Colorado. The firm files cases across the Country.

Our attorneys have over a decade of experience successfully representing consumers and small businesses in matters nationwide. From litigation under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., to cases enforcing the rights of job applicants and employees under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., to appeals of first impression, our lawyers have litigated and favorably resolved numerous legal disputes to the satisfaction of our clients. At Woodrow & Peluso, LLC, we take special pride in the quality of our work product and strive tirelessly to achieve the best results for every client. Descriptions of our three primary practice areas—(1) Consumer Class Actions, (2) Commercial Litigation, and (3) Appeals—and key personnel follow.

## OUR PRACTICE AREAS

### 1.   CONSUMER CLASS ACTIONS

The majority of the firm's caseload focuses on consumer class actions. These cases include class actions alleging violations of statutes, such as the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and the Truth-in-Lending Act, as well as class actions challenging systematic breaches of contract and advancing other common law theories.

**TCPA Class Actions**

Woodrow & Peluso attorneys have successfully litigated and settled numerous class actions challenging violations of the Telephone Consumer Protection Act. To date we have filed, prosecuted, and resolved using various settlement models TCPA cases against major corporations and entities including Rita's Italian Ice, Global Marketing Research Services, LKQ Corporation, J.B. Hunt, Altisource, Acurian, Price Self Storage, Local Lighthouse, Geekatoo, and the University of South Carolina, among others. Our firm's attorneys have substantial experience prosecuting such claims, including class actions challenging the unlawful transmission of text messages, the sending of unlawful facsimiles, the placement of "robocalls" featuring a pre-recorded voice to residential landline phones, and the use of automatic telephone dialing systems, including predictive dialers, to call consumer cell phones.

Notable TCPA cases and settlements include:

• *Tech Instruments, Inc. v. Eurton Electric Inc*. 1:16-cv-02981-MSK-KMT (Krieger, C.J.) (adversarial class certification granted under for transmission of junk faxes)

• *Bowman v. Art Van Furniture, Inc*. 2:17-cv-11630-NGE-RSW (Edmunds, J.) (granting final approval to all in, non-reversionary settlement fund of $5,875,000 in pre-recorded message case) (final approval granted December 10, 2018);

- *Wendell H. Stone & Co. v. LKQ Corporation*, 16-cv-07648 (N.D. Ill.) (Kennelly, J.) (granting final approval to all-in, non-reversionary, settlement fund of $3,266,500) (final approval granted May 16, 2017);

- *Martin et al. v. Global Marketing Research Services, Inc.*, 6:14-cv-1290-ORL-31-KRS (M.D. FL) (Woodrow & Peluso appointed co-lead Settlement Class Counsel in settlement creating $10,000,000 common fund for class of 688,500 cellphone users) (final approval granted November 4, 2016);

- *Mendez v. Price Self Storage Management, Inc.*, 3:15-cv-02077-AJB-JLB (S.D. CA) (Woodrow & Peluso appointed co-lead Settlement Class Counsel in TCPA settlement providing option of $750 cash or $1,100 in storage certificates) (final approval granted August 23, 2016);

- *Sherry Brown and Ericka Newby v. Rita's Water Ice Franchise Company, LLC*, 2:15-cv-03509-TJS (E.D. PA) ("all in" non-reversionary $3,000,000 settlement fund for text messages) (final approval granted March 20, 2017);

- *Morris et al v. SolarCity, Inc*. 3:15-cv-05107 (N.D. CA) (JPA with counsel on $15 million common fund TCPA settlement, final approval granted February 1, 2018).

- *Gergetz v. Telenav, Inc*. 3:16-cv-04261 (N.D. CA) ("all-in" non-reversionary $3.5 million fund for text messages) (final approval granted on September 6, 2018).

Further, while a Partner with his prior law firm, Woodrow & Peluso attorney Steven Woodrow was appointed interim co-lead class counsel in a TCPA class action against Nationstar Mortgage, LLC (*see Jordan et al v. Nationstar Mortgage LLC*, 3:14-cv-00787-WHO) and led TCPA litigation that resolved favorably against Bankrate Inc., and Carfax.com. Mr. Woodrow was also involved in the TCPA settlement reached in *Weinstein v. The Timberland Co. et al.* (N.D. Ill.), a text messaging class action featuring 40,000 unauthorized messages, and was part of the appellate strategy team that secured the landmark decision in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the first federal appellate decision to affirm that text messages are covered as "calls" under the TCPA.

**FCRA Class Actions**

The second sub-focus within the firm's class action practice consists of cases under the Fair Credit Reporting Act ("FCRA"), which regulates the procurement and use of consumer reports by employers when they make hiring/firing/pay decisions. To date, the firm has successfully represented clients in putative class actions against Terminix, ServiceMaster, TrueBlue Inc./Labor-Ready Mid-Atlantic, FedEx, Tyler Staffing Services, Inc., Great Lakes Wine & Spirits, Freeman Webb, Inc., and others. This includes attaining adversarial class certification in the case of *Munoz v. 7-Eleven, Inc.*, 2:18-cv-03893-RGK-AGR (C.D. Cal., October 28, 2018). This also includes *Woodford v. World Emblem*, 1:15-cv-02983-ELR, an FCRA settlement providing between $315 and $400 to claimants (final approval granted January 23, 2017).

**Banking and Financial Institutions Class Actions**

Our attorneys have substantial experience representing consumers in class action litigation involving national banking associations and other financial institutions. Meaningful representations include:

- *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2012 WL 28099, at *15 (N.D. Cal. Jan. 5, 2012). Attorney Steven Woodrow secured prior firm's appointment as Class Counsel from Judge Lucy Koh in class action challenging JPMorgan Chase Bank, N.A.'s suspension of former WaMu home equity line of credit accounts. Case settled with Mr. Woodrow's appointment as co-lead settlement class counsel.

- *In re JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litigation*, MDL No. 2167. Attorney Steven Woodrow helped secure transfer by the Judicial Panel on Multidistrict Litigation to the Northern District of Illinois and appointment of prior firm as interim class counsel. Attorney Woodrow also negotiated and was also appointed co-lead settlement class counsel in settlement projected to restore between $3 billion - $5 billion in credit to affected borrowers in addition to cash payments.

- *Hamilton v. Wells Fargo Bank, N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Attorney Steven Woodrow served as co-lead settlement counsel in class action challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restored access to over $1 billion in credit and provided industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC (N.D. Cal.). Attorney Steven Woodrow was appointed interim co-lead counsel and settlement class counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement was estimated to have restored over $650,000,000 worth of credit to affected borrowers.

- *Vess v. Bank of America, N.A.* 10cv920–AJB(WVG) (S.D. Cal.). Attorney Steven Woodrow negotiated class action settlement with Bank of America challenging suspension and reduction of home equity lines of credit.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.). Steven Woodrow secured the first appellate decision in the country recognizing the right of homeowners to sue under state law to enforce HAMP trial plan agreements. Attorney Steven Woodrow was appointed co-lead settlement counsel providing loan modifications and cash payments to affected borrowers.

**General Consumer Protection Class Actions**

Woodrow & Peluso attorneys have additionally successfully prosecuted and resolved countless class action suits against other companies for a range of consumer protection issues. For example, Woodrow & Peluso filed the first class action in the Country to challenge the marijuana industry's use of certain allegedly dangerous fungicides and pesticides and were the first lawyers to bring class actions (against the Colorado Rockies Baseball Club and Kroenke Sports & Entertainment, LLC) seeking to enforce the Colorado Consumer Protection Act, § 6-1-718 *et seq*., which prohibits owners of entertainment venues from imposing restrictions on the resale of tickets. The firm has also brought and litigated class actions against hospitals for their use of "chargemaster" billing rates and are presently engaged in litigation against Southwest Airlines related to its "Companion Pass" program.

Woodrow & Peluso LLC has also brought claims against major food manufacturers and distributors for falsely advertising certain products as "All Natural" and "Made in U.S.A." Our attorneys also have experience litigating class claims regarding missing or misappropriated "bitcoins." Woodrow & Peluso also brought the first class action in Colorado against cannabis growers for their use of unapproved and harmful pesticides.

## 2. COMMERCIAL LITIGATION

As small business owners, we understand and appreciate the challenges that new companies face as they strive to make headway in the market. Our attorneys regularly counsel small to medium-sized businesses and have represented such companies in a wide range of general commercial litigation matters including partnership and business disputes, breaches of contracts and term sheets, and claims charging company managers and members of breach of fiduciary duty, breach of contract, fraud, and fraudulent/preferential transfers. We regularly advise clients on matters and contracts involving millions of dollars, and our attorneys have successfully represented businesses and other entities in mediations, arbitrations, and trial. In 2018, for example, Woodrow & Peluso, LLC defended a developer of concessions at Denver International Airport against claims of bid-rigging and bribery.

## 3. APPEALS

Our attorneys have substantial experience handling appeals at both the state and federal level. Representative appeals worked on predominately by our attorneys include:

- *Mitchell v. Winco Foods, LLC*, No. 1:16-cv-00076-BLW, Appeal No. 17-35998 (9th Cir. Nov. 29, 2018). Firm attained reversal of district court's dismissal of putative FCRA class action on Article III standing grounds;

- *Brown v. Centura Health Corporation,* No. 15CV31140 (Douglas Cnty. Colo.), Appeal No. 17CA430. Firm achieved reversal of dismissal of putative class action lawsuit challenging hospital's use of chargemaster billing system);

- *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). Attorney Steven Woodrow briefed and argued this appeal resulting in the first federal appellate decision holding that banks may be sued under state law for violations of the federal government's Home Affordable Modification Program. The opinion has been cited over 1,300 times by courts, litigants, and commentators throughout the Country and is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers.

- *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014). Attorney Steven Woodrow argued a federal appeal reversing dismissal and upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators regarding whether a plaintiff who does not suffer tangible pecuniary loss may still show legal harm to satisfy Article III standing. The case was reversed on writ of certiorari to the United States Supreme Court (argued by different attorneys).

- *Equity Residential Properties Mgmt. Corp. v. Nasolo*, 364 Ill. App. 3d 26, 28, 847 N.E.2d 126, 128 (2006). Attorney Steven Woodrow helped author the winning brief in this landmark landlord/tenant appeal defining the requirements for constructive service and due process for Illinois evictions under the Illinois Forcible Entry and Detainer Act. 735 ILCS 5/9–107 *et seq*.

- *Fuentes v. Kroenke Sports & Entertainment, LLC*, Case No. 2014CV32619. Woodrow & Peluso appealed grant of summary judgment in favor of defendant finding that the Colorado Consumer Protection Act, 6-1-701 *et seq*. does not allow for class actions. Case settled prior to the resolution of the appeal.

## OUR ATTORNEYS

At present, our firm consists of 4 attorneys whose relevant experience is set forth below.

**STEVEN LEZELL WOODROW** has over a decade of experience advising consumers and small businesses in high stakes litigation.

Steven briefed and delivered the winning argument in the landmark federal appellate court decision *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) holding banks accountable for violations of the federal Home Affordable Modification Program. The opinion is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers. Steven also delivered the winning oral argument in *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014), a federal appeal upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators. The case and the Supreme Court decision that ultimately reversed it (and now the Ninth Circuit's decision to re-affirm its prior

finding of Article III standing) present some of the most widely-litigated issues in class action practice today.

Mr. Woodrow was appointed lead class counsel in litigation against JPMorgan Chase Bank, N.A. challenging the bank's 4506-T HELOC suspension program and was appointed lead settlement class counsel in other HELOC suspension litigation against Wells Fargo Bank, N.A., Citibank, N.A., Chase, Bank of America, N.A. and PNC Bank.

Mr. Woodrow also led the legal team that secured a preliminary injunction freezing the U.S. assets of Mark Karpeles, the former head of the failed Bitcoin exchange known as Mt. Gox, as well as an order compelling Mr. Karpeles to personally appear in the United States for a deposition in connection with Mt. Gox's Chapter 15 bankruptcy case in Dallas Texas.

Steven has also litigated putative class actions under the Telephone Consumer Protection Act, and courts have appointed him to serve as class counsel in nationwide settlements against cellphone companies, aggregators, and mobile content providers related to unfair billing practices, including *Paluzzi v. Cellco Partnership*, *Williams v. Motricity, Inc.*, and *Walker v. OpenMarket Inc*.

Steven has also served as an Adjunct Professor of Law at the Illinois Institute of Technology Chicago-Kent College of Law, where he co-taught a seminar on class actions. Prior to founding Woodrow & Peluso, Steven was a partner at prominent class action technology firm in Chicago.

Before that, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection, landlord tenant, and real estate matters.

**EDUCATION**
Chicago-Kent College of Law, J.D., High Honors, 2005
The University of Michigan-Ann Arbor, B.A, Political Science, with Distinction, 2002

**ADMISSIONS**
State of Illinois (2005)
State of Colorado (2011)
United States Court of Appeals for the Seventh Circuit
United States Court of Appeals for the Ninth Circuit
United States District Court, Northern District of Illinois
United States District Court, District of Colorado
United States District Court, Eastern District of Michigan
United States District Court, Western District of Michigan
United States District Court, District of New Mexico

**PATRICK H. PELUSO** specializes in plaintiff-side consumer class actions.

With a true passion for protecting consumers and their rights, Patrick aggressively pursues class action lawsuits against companies who violate those rights.

Through these lawsuits, he is able to force law-breaking companies to compensate the people they have harmed and correct their future practices. Patrick possesses the skills, strategic vision, and moxie to achieve excellent results for the people he represents. He has experience working with a broad range of consumer protection laws including the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and various state consumer protection and consumer fraud statutes.

Patrick received his law degree from the University of Denver, Sturm College of Law where he was Editor-in-Chief of an academic journal. During law school, Patrick worked with a leading consumer class action law firm and held legal internships with a federal administrative judge and the legal department of a publicly traded corporation. Before law school, Patrick attended New York University, where he graduated with a B.S. and played on the school's club baseball team.

Patrick grew up in Baltimore, Maryland and now resides in Denver, Colorado.

**EDUCATION**
University of Denver, J.D.
New York University, B.S.

**ADMISSIONS**
State of Colorado (2014)
United States District Court, District of Colorado
United States District Court, District of New Mexico
United States District Court, Eastern District of Michigan
United States District Court, Northern District of Illinois
United States District Court, Western District of Wisconsin

**TAYLOR TRUE SMITH** focuses his practice on consumer class actions.

Throughout his life and career, Taylor has developed a passion for consumer advocacy. By pursuing class actions on behalf of consumers, Taylor can give consumers not just a voice but also a seat at the bargaining table.

Taylor received his law degree from the Creighton University School of Law. During law school, he interned with the South Dakota Supreme Court. Prior to beginning law school, Taylor attended South Dakota State University where he earned a B.S. in Economics.

Taylor was raised in Fort Pierre, South Dakota and currently resides in Denver, Colorado.

Education
Creighton University School of Law, J.D. *Cum Laude* 2017
South Dakota State University, B.S. *Magna Cum Laude* 2013

Admissions
State of Colorado (2017)
United States District Court, District of Colorado
United States District Court, Eastern District of Michigan
United States District Court, Northern District of Illinois


**STEPHEN KLEIN** devotes his practice to consumer class actions and commercial litigation.

In a word, Stephen prides himself on the pursuit of results. Whether championing consumers in class actions to curb injurious commercial practices or helping businesses to secure their resources and protect their rights, Stephen is dedicated to achieving client goals.

Stephen earned his law degree at the University of Denver, Sturm College of Law, where he earned a certificate in intellectual property law. While in law school, Stephen worked as a student attorney in the Environmental Law Clinic and as a legal fellow in DU's Office of Technology Transfer. He also served as Managing Editor of the University of Denver Water Law Review. Prior to law school, Stephen earned a B.A. in Environmental and Sustainability Studies from the University of Northern Colorado.

Originally from Chicago, Illinois, Stephen spent time in Minnesota, Ohio, and Texas before settling in the Denver metro area.

**EDUCATION**
University of Denver, Sturm College of Law, J.D., Order of the Coif, 2018
University of Northern Colorado, B.A., *summa cum laude*, 2014

**ADMISSIONS**
State of Colorado (2018)
United States District Court, District of Colorado

# EXHIBIT 3

1    Mike Arias (CSB #115385)
        mike@asstlawyers.com
2    Alfredo Torrijos (CSB #222458)
        alfredo@asstlawyers.com
3    **ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
     6701 Center Drive West, 14th Floor
4    Los Angeles, California 90045
     Telephone:  (310) 844-9696
5    Facsimile: (310) 861-0168

6    Steven L. Woodrow*
        swoodrow@woodrowpeluso.com
7    Patrick H. Peluso*
        ppeluso@woodrowpeluso.com
8    Taylor T. Smith*
        tsmith@woodrowpeluso.com
9    **WOODROW & PELUSO, LLC**
     3900 East Mexico Avenue, Suite 300
10   Denver, Colorado 80210
     Telephone: (720) 213-0675
11   Facsimile: (303) 927-0809

12   *Pro Hac Vice* admission to be filed

13   Attorneys for Plaintiff Edwardo Munoz
     and the alleged Classes
14

15                **UNITED STATES DISTRICT COURT**
          **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
16

17   **Edwardo Munoz,** individually and on        CASE NO.  2:18-cv-03893-RGK-AGR
     behalf of all others similarly situated,
18                                                  **DECLARATION OF MIKE ARIAS IN**
                              Plaintiff,            **SUPPORT OF PLAINTIFF'S MOTION**
19                                                  **FOR APPROVAL OF ATTORNEYS'**
           v.                                       **FEES AND REIMBURSEMENT OF**
20                                                  **COSTS**
     **7-Eleven, Inc.,** a Texas corporation,
21                                                  Hearing
                              Defendant.            ─────
22                                                  Date:   November 4, 2019
                                                    Time:  9:00 a.m.
23                                                  Judge: Hon. R. Gary Klausner
                                                    Courtroom: 850
24                                                  Complaint Filed:  May 9, 2018
25

26

27

28

**DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF
ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS (CASE NO.  2:18-CV-03893-RGK-AGR)**

**DECLARATION OF MIKE ARIAS**

I, Mike Arias, declare:

1.     I am admitted and licensed to practice before all courts of the State of California, the States of New York, New Jersey and the District of Columbia.   I am the managing partner of the firm of Arias Sanguinetti Wang & Torrijos, LLP ("ASWT"), co-counsel of record for plaintiff Edwardo Munoz ("Plaintiff").

2.     I submit this declaration in support of Plaintiff's Motion for Approval of Attorneys' Fees and Reimbursement of Costs. I have personal knowledge of the matters described below and I am competent to testify thereto.

## I.     EXPERIENCE OF ARIAS SANGUINETTI WANG & TORRIJOS, LLP

3.     The partners of ASWT focus on representing plaintiffs and a large part of our practice centers on prosecuting class action lawsuits in the fields of consumer fraud, employment, disability rights, insurance, banking, and antitrust.  My partners and I collectively have been involved in the representation of plaintiffs in more than 150 different class action cases and have been appointed as class counsel in numerous state and federal courts.

4.     ASWT and my previous firm (Arias Ozzello Gignac, LLP) have successfully prosecuted and obtained significant recoveries in numerous class action and "mass action" lawsuits.  Some of those recoveries include:

- $49 million in cash equivalent calling cards recovered for failure to prorate monthly service fees charged to customers during final month of service prior to termination; *Rolnik v. AT&T Wireless Services, Inc.* (New Jersey Superior Court).

- $42 million recovery on behalf of a class of customers for inadequately disclosed out-of-cycle billing policies; *Lozano v. AT&T Wireless Services, Inc.* (U.S. District Court, Central District of California).

- $32.5 million recovery on behalf of a class on consumers for the

inadequate disclosure of certain fee, misrepresentation regarding those fees and failure to use fee as promised; *McKnight v. Uber Technologies, Inc.* (U.S. District Court, Northern District of California).

- $38 million recovery on behalf of a class of customers for inadequately disclosed service fees on billing statements; *Sterns v. AT&T Mobility Corp.* (U.S. District Court, Central District of California).

- $22.5 million recovery, consisting of $14.5 million in monetary relief and injunctive relief valued at $8 million, on behalf of a class of distributors asserting defendants engaged in price-fixing in violation of the Cartwright Act; *Kaewsawang v. Sara Lee Corp., et al.* (Los Angeles Superior Court).

- $20 million in cash equivalent calling cards recovered for overcharges on long distance telephone calls erroneously carried by AT&T and improperly billed by Verizon California; *Roark, et al. v. GTE California Inc., et al.* (Santa Barbara Superior Court).

- $16 million recovery on behalf of a class of victims of fraud and negligent cemetery operations; *In re: Woodlawn Memorial Park Litigation* (Los Angeles Superior Court).

- $15 million recovery of unpaid overtime wages and meal break premiums for home healthcare workers; *Costa, et al. v. Vitas Healthcare Corporation of California* (Los Angeles Superior Court).

- $14 million Judgment entered against Cal-ISO after trial for unpaid overtime; *Hardie v. California Independent System Operator* (Los Angeles Superior Court).

- $14.5 million recovery Judgment entered against Cal-ISO after

trial for unpaid overtime; *Hardie v. California Independent System Operator* (Los Angeles Superior Court).

- $10 million recovery on behalf of employees of ERISA violation related to 401(k) plans; *Gottlieb, et al. v. SBC Communications, et al.* (U.S. District Court, Central District of California).

- $10 million recovery of unpaid wages, break premiums, and other relief in class action alleging the misclassification of Store Managers; *Mosse v. CVS Caremark Corp.* (Los Angeles Superior Court).

- Over $9 million recovery for residents impacted by odors emitted from Sunshine Canyon Landfill; *Michaely v. Browning-Ferris Industries of California* (Los Angeles Superior Court).

- $9 million recovery for victims of racial profiling harassment at an amusement park; *Armendarez v. Six Flags Magic Mountain* (Los Angeles Superior Court).

- $8.3 million recovery for class members in suit asserting improper handling of decedents' remains; *In re: Paradise Memorial Park Litigation* (Los Angeles Superior Court).

- $8 million recovery of unpaid overtime wages and meal break premiums for fast food restaurant managers; *Elias, et al. v. El Pollo Loco, Inc.* (Los Angeles Superior Court).

- $5 million judgment following trial on behalf of certified class of consumers against tow company for unauthorized and illegal charges; *First Service Credit Union v. United Road Towing* (Eighth Judicial District for Clark County, Nevada).

- $4.1 million recovery on behalf of class alleging that certain Honda vehicles were equipped with a defective side airbag system which inadvertently deploy while the vehicle is being driven

– 4 –

under normal condition; *Gutierrez v. Honda North America, Inc.* (U.S. District Court, Central District of California).

- $2.5 Million recovery following settlement of class action lawsuit alleging that Panther violated "Contractor Operating Agreements" by failing to pay the fuel-surcharge that Panther promised when it initially offered a load to individuals and companies who leased equipment and provided their services to Panther; *Eubanks v. Panther II Transportation* (U.S. District Court, Northern District of Ohio).

- Settlement requiring the City of Los Angeles to spend more than $1.367 billion over 30 years to make public sidewalks and curbs located in the City accessible to persons with mobility disabilities; *Carter v. City of Los Angeles* (Los Angeles Superior Court).

5.     As set forth in detail below at paragraphs 22 through 29 of this declaration, I and my partner, Alfredo Torrijos, have an extensive background in all aspects of class action litigation – including the trial of certified class actions.  Representing consumers in class actions constitutes a significant part of ASWT's practice.

## II.     RISKS ASSUMED BY ASWT

6.     Before agreeing to represent plaintiffs and the proposed class in this action, I and my partners carefully weighed our potential benefits and risks from committing to this litigation.  I fully expected that defendant would mount a vigorous defense to this action and that certifying the class and ultimately prevailing at trial would be both time consuming and difficult.  Since plaintiff was not willing or able to retain counsel on an hourly basis to pursue this litigation, my firm would have to represent plaintiff and the proposed class on a contingency basis, meaning that we would only get paid for our efforts if successful in recovering damages – either through settlement or judgment – from the defendant.  I

– 5 –

therefore understood that there was a very real possibility that we would never be able to recoup our investment of time and money in this case. I also understood that even if we were ultimately able to recoup its investment of time and money, there would necessarily be a delay (potentially of many years) between the time these expenditures were made by my firm and the time that we were paid. Because of the real risk of obtaining no payment and the certainty that payment (if any) would be delayed, we would not have agreed to represent plaintiffs and the proposed class on a pure hourly basis.

7.     From the initiation of this case, my firm undertook the risk that we would never receive any payment from our prosecution of this action. We knew that defendant would devote significant resources to this litigation, including hiring aggressive and skilled attorneys who would provide a tenacious defense to this case. We also knew that prevailing and ultimately collecting any recovery from defendant was never anywhere near certain. We accepted and proceeded with this litigation in the face of this uncertainty, agreeing to undertake this litigation on a wholly contingent basis. Accordingly, the contingency risk borne by ASWT supports the requested fees.

## III.    TIMEKEEPING AND CALCULATION OF LODESTAR

8.     As of September 20, 2019, the attorneys and professional support staff at ASWT devoted a total 65.3 hours (comprised of 63.3 hours of attorney time and 2 hours of staff time) to the prosecution of this action. At their reasonable and regular hourly rates this represents a lodestar of $50,405, calculated as follows:

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| Mike Arias (managing partner) | $ 1,050.00 | 8.6 | $    9,030.00 |
| Alfredo Torrijos (partner) | $    750.00 | 54.7 | $  41,025.00 |
| LaDonna McDuffie (paralegal) | $    175.00 | 2.0 | $       350.00 |
| **Total:** | | **65.3** | **$  50,405.00** |

9.     The above table was prepared from time records that are regularly inputted by the attorneys and professional staff members of my firm and are maintained electronically. My partner, Alfredo Torrijos, and I have reviewed these time records in order to confirm their accuracy.  A true and correct copy of ASWT's detailed time records are available for *in camera* inspection upon request of the Court.

10.     The practice of both myself and the attorneys and professional staff at ASWT is to record time in tenth of an hour increments, and to do so as contemporaneously as possible.  This method of recording time is more accurate than recording time by quarter hour increments, which tends to inflate the amount of time billed for short telephone conferences and other small, discrete tasks.

11.     The procedures and systems employed at ASWT are not designed to ensure that all time spent on a case is in fact recorded.  As a result, the amount of time stated on our time records is conservative and necessarily understates the actual amount of time devoted to the prosecution of this case.  Also, in recording my time I did not record, and we do not seek compensation for, many tasks and activities. For example, my records for work in this case do not include many telephone conversations, meetings, and supervisory activities that I undertook in the prosecution of this action but did not record.

12.     In the exercise of billing judgment, either I or my partner, Alfredo Torrijos, reviewed and revised the billing records on an entry-by-entry basis to eliminate inefficiencies and other billing entries that we believe should not be claimed.  To the extent that any time entries by ASWT attorneys or legal staff reflect unproductive or duplicative hours, we have not requested fees based thereon.

13.     In my experience, the number of hours devoted to this case by ASWT is well within the range of hours that reasonably would be expected under the circumstances.

14.     The hours (and resulting lodestar) reported here are, as noted above, current as of September 20, 2019.  Accordingly, these hours do not include the additional time that may be devoted by ASWT to the prosecution of this action going forward.  ASWT does not intend to apply for reimbursement of additional fees incurred after September 20, 2019.

– 7 –

**DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS (CASE NO.  2:18-CV-03893-RGK-AGR)**

However, for purposes of evaluating the reasonableness of the present fee request, and in performing the lodestar cross-check, it is appropriate to consider that ASWT will necessarily have to devote additional time to the prosecution of this action beyond what is reflected in the lodestar figures set forth in this declaration.

## IV.    EVIDENCE IN SUPPORT OF PREVAILING RATES

15.    The above hourly rates used to calculate lodestar for the work done in prosecuting this action are the reasonable and regular rates that are commensurate with the experience and expertise of each attorney and paraprofessional (as set forth below in paragraphs 22 through 30 of this declaration) who worked on this case.

| Attorney | Position | Year of Admission |
|---|---|---|
| Mike Arias | Managing Partner | 1984 |
| Alfredo Torrijos | Partner | 2002 |

16.    The hourly rates used to calculate the above lodestar fall within the range approved as reasonable by courts in similar class action cases. See *Wynn v. Chanos*, No. 14-cv-04329-WHO, 2015 WL 3832561, at *2 (N.D. Cal. June 19, 2015) (approving rates of $570-$1,085 for attorneys); *Banas v. Volcano Corp.*, No. 12-cv-01535-WHO, 2014 WL 7051682, at *5 (N.D. Cal. Dec. 12, 2014) (finding rates ranging from $ 355 to $ 1,095 per hour for partners and associates were within the range of prevailing rates); *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable rates of between $475 to $975 for partners, $300 to $490 for associates, and $150 to $430 for litigation support and paralegals); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (finding reasonable "billing rates for partners [that] range from about $490 to $975 ... billing rates for non-partner attorneys, including senior counsel, counsel, senior associates, associates, and staff attorneys, [that] range from about $310 to $800, with most under $500 ... [and] billing rates for paralegals, law clerks, and litigation support staff [that] range from

– 8 –

about $190 to $430, with most in the $300 range.").

17. Moreover, these hourly rates are commensurate with the market rate for fees according to the Laffey Matrix, a court approved and adopted survey of attorney hourly rates. Attached hereto as **Exhibit 2** is the current version of the Laffey Matrix.[1]

18. Furthermore, the hourly rates requested here are comparable to the rates requested – and awarded – for work done by ASWT attorneys in other class actions.  Some of the more recent examples included:

a. On August 2, 2019, the Honorable Rafael A. Ongkeko approved an attorney fee request in connection with a class action settlement in *Kaewsawang v. Sara Lee Corp., et al.* (Los Angeles Superior Court - Case No. BC360109) for work for work done between May of 2015 and July of 2019 at the following hourly rates:

- Mike Arias (Partner) $1,050.00/hr.

- Alfredo Torrijos (Partner) $750.00/hr.

- LaDonna McDuffie (Paralegal) $175.00/hr.

Judge Ongkeko did not reduce the hourly rates for these attorneys and professional staff or any of the attorney/professional staff time submitted by my firm in the *Kaewsawang* matter.

b. On February 8, 2019, the Honorable Kenneth R. Freeman approved an attorney fee request in connection with a class action settlement in *Michaely, et al. v. Browning-Ferris Industries of California, Inc.* (Los Angeles Superior Court - Case No. BC497125) for work done between May of 2015 and August of 2018 at the following hourly rates:

- Mike Arias (Partner) $1,050.00/hr.

- Alfredo Torrijos (Partner) $750.00/hr.

---

[1] Since the hourly rates in the Laffey Matrix were established for D.C. Lawyers, these rates should be adjusted upward 4.6% to reflect the current rates typical of attorneys litigating within California. See *In re Chiron Corp. Securities Litigation, 2007 WL 4249902*, at *6 (N.D. Cal., Nov. 30, 2007) ("Adjusting the Laffey matrix figures accordingly will yield appropriate rates for the respective geographical regions: … +4.6% for Los Angeles.").

– 9 –

Judge Freeman did not reduce the hourly rates for these attorneys or any of the attorney time submitted by my firm in the *Michaely* matter.

    c. On May 4, 2017, the Honorable Kenneth R. Freeman approved an attorney fee request in connection with a class action settlement in *Fahmie, et al. v.City of Los Angeles* (Los Angeles Superior Court - Case No. BC381773) for work done between May of 2015 and January of 2017 at the following hourly rates:

-   Mike Arias (Partner) $750.00/hr.

-   Alfredo Torrijos (Partner) $650.00/hr.

Judge Freeman did not reduce the hourly rates for these attorneys or any of the attorney time submitted by my firm in the *Fahmie* matter.

    d. On November 29, 2016, the Honorable Jesus B. Bernal approved an attorney fee request in connection with a wage an hour action in *Bickley v. CenturyLink, Inc.* (U.S. District Court for the Central District of California) for work done between June 2015 and March 2016 at the following hourly rates:

-   Mike Arias (Partner) $750.00/hr.

-   Alfredo Torrijos (Partner) $650.00/hr.

    e. On August 30, 2016, the Honorable Ronald J. Israel ordered attorneys' fees against defendants in connection with a class action in First Service Credit Union v. United Road Towing, Inc. (District Court of Nevada for Clark County – Case No. A-10-616806-C) for work done between May of 2015 and September of 2015 at the following hourly rates:

-   Mike Arias (Partner) $750.00/hr.

-   Alfredo Torrijos (Partner) $650.00/hr.

Judge Israel did not reduce the hourly rates for these attorneys or any of the attorney time submitted by my firm in United Road Towing matter.

    f. On January 8, 2016, the Honorable J. Stephen Czuleger approved an attorney fee request in connection with a class action settlement in *Gutierrez, et al. v. California Commerce Club, Inc.* (Los Angeles Superior Court - Case No. BC360704)

– 10 –

for work done between May of 2015 and January of 2016 at the following hourly rates:

- Mike Arias (Partner) $750.00/hr.
- Alfredo Torrijos (Partner) $650.00/hr.

Judge Czuleger did not reduce the hourly rates for these attorneys or any of the attorney time submitted by my firm in the *Gutierrez* matter.

## V.    REQUEST FOR REIMBURSEMENT OF LITIGATION EXPENSES

19.    In addition to the professional time expended in the case, ASWT has incurred $1,177.45 in unreimbursed litigation expenses during the prosecution of this lawsuit, summarized as follows:

| Item | Incurred Costs |
|------|------|
| Filing Fees & Court Costs | $     975.00 |
| Mileage & Parking | $       88.17 |
| Messenger, Overnight Delivery & Postage | $     111.18 |
| Total: | $   1,177.45 |

20.    The expenses incurred by ASWT in connection with this litigation are reflected on an expense by expense basis in the financial records ASWT.  These records are prepared from expense reports, check requests, and cash receipts, and are maintained in the ordinary course of business by ASWT.  Attached hereto as **Exhibit 1** is a true and correct copy of a transaction report printed from ASWT's accounting system setting-forth the above expenses.  The expenses reflected above were reasonably and necessarily incurred in connection with this litigation and were specifically reviewed and authorized by me.  Upon the Court's request, ASWT will make its itemized statements and supporting documents available to the Court for its review.

/ / /

/ / /

/ / /

## VI.     BIOGRAPHIES OF ATTORNEYS AND PARAPROFESSIONALS

21.     In support of the hourly rates used to calculate the lodestar amounts set forth in this declaration, below I set forth the biographies of the principle attorneys and paraprofessionals who worked on this matter.

### A.     Mike Arias (Managing Partner)

22.     I was the founding and managing partner of ASWT.  The lodestar amounts set forth in this declaration reflect my work in this matter from May 2018 to September 2019.

23.     I have significant experience in managing and litigating cases, having served as lead, co-lead or liaison counsel in well over 100 class and mass tort actions.  I have resolved hundreds of matters, either by trial, arbitration or settlement, resulting in hundreds of millions of dollars in recovery for the firm's clients. My most recent class action trial victories resulted in judgments in excess of $19 million and $5 million.

24.     I am the current President of the Consumer Attorneys of California (CAOC), was last year's president of the Consumer Attorneys Association of Los Angeles (CAALA) and serve on the Board of Governors of the American Association for Justice (AAJ).  In 2019 I was named one of the year's California Trailblazers by The Recorder.  Also in 2019, I was recognized as one of the Daily Journal's 2019 Top Plaintiff Lawyers.  In 2016 I was awarded the AAJ Above and Beyond Award and in 2015 I was awarded the AAJ President's Distinguished Service Award.  I serve as Co-Chair of the Class Action Litigation Group of AAJ, Chair of the AAJ Convention Planning Committee, Chair of the AAJ Leaders Forum Advisory Committee, Chair of the Membership Committee of CAOC, am a member of the LACBA Litigation Section Executive Committee and I am the Founding Chair of CAALA's Plaintiffs Trial Academy.

25.     I have given numerous lectures and presentations on class action issues, including: *Optimizing the Likelihood of Obtaining Approval Of Your Settlement* (2017 Consumer Attorneys of California 11th Annual Class Action and Mass Tort Seminar); *Trying the Class Action* (2016 Consumer Attorneys of California Hawaii Travel Seminar); *Fee Applications – Recent Developments* (2016 Consumer Attorneys of California Annual

Convention); *Evaluating Potential Class Actions: What's Hot and What's Not* (2015 Consumer Attorneys of California Hawaii Travel Seminar); *Professional Objectors: Recent Developments and How to Deal with Them* (2015 Consumer Attorneys of California Annual Convention); *Trying the Class Action: Opening Statements* (2015 AAJ Class Action Seminar); *Trying the Class Action: Closing Arguments* (2015 AAJ Class Action Seminar); *Evaluating Potential Class Actions* (2015 Consumer Attorneys of California 9th Annual Class Action Seminar); *Bad Actions Equal Class Actions: Identifying the Differing Types* (2015 Consumer Attorneys of California Hawaii Travel Seminar); *Are Wage and Hour Class Actions the Beginning of the End?* (2014 JAMS Class Action Seminar); *Getting Your Settlements Approved* (2014 Bridgeport Class Action Conference); *AT&T Mobility v. Concepcion: Assessing the Impact on Class Action Litigation* (2013 Bridgeport Class Action Conference); *Class Certification Motions in the Post Brinker Era* (2013 Consumer Attorneys of California Annual Convention); *Jury Selection – Special Issues for Class Actions* (2012 American Association for Justice Annual Convention); *Recent Developments on the Use of Cy Pres Awards in Class Actions* (2012 Consumer Attorneys of California Annual Convention); *Class Actions: An A To Z Crash Course* (2012 Consumer Attorneys of California Hawaii Travel Seminar); *Class Action Settlement Strategies* (2010 Strafford CLE Webinar and Teleconference); *Certifying a Class Action* (2009 Consumer Attorneys Association of Los Angeles Annual Conference). In addition, I have co-chaired the two-day Annual Class Action Litigation Management Conference presented by Bridgeport Programs for five years. I have also written and co-authored numerous articles on class action issues, including: *Class Actions: Getting Your Class Certified* (Advocate Feb. 2010); and *A Class Action Primer* (Advocate Mar. 2010).

### B. Alfredo Torrijos (Partner)

26. Alfredo Torrijos is a partner of ASWT. The lodestar amounts set forth in this declaration reflect work in this matter by Mr. Torrijos from May 2018 to September 2019.

27. Mr. Torrijos has significant experience in technology related litigation, intellectual property law and class actions. Mr. Torrijos has handled class actions through trial and appeal

– 13 –

and has successfully represented consumers in class actions against some of the biggest technology and insurance companies in the country, including: Google, Yahoo!, CitySearch, Network Solutions, Nationwide Insurance, Progressive and State Farm.  In addition to his class action and commercial litigation experience, Mr. Torrijos also maintains a strong appellate practice, having written and argued dozens of appellate briefs, many of which resulted in reversals of the trial court.  Among the opinions he has helped publish are: *Cordova v. 21st Century Ins. Co.*, 129 Cal.App.4th 89 (2005); *Johnson v. GlaxoSmithKline, Inc.*, 166 Cal.App.4th 1497 (2008); *Hughes v. Progressive Direct Insurance Company*, 196 Cal.App.4th 754 (2011) (petition for review granted on Sept. 28, 2011 and review dismissed on Sept. 11, 2013); *Johnson v. Wal-Mart Stores, Inc.*, 544 F. App'x 696, 698 (9th Cir. 2013); and *Safeway, Inc. v. Superior Court of Los Angeles*, 238 Cal.App.4th 1138 (2015) (review denied Oct. 21, 2015).

28.     Mr. Torrijos received his Juris Doctor degree from Stanford Law School in 2001 and graduated *summa cum laude* from California State University, Northridge where he received a Bachelor of Science degree in business administration with an emphasis in finance. Prior to attending law school, Mr. Torrijos worked for Litton Industries as a staff accountant in the company's corporate financial consolidations and reporting department.  Mr. Torrijos was subsequently promoted and placed in charge of designing, programming and implementing the transition of the company's financial consolidation system from a legacy mainframe platform to a client/server system.  Following law school, Mr. Torrijos worked as a Management Consultant at The Boston Consulting Group (BCG), where he focused on the telecommunications, pharmaceutical, utilities and consumer sectors and on projects involving strategy development, organization/change management and cost management.

29.     Mr. Torrijos has spoken extensively on class action topics, including: *Structuring Class Settlements to Obtain Court Approval* (October 9, 2018, Stafford Publications); *Handling Individual Wage & Hour Cases* (August 30, 2018, CAALA Las Vegas Convention); *Dealing with Professional Objectors* (June 11, 2018, Consumer Attorneys of California 12th Annual Class Action and Mass Torts Seminar); *Structuring Class Settlements to Obtain Court Approval*

– 14 –

**DECLARATION OF MIKE ARIAS IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS (CASE NO.  2:18-CV-03893-RGK-AGR)**

(September 20, 2017, Stafford Publications); *Class Actions in the Age of Big Data* (November 15, 2014, 2014, Consumer Attorneys of California Annual Convention); *Class Action Settlements: Rule 68 Offers of Judgment and Other Strategic Tools* (April 11, 2014, Bridgeport Continuing Education 2014 Class Action Conference); *Getting Your Settlement Approved* (September 2014, JAMS Class Action Seminar); *The Changing Standards of Class Certification* (January 10, 2014, Bridgeport Continuing Education Consumer Class Action Conference); *Class Actions: Recent Developments* (January 2014, myLawCLE); *CAFA Removal and Remand: Latest Developments* (March 29, 2011, Stafford Publications); and *Is it better to file a nationwide class action or state-only class action?* (January 28, 2010, Consumer Attorneys of California 4th Annual Class Action Seminar).   Mr. Torrijos has also co-authored numerous articles concerning class action law, including: *Notice 2.0: How Technology is Changing Class Action Notice Procedures* (January 2011, Westlaw Journal); *The Internet, Indispensable for Providing Class Action Notice* (August 16, 2010, Los Angeles Daily Journal); *The Rise of "Professional Objectors" in the Class Action Settlements* (July 8, 2010, Los Angeles Daily Journal); and *The End of Consumer Class Action Arbitrations* (May 14, 2010, Los Angeles Daily Journal).

### C.     LaDonna R. McDuffie (Paralegal)

30.     La Donna McDuffie is a Certified Paralegal with over 16 years' experience. Ms.  McDuffie obtained her Bachelor of Science from Pepperdine University in 1996 and completed the ABA-Approved Paralegal Certification Program at West Los Angeles College.  Her experience includes civil litigation specializing in Business and Commercial Litigation and Products Liability cases.


I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, executed on September 20, 2019 in Los Angeles, California.


_____
Mike Arias

– 15 –

**EXHIBIT 1**

## Arias Sanguinetti Wang and Torrijos, LLP
## Prepaid Case Costs
### All Dates

| Date | Transaction Type | Num | Name | Class | Memo/Description | Split | Amount |
|---|---|---|---|---|---|---|---|
| **Prepaid** | | | | | | | |
| 05/10/2018 | Expense | 21727228 | US District Court | Munoz v. 7-Eleven | Filing fee Complaints and other initiating documents | 2002 Amex Business Gold *1000 | 400.00 |
| 05/15/2018 | Expense | Munoz filing | US District Court | Munoz v. 7-Eleven | Filing fee Ex Parte applications Steven L. Woodrow | 2002 Amex Business Gold *1000 | 325.00 |
| 05/15/2018 | Expense | Munoz filing | US District Court | Munoz v. 7-Eleven | Filing fee Ex Parte Applications Patrick H. Peluso | 2002 Amex Business Gold *1000 | 325.00 |
| 05/15/2018 | Expense | Munoz filing | US District Court | Munoz v. 7-Eleven | Filing fee Ex Parte applications Taylor T. Smith | 2002 Amex Business Gold *1000 | 325.00 |
| 05/21/2018 | Deposit | | Woodrow & Peluso | Munoz v. 7-Eleven | Reimbursement of filing fees | 1080 Bank of Nevada General (7195) | -400.00 |
| 07/17/2018 | Bill | 33373766R | Alfredo Torrijos | Munoz v. 7-Eleven | Pacer - Online Pacer charges. | 2000 Accounts Payable (A/P) | 2.20 |
| 02/28/2019 | Bill | 189531 | Nationwide Legal, LLC | Munoz v. 7-Eleven | 2-19-19 Joint Slip courtesy copy | 2000 Accounts Payable (A/P) | 30.00 |
| 04/01/2019 | Bill | 3884619 | Golden State Overnight | Munoz v. 7-Eleven | 3-25-19 Delivery | 2000 Accounts Payable (A/P) | 16.03 |
| 05/03/2019 | Bill | | Golden State Overnight | Munoz v. 7-Eleven | 4-22-19 delivery to USDC E. Temple St | 2000 Accounts Payable (A/P) | 16.03 |
| 05/03/2019 | Bill | | Golden State Overnight | Munoz v. 7-Eleven | 4-17-19 delivery to USDC E. Temple St | 2000 Accounts Payable (A/P) | 26.08 |
| 05/16/2019 | Bill | 3914989 | Golden State Overnight | Munoz v. 7-Eleven | 5-6-19 delivery to USDC | 2000 Accounts Payable (A/P) | 23.04 |
| 05/18/2019 | Bill | 4544447R | Alfredo Torrijos | Munoz v. 7-Eleven | 78.9 mi @ $0.545 / mi - Travel from office of opposing counsel following Rule 16 meet and confer. | 2000 Accounts Payable (A/P) | 43.00 |
| 05/18/2019 | Bill | 4544447R | Alfredo Torrijos | Munoz v. 7-Eleven | Irvine Company - Parking at Carl Jensen for in-person Rule 16 meet and confer. | 2000 Accounts Payable (A/P) | 7.00 |
| 05/18/2019 | Bill | 4544447R | Alfredo Torrijos | Munoz v. 7-Eleven | 70.03 mi @ $0.545 / mi - Travel to opposing counsel for Rule 16 meet and confer. | 2000 Accounts Payable (A/P) | 38.17 |
| 09/01/2019 | Bill | 50189827R | Alfredo Torrijos | Munoz v. 7-Eleven | Pacer - Pacer search and charges. | 2000 Accounts Payable (A/P) | 0.90 |
| **1200** | | | | | | | **$ 1,177.45** |

Friday, Sep 20, 2019 09:51:28 AM GMT-7 - Accrual Basis

Arias Decl.
Exhibit 1, p. 17

**EXHIBIT 2**

# LAFFEY MATRIX

History

Case Law

Expert Opinions

See the Matrix

Contact us

Home

Links

| Year | Adjustmt Factor** | Paralegal/ Law Clerk | Years Out of Law School * | | | | |
|------|------|------|------|------|------|------|------|
| | | | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/18- 5/31/19 | 1.0350 | $202 | $371 | $455 | $658 | $742 | $894 |
| 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

Arias Decl.
Exhibit 2, p. 19

** The Adjustment Factor is based on the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.