Mike Arias (CSB #115385)
    mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
    alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:   (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow (*admitted pro hac vice*)
    swoodrow@woodrowpeluso.com
Patrick H. Peluso (*admitted pro hac vice*)
    ppeluso@woodrowpeluso.com
Taylor T. Smith (*admitted pro hac vice*)
    tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **Edwardo Munoz,** individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>**7-Eleven, Inc.,** a Texas corporation,<br><br>        Defendant. | Case No.  2:18-cv-03893-RGK-AGR<br><br>**NOTICE OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br>Date: November 4, 2019<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Courtroom: 850<br>Complaint Filed: May 9, 2018 |

**PLEASE TAKE NOTICE** that on Monday, November 4, 2019, at 9:00 a.m., or as soon thereafter as counsel may be heard, counsel for Plaintiff Edwardo Munoz ("Plaintiff" or "Munoz") shall appear before the Honorable R. Gary Klausner or any judge sitting in his stead in Courtroom 850 of the United States District Court for the Central District of California, Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012 and present Plaintiff's Motion for Final Approval of Class Action Settlement.

This motion is made pursuant to Federal Rule of Civil Procedure 23. As explained in the accompanying memorandum, final approval should be granted here because the class Settlement is fair, reasonable, and adequate. Further, the Court should find that the notice plan was reasonable, comports with due process, and was implemented in accordance with the Court's preliminary approval Order.

This Motion is based on this Notice and Motion, the Memorandum in Support of the Motion and the exhibits attached thereto, oral argument of counsel, and any other matter that may be submitted at the hearing.

Respectfully submitted,

Dated: October 7, 2019

**Edwardo Munoz**, individually and on behalf of all others similarly situated,

By:     _/s/ Steven L. Woodrow_
One of Plaintiff's Attorneys

Mike Arias (CSB #115385)
   mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
   alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:  (310) 844-9696

Facsimile: (310) 861-0168

Steven L. Woodrow (*admitted pro hac vice*)
    swoodrow@woodrowpeluso.com
Patrick H. Peluso (*admitted pro hac vice*)
    ppeluso@woodrowpeluso.com
Taylor T. Smith (*admitted pro hac vice*)
    tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

I.    Introduction ...................................................................................1

II.   Legal, Factual, And Procedural Background. ...............................1

      A.    The FCRA ...........................................................................1

      B.    Plaintiff's Claims And The Litigation Process. ..................2

      C.    The Mediation Process And Settlement History. ...............3

III.  Key Settlement Terms ...................................................................5

      A.    Class Definition ..................................................................5

      B.    Monetary Relief ..................................................................6

      C.    Prospective Relief ...............................................................6

      D.    Release Of Liability ............................................................6

IV.   The Notice Plan Was Reasonable And Comports With Due Process.......7

V.    The Settlement Should Receive Final Approval. ..........................9

      A.    The Strength Of Plaintiff Munoz's Case Supports Approval.......11

      B.    The Risk, Expense, Complexity, And Duration Of Continued
            Litigation Support Approval As Well. ...............................12

      C.    The Risk Of Maintaining Class Action Status Also Favors
            Approval. ...........................................................................13

      D.    The Amount Offered In Settlement Should Be Approved. ...........14

      E.    The Extent Of Discovery Completed And
            The Stage Of Litigation. ....................................................16

      F.    The Experience And Views Of Class Counsel. ................17

      G.    The Presence Of A Government Participant......................19

      H.    The Reaction Of The Class Members. ...............................19

VI.   Conclusion....................................................................................20

# TABLE OF AUTHORITIES

*Aceves v. Autozone Inc.*, No. 5:14-cv-2032 (C.D. Cal. Nov. 18, 2016) .................15

*Brown v. CVS Pharmacy, Inc.*, Case No. CV15–7631 PSG (PJWx), 2017 WL
         3494297 (C.D. Cal. Apr. 24, 2017).....................................................12

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..........................10

*Dorsette v. TA Operating LLC*, Case No. ED CV 09-1350 PA (RZx), 2010 WL
         11583002 (C.D. Cal. July 26, 2010) ...............................................13

*Eisen v. Porche Cars North America, Inc.*, No. 2:11–cv–09405–CAS–FFMx, 2014
         WL 439006 (C.D. Cal. Jan. 30, 2014) ...............................................11

*Esomonu v. Omnicare, Inc.*, Case No. 15-cv-02003-HSG, 2019 WL 499750 (N.D.
         Cal. Feb. 8, 2019) ...........................................................................16

*Estes v. L3 Technologies, Inc.*, Case No.: 3:17-cv-02356-HLL, 2019 WL 141564
         (S.D. Cal. Jan. 9, 2019) ...................................................................16

*Feist v. Petco Animal Supplies, Inc.*, Case No.: 3:16-cv-01369-H-MSB, 2018 WL
         6040801 (S.D. Cal. Nov. 16, 2018) ...................................................16

*Forcellati v. Hyland's Inc.*, No. CV 12–1983–GHK (MRWx), 2014 WL 1410264
         (C.D. Cal. Apr. 9, 2014).....................................................................19

*Gilberg v. California Check Cashing Stores, LLC*,
         913 F.3d 1169 (9th Cir. 2019)...........................................................2

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ...................12

*In re OSI Systems, Inc. Derivative Litig.*, Case No. CV-14-2910-MWF (MRWx),
         2017 WL 5642304 (C.D. Cal. May 2, 2017) ......................................16

*In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act
         (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014)................14, 17, 19

*Kirchner v. Shred-It USA Inc.*, Civ. No. 2:14–1437 WBS EFB, 2015 WL 1499115
         (E.D. Cal. Mar. 31, 2015) .................................................................15

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) .........................................8, 10

*Lavalle v. Chex Systems, Inc.*, 8:08–cv–01383 (C.D. Cal. 2011)............................15

*Litty v. Merrill Lynch & Co., Inc.*, Case No. CV 14–0425 PA (PJWx), 2015 WL
      4698475 (C.D. Cal. Apr. 27, 2015)..............................14

*Marin v. General Assembly Space, Inc.*, Case No.: CV 17-05449-sjo-ksx, 2018 WL
      4999955 (C.D. Cal. July 31, 2018) .......................................11

*Martin v. AmeriPride Services, Inc.*, No. 08cv440–MMA (JMA), 2011 WL
      2313604 (S.D. Cal. June 9, 2011) ........................................18

*McKenzie v. Federal Exp. Corp.*, No. CV 10–02420 GAF (PLAx), 2012 WL
      2930201 (C.D. Cal. July 2, 2002) ........................................14

*Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, Case No. 2:16-cv-1066, 2017 WL
      2838148 (S.D. Ohio June 30, 2017)......................................16

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
      221 F.R.D. 523 (C.D. Cal. 2004) ................................................ *passim*

*Pitt v. Kmart Corp., et al.*, Case No. 3:11-cv-00697-JAG-MHL (E.D. Va. May 24,
      2013).........................................................16

*Rannis v. Recchia*, 380 Fed.Appx. 646 (9th Cir. 2010)............................................7

*Rodriguez v. Bumble Bee Foods, LLC*, Case No.: 17cv2447-MMA (WVG), 2018
      WL 1920256 (S.D. Cal. Apr. 24, 2018)............................................13

*Rodriguez v. Kraft Food Group, Inc.*, Case No.: 1:14-cv-1137-LJO-EPG, 2016 WL
      5844378 (E.D. Cal. Oct. 5, 2016) .......................................11

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)...............7, 8, 13

*Salmonson v. Bed Bath and Beyond, Inc.*, Case No. CV 2011-2293-SVW-SS, *et al.*,
      2013 WL 12171817 (C.D. Cal. Mar. 14, 2013) .................................15

*Simpao v. Gov't of Guam*, 369 Fed.Appx. 837 (9th Cir. 2010)................................7

*Wilson v. Gateway, Inc.*, Case No. CV 09–7560–GW(VBKx), 2014 WL 12704846

(C.D. Cal. Oct. 6, 2014) ......................................................................13

**STATUTES, RULES, SECONDARY SOURCES**

Alba Conte & Newberg, *Newberg on Class Actions*, (4th ed. 2002) ........................8

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ............................................1, 11

FEDERAL JUDICIAL CENTER, Managing Class Action Litigation: A Pocket

Guide for Judges, Third Edition (2010) .................................7

Fed. R. Civ. P. 23, *et seq.* ..........................................................7, 8, 9, 10

# I.    Introduction

The class action Settlement reached in this case—which seeks to resolve the claims brought against Defendant 7-Eleven, Inc. ("Defendant" or "7-Eleven") challenging its alleged use of an improper consumer report disclosure form under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA" or "Act")—has been a success. Plaintiff Edwardo Munoz ("Plaintiff" or "Munoz") now respectfully moves the Court for an order granting final approval to the Settlement.

In accordance with the Court's Order granting preliminary approval, class notice was disseminated by direct mail and email to 52,004 class members, which alerted the members to the existence of the Settlement and encouraged them to file claims. Overall, the response to the Settlement has been positive. Only 19 opt-outs have been received and no objections were filed. As of October 7, 2019, 1,914 claims have been filed. Consequently, the payments to class members will total $550 each. Further, 7-Eleven has agreed to make changes to its hiring practices to fix the alleged issues in its FCRA disclosure. These benefits are fair, reasonable, and adequate and worthy of final approval.

As such, and as explained below, the Court should grant final approval.

# II.    Legal, Factual, And Procedural Background.

## A.    The FCRA

The FCRA requires that employers, prior to procuring any consumer report about their job applicants or employees, provide a disclosure and authorization informing the applicants or employees that such a report may be procured about them for employment purposes. The disclosure and authorization must be "clear and conspicuous" and presented "in a document that consists solely of the disclosure." *See* § 1681b(b)(2)(A)(i). The Ninth Circuit has made clear that the inclusion of any extraneous information in the disclosure, beyond those expressly

authorized by the statute, violates the FCRA. *See Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169, 1175 (9th Cir. 2019) ("We concluded the statute meant what it said: the required disclosure must be in a document that 'consist[s] 'solely' of the disclosure.'").

Were the case to proceed, Plaintiff believes that he would ultimately be able to show that 7-Eleven's Disclosure Regarding Background Investigation ("Disclosure") willfully violated the FCRA's stand-alone disclosure requirement. 7-Eleven's form combines the disclosures regarding consumer reports and investigative consumer reports and includes other extraneous information—including, statements about Sterling Talent Solutions, vague references to state statutory provisions, and a blanket authorization allowing the disclosure of information directly to 7-Eleven. Further, Plaintiff would be able to demonstrate that 7-Eleven had the resources to comply with the FCRA and that its failure to do so was willful.

**B.     Plaintiff's Claims And The Litigation Process.**

Prior to initiating this Action, Class Counsel undertook an extensive investigation into Plaintiff Munoz's employment with 7-Eleven. (*See* Declaration of Steven L. Woodrow ("Woodrow Decl."), attached hereto as Ex. A.) The investigation included interviewing Munoz regarding his employment and requesting and obtaining Munoz's employment file from 7-Eleven, which included the Disclosure Regarding Background Investigation, among other documents. (Woodrow Decl. ¶¶ 5-7.) Following a thorough review of these documents, publicly available information, and additional conversations with Munoz, Class Counsel determined that a good faith basis existed to pursue the case as an alleged class action. (*Id.* ¶¶ 8-9.)

On May 9, 2018, Plaintiff filed his class action complaint in the United States

District Court for the Central District of California against 7-Eleven alleging violations of the FCRA, which was subsequently amended on July 9, 2018. (*See* Dkts. 1, 23.) Shortly thereafter, 7-Eleven moved to dismiss the Complaint. (*See* Dkt. 24.) On September 5, 2018, following full briefing, the Court issued its Order denying Defendant's motion to dismiss. (*See* Dkt. 37.) In addition, Plaintiff filed his Motion for Class Certification, which was fully briefed by the Parties. (Dkts. 33, 38, 40.) On October 18, 2018, the Court issued its Order certifying Plaintiff's proposed classes. (*See* Dkt. 43.)

Plaintiff then worked to develop a notice plan, which the Court approved on February 12, 2019. (Dkt. 50.) The Parties then coordinated to disseminate the Notice. This included working with class action administrator Kurtzman Carson Consultants, LLC ("KCC") to finalize the notices and ensure that they were sent to the class members. (Woodrow Decl. ¶ 15.) After notice was disseminated, Class Counsel began to field near-daily calls from class members seeking additional information about the case, which required counsel to devote considerable time assisting class members with their questions. (*Id.*)

The Parties also engaged in extensive discovery. (Woodrow Decl. ¶ 16.) This included serving and responding to discovery requests and taking depositions— Class Counsel deposed 7-Eleven's corporate representative in Dallas, Texas on January 30, 2019, and counsel for 7-Eleven deposed Plaintiff Munoz on February 20, 2019 in Newport Beach, CA. (*Id.*) Plaintiff also conducted third-party discovery through a subpoena issued to Sterling, the background check provider. (*Id.*) Counsel for both Parties regularly met-and-conferred regarding discovery disputes and, when necessary, raised the disputes with the Court. (*Id.*)

## C.   The Mediation Process And Settlement History.

In early 2019, the Parties discussed the possibility of scheduling a private

mediation session. (Woodrow Decl. ¶ 19.) The Parties eventually agreed to convene on April 9, 2019 in Toronto, Ontario, Canada for a full-day mediation session with Michael E. Dickstein—an internationally-recognized and well-respected mediator with substantial class action experience. (*Id.* ¶¶ 20-21.) The mediation was adversarial with both Parties discussing their respective claims and planned defenses. (*Id.* ¶ 21.) The Parties were unable to reach an agreement that day. (*Id.*) Instead, the Parties agreed to proceed with briefing and arguing their cross motions for summary judgment and preparing for the impending trial. (*Id.*) At the same time, the Parties also agreed that they would continue their settlement discussions. (*Id.* ¶ 22.)

In the midst of trial preparation—including compiling exhibit lists, witness lists, drafting their memorandum of contentions of law and fact, drafting their jury instructions, and holding the Rule 16-2 meeting—and with the continued assistance and oversight of the mediator, the Parties reached an agreement in principal to resolve the claims. (Woodrow Decl. ¶ 24.) Only after an agreement was reached in principal with respect to the class members did the Parties discuss an incentive award for the Class Representative and an award of reasonable attorneys' fees for Class Counsel. (*Id.*)

On July 30, 2019, the Court granted preliminary approval to the Settlement Agreement. (Dkt. 91.) Following preliminary approval, Class Counsel worked with KCC to finalize the notice documents—including the claim form, long form notice, short form (postcard) notice, the email notice, the Settlement Website, and the interactive voice recording (IVR) messaging. (Woodrow Decl. ¶ 28.) Counsel then worked to ensure that the notice was properly and timely disseminated by the Settlement Administrator to the class members. (*Id.* ¶ 29.) Class Counsel continues to receive inquiries from class members who require assistance with the claims

process. (*Id.* ¶ 30.) The claims deadline was originally scheduled to close on September 23, 2019. (*Id.* ¶ 33.) After reviewing the claims to date, Class Counsel reached out to 7-Eleven's counsel who agreed that the deadline for filing claims should be extended to match the objection/exclusion deadline, October 4, 2019. (*Id.* ¶¶ 33-34.) A notice was placed on the Settlement Website advising Settlement Class Members of their opportunity to submit claims through October 4, 2019. The extension ultimately resulted in an additional 150 class members filing claims, which brings the claims rate to 3.67%. (*Id.* ¶ 38.)

The end result is a Settlement Agreement that is particularly strong and compares favorably to other FCRA settlements. As such, the Court should find that the agreement is fair, reasonable, and adequate, and thus warrants final approval.

## III.   Key Settlement Terms

The precise terms of the Settlement are set forth in the attached Settlement Agreement. (*See* Settlement Agrmt., Dkt. 90, Ex. A.) Below is a brief summary of the essential terms.

### A.   Class Definition

The "Class" is defined as all persons who fall into the definition of either class certified by the Court in its Order granting Class Certification (dkt. 43). The Classes are defined as follows:

**Disclosure Class:** All persons in the United States who (1) from a date [two years] prior to the filing of this initial complaint in this action to the date notice is sent to the Disclosure Class; (2) applied for employment with Defendant; (3) about whom Defendant procured a consumer report; and (4) who were provided the same form FCRA disclosure and authorization as the disclosure and authorization form that Defendant provided to Plaintiff.

**California Subclass:** All members of the Disclosure Class who reside in California.

(Settlement Agrmt. § 1.7.)

### B.   Monetary Relief

The Settlement provides class members who file valid claims with substantial monetary relief. Specifically, 7-Eleven has agreed to establish a Settlement Fund of $1,972,500 ("Settlement Fund"). (Settlement Agrmt. § 1.43.) The Settlement Fund will be used to pay all approved claims (up to a maximum per-claim amount of $550), Settlement Administration Expenses, any Incentive Award, and any Fee Award. After the subtraction of the Settlement Administration Expenses, any Incentive Award, and any Fee Award from the Settlement Fund, the remaining amount—the Net Settlement Fund—will be divided by the total number of approved claims. Each class member who submits an approved claim shall be entitled to receive one (1) Claimant Payment. Claimant Payments will be of equal value, up to a maximum of $550, and will be calculated by dividing the Net Settlement Fund by the total number of approved claims. Any monies remaining in the Settlement Fund will be donated to the *Cy Pres* Recipient.

Based on the current number of claims filed, each Claimant Payment will be worth $550.

### C.   Prospective Relief

7-Eleven has also agreed to remedy the very issues that gave rise to the instant litigation. That is, on a going-forward basis 7-Eleven will utilize, as required by the FCRA, a stand-alone disclosure that does not contain any extraneous information. (Settlement Agrmt. § 2.2.)

### D.   Release Of Liability

In exchange for the relief described above, 7-Eleven will receive a release of

any claims relating to the factual allegations that gave rise to the case that belong to Plaintiff and any class member who does not opt-out. (Settlement Agrmt. § 3.) On July 18, 2019, the Court issued an Order requiring the Parties to narrow the release to the allegations of the Complaint. (Dkt. 89.) The Parties made this change and the Court granted preliminary approval on July 30, 2019. (Dkt. 91.)

As explained below, the terms of the Settlement are fair, reasonable, and adequate for the Classes and the Court should grant final approval.

## IV.    The Notice Plan Was Reasonable And Comports With Due Process

Prior to granting final approval to a class action settlement, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). For any class certified under Fed. R. Civ. P. 23(b)(3), "'the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Simpao v. Gov't of Guam*, 369 Fed.Appx. 837, 838 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(c)(2)(B)). "These requirements are designed to ensure that class notice procedures comply with the demands of due process." *Rannis v. Recchia*, 380 Fed.Appx. 646, 650 (9th Cir. 2010) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). Due process does not require that every class member actually receive notice. *Id.* Rather, "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice." *Id.* A notice plan that reaches at least 70% of the class members is generally considered reasonable. FEDERAL JUDICIAL CENTER, *Managing Class Action Litigation: A Pocket Guide for Judges*, Third Edition (2010).

The language of the notice is "satisfactory if it 'generally describes the terms

of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). The notice must state: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment. Fed. R. Civ. P. 23(c)(2)(B). The notice is considered "adequate if it may be understood by the average class member." *See* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:53 at 167 (4th ed. 2002).

Following the Court's grant of preliminary approval, the Parties worked with the administrator, KCC, to implement the notice plan consistent with the requirements of the preliminary approval Order. (*See* Declaration of Gio Santiago ("Santiago Decl."), attached hereto as Ex. B.) KCC utilized the Class List previously provided by 7-Eleven to disseminate notice of the settlement to the class members. (Santiago Decl. ¶ 13.) KCC located addresses and mailed noticed to 52,004 class members (out of a potential 52,159 class members). (*Id.* ¶ 15.) Ultimately, direct mail notice reached 48,039 class members, or 92.10% of the class members. (*Id.* ¶ 18.) Further, KCC was able to locate email addresses and provide notice via electronic mail to 49,422 class members, or 94.79% of all class members. (*Id.* ¶ 14.) KCC also established and maintained a Settlement Website (7elevenfcralawsuit.com), which was used by class members to submit claims electronically. (*Id.* ¶ 11.) Overall, the reach of the notice plan was a tremendous success.

The direct mail notice apprised class members of the existence of the Settlement Website, which hosted the "Long Form" notice approved by the Court, provided details regarding key deadlines and the rights of class members to object or opt-out of the Settlement, and allowed class members to file claims either electronically or by mail. (Santiago Decl. ¶ 11.) Likewise, the email notice also apprised class members of their rights and referred them to the Settlement Website. As of October 7, 2019, the website has been viewed by 18,271 unique visitors. (*Id.*)

Following the dissemination of the Notice, the Parties began receiving weekly reports from KCC regarding the status of the claims process. The initial figures were slightly lower than the Parties had originally forecasted. (Woodrow Decl. ¶ 33.) Class Counsel reached out to 7-Eleven's counsel regarding extending the claims period to give class members more time to submit claims. (*Id.*) Following these discussions, the Parties agreed to extend the deadline to file claims from September 23, 2019 until October 4, 2019 (to match the objection/exclusion deadline). (*Id.* ¶ 34.) As a result, one hundred fifty additional class members were able to file claims and participate in the Settlement. (*Id.* ¶ 35.)

Finally, both the mailed and emailed notices used simple, plain, and easy to understand language. The notice clearly explained the class members' rights and provided contact information for class members to reach out to Class Counsel with additional questions. Class Counsel have steadily received calls from class members requesting additional information or assistance with filing claims.

In short, the notice to the class members complied with the Court's Preliminary Approval Order, Fed. R. Civ. P. 23, and Due Process.

**V.    The Settlement Should Receive Final Approval.**

Rule 23(e) provides that a class action may only be settled, voluntarily dismissed, or compromised with the approval of the court. Fed. R. Civ. P. 23(e). In

general, there exists a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Before a Court can approve the settlement, it must make a finding that final approval is warranted. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing *Manual for Complex Litig., Third*, § 30.41, at 236–37 (1995)). "The 'universally applied standard' in determining whether a court should grant final approval to a class action settlement is whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Id.*; *see also* Fed. R. Civ. P. 23(e)(2). "[W]ether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane*, 696 F.3d at 819.

To decide whether a settlement is fair, adequate, and reasonable, a court may examine the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[1] *Lane*, 696 F.3d at 819 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Further, "'[s]ettlements are afforded a presumption of fairness if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the

---

[1] In December 2018, Fed. R. Civ. P. 23 was amended to include a list of factors to consider prior to approval. However, the advisory committee's notes explain that "each circuit has developed its own vocabulary for expressing these concerns," and the newly codified factors are not intended "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance." *See* Fed. R. Civ. P. 23(e)(2).

proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *Marin v. General Assembly Space, Inc.*, Case No.: CV 17-05449-sjo-ksx, 2018 WL 4999955, at *9 (C.D. Cal. July 31, 2018).

A review of each of the final approval factors demonstrates that the instant Settlement is "fair, reasonable, and adequate" and warrants final approval.

### A.      The Strength Of Plaintiff Munoz's Case Supports Approval.

The first factor examines "the likelihood of success on the merits and the range of possible recovery." *Eisen v. Porche Cars North America, Inc.*, No. 2:11–cv–09405–CAS–FFMx, 2014 WL 439006, at *3 (C.D. Cal. Jan. 30, 2014) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964–65 (9th Cir. 2009)). In evaluating this factor, "the Court need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of the outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Id.* Instead, "the court may presume that, through negotiation, the parties, their counsel, and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery." *Rodriguez v. Kraft Food Group, Inc.*, Case No.: 1:14-cv-1137-LJO-EPG, 2016 WL 5844378, at *6 (E.D. Cal. Oct. 5, 2016).

Plaintiff and Class Counsel are confident in the strength of the case and their ability to succeed on the merits. Were they to succeed at trial, the recovery would have been substantial—under the FCRA, each willful violation provides for damages in the range of $100 to $1,000. *See* 15 U.S.C. § 1681n(a). When considering the Classes consist of 52,159 members in total, the range of potential recovery could fall between $5,215,900 and $52,159,000. Still, this result only materializes if Plaintiff succeeds at trial (and on appeal, which was a guarantee no matter which side prevailed at trial). Despite confidence in the strength of the case,

litigation is inherently unpredictable. For its part, 7-Eleven was prepared to mount a vigorous defense at trial and on appeal. Further, a significant portion of the trial was likely to revolve around the issue of willfulness, which is a required showing for the FCRA's statutory damages provision to be triggered. In other words, if the jury in this case ultimately did not find that 7-Eleven's violations were willful, the class members would have received nothing. Moreover, given that 7-Eleven was prepared to appeal any decision or verdict, the issues wouldn't be resolved anytime soon. Rather, the litigation could have stretched on for years with the potential for no recovery at all. By contrast, the Settlement at hand provides immediate and meaningful relief to Plaintiff and the Classes, which takes into consideration the strengths and weaknesses of the claims. Thus, this factor favors approval.

### B. The Risk, Expense, Complexity, And Duration Of Continued Litigation Support Approval As Well.

The next factor examines "the risk, expense, complexity, and likely duration of further litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 525 . There exists a "'strong judicial policy that favor[s] settlements, particularly where complex class action litigation is concerned.'" *Brown v. CVS Pharmacy, Inc.*, Case No. CV15–7631 PSG (PJWx), 2017 WL 3494297, at *3 (C.D. Cal. Apr. 24, 2017) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)). Further, "'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 526 (quoting 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)). "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *In re Linkedin User Privacy Litig.*, 309

F.R.D. 573, 587 (N.D. Cal. 2015).

The risk, expense, complexity, and duration of continued litigation would be substantial. While Plaintiff is confident in this case, uncertainties exist, including the Court's potential rulings on the cross-motions for summary judgment and the impending trial. Regardless of the verdict following summary judgment or trial, the prospect of an appeal is all but certain. Were this case to continue, it could stretch on for years with the potential for no recovery at all. On the other hand, the Settlement presented to the Court provides class members who file timely claims with immediate cash payments and corrects the very issue that gave rise to the litigation. Indeed, immediate recovery is preferred to protracted and expensive litigation. *See Wilson v. Gateway, Inc.*, Case No. CV 09–7560–GW(VBKx), 2014 WL 12704846, at *4 (C.D. Cal. Oct. 6, 2014). As a result of these risks, this factor weighs in favor of approval as well.

## C. The Risk Of Maintaining Class Action Status Also Favors Approval.

The next factor asks whether there exists a risk to maintaining class certification. The fact that the Court previously certified the Classes does not negate this factor. Rather, "[p]ursuant to Rule 23, the Court may revisit a prior order granting certification of a class at any time before final judgment." *Rodriguez v. Bumble Bee Foods, LLC*, Case No.: 17cv2447-MMA (WVG), 2018 WL 1920256, at *3 (S.D. Cal. Apr. 24, 2018); *see also Rodriguez*, 563 F.3d at 966 ("[a] district court may decertify a class at any time."). "Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement." *Id.*; *see also Dorsette v. TA Operating LLC*, Case No. ED CV 09-1350 PA (RZx), 2010 WL 11583002, at *4 (C.D. Cal. July 26, 2010) ("the avoidance of the risk of maintaining class action certification throughout trial favors settlement of this

action").

Here, on October 18, 2018, the Court granted class certification to Plaintiff's two proposed classes. (Dkt. 43.) 7-Eleven vigorously opposed class certification, and repeatedly indicated that it planned on appealing that ruling following any adverse decision on the merits. Given 7-Eleven's uniform hiring practices, Plaintiff is confident in his ability to maintain class certification status. However, there still exists the ever-present risk that the Court could decide to decertify or limit the size of the Classes at any point up until final judgment. And even if the risk appears slight, this factor still weighs in favor of approval if it would remove all possible risk. *See McKenzie v. Federal Exp. Corp.*, No. CV 10–02420 GAF (PLAx), 2012 WL 2930201, at *4 (C.D. Cal. July 2, 2002) ("the Court cannot perceive any heightened risk of decertification in this case. Nonetheless, settlement avoids all possible risk. This factor therefore weighs in favor of final approval"). Furthermore, an appeal would present a second review of the Court's decision to grant certification.

Because there still exists a risk of decertification, this factor favors approval.

## D. The Amount Offered In Settlement Should Be Approved.

The next factor asks the Court to compare the amount offered in settlement to the amount of damages available to the class in a successful litigation. *See Litty v. Merrill Lynch & Co., Inc.*, Case No. CV 14–0425 PA (PJWx), 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015). However, "'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.' The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) (citations

omitted). Further, "'the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"" *Id.* (citations omitted). And it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 526 (citations omitted). Further, this factor is bolstered when the settlement is "the product of an arms-length, non-collusive, negotiated resolution." *Salmonson v. Bed Bath and Beyond, Inc.*, Case No. CV 2011-2293-SVW-SS, *et al.*, 2013 WL 12171817, at *6 (C.D. Cal. Mar. 14, 2013).

7-Eleven has agreed to establish a $1,972,500 Settlement Fund from which claimants are currently set to receive $550 each. The Settlement was reached following an adversarial, full-day mediation session and more than a month of continued talks overseen by an experienced third-party neutral, Mr. Michael E. Dickstein. While the total potential recovery in this case could range from $5,215,900 to $52,159,000, these figures assume that Plaintiff succeeds at trial (both in showing that 7-Eleven violated the FCRA and that such violations were willful) and on appeal. This would have been very difficult given 7-Eleven's apparent attempts to comply with the law. Moreover, the Settlement Agreement also requires 7-Eleven to make substantive changes to its background check procedures, which will benefit applicants and employees well into the future. Taken together, these results are impressive and worthy of final approval.

The amount offered in Settlement is further bolstered when comparing the individual payments to class members ($550) to individual payments in similar FCRA settlements. *See Aceves v. Autozone Inc.*, No. 5:14-cv-2032, Dkt. 58 (C.D. Cal. Nov. 18, 2016) ($20 - $40 per class member); *see also Lavalle v. Chex Systems, Inc.*, 8:08–cv–01383 (C.D. Cal. 2011) ($82 per person); *see also Kirchner*

*v. Shred-It USA Inc.*, Civ. No. 2:14–1437 WBS EFB, 2015 WL 1499115, at *11 (E.D. Cal. Mar. 31, 2015) ($45.55 per class member); *see also Feist v. Petco Animal Supplies, Inc.*, Case No.: 3:16-cv-01369-H-MSB, 2018 WL 6040801, at *5 (S.D. Cal. Nov. 16, 2018) ($20 per disclosure class member); *see also Estes v. L3 Technologies, Inc.*, Case No.: 3:17-cv-02356-HLL, 2019 WL 141564, at *6 (S.D. Cal. Jan. 9, 2019) ($75 per class member); *see also Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, Case No. 2:16-cv-1066, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) ($13 - $80 per class member).

Additionally, the Settlement is also reasonable when comparing the total Settlement Fund to FCRA actions with roughly similar class sizes. *See Esomonu v. Omnicare, Inc.*, Case No. 15-cv-02003-HSG, 2019 WL 499750, at *8 (N.D. Cal. Feb. 8, 2019) (approving a $1.3 million settlement with roughly 50,000 class members); *see also Feist v. Petco Animal Supplies, Inc.*, Case No.: 3:16-cv-01369-H-MSB, 2018 WL 6040801, at *7 (S.D. Cal. Nov. 16, 2018) (approving a $1.2 million settlement with 37,000 class members); *see also Pitt v. Kmart Corp., et al.*, Case No. 3:11-cv-00697-JAG-MHL, Dkt. 75 (E.D. Va. May 24, 2013) (approving a $3 million settlement with 64,506 class members).

Consequently, the Court should find that the Settlement provides meaningful relief to class members and compares favorably to other settlements in this space.

### E.    The Extent Of Discovery Completed And The Stage Of Litigation.

"This factor requires the Court to evaluate whether 'the parties have sufficient information to make an informed decision about settlement.'" *In re OSI Systems, Inc. Derivative Litig.*, Case No. CV-14-2910-MWF (MRWx), 2017 WL 5642304, at *4 (C.D. Cal. May 2, 2017) (quoting *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (C.D. Cal. 2017)). "'A court is more likely to approve a settlement if most of the discovery is completed because it suggests that

the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.'" *In re Toys R Us*, 295 F.R.D. at 454 (citation omitted). Further, "'[i]f all discovery has been completed and the case is ready to go to trial, the court obviously has sufficient evidence to determine the adequacy of settlement.'" *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 526 (quoting 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:45 at 129 (4th ed. 2002)).

That counsel possessed sufficient information to make an informed decision about settlement cannot be seriously questioned. Class Counsel spent several months investigating the claims prior filing the complaint. (Woodrow Decl. ¶¶ 3-9.) Further, counsel engaged in substantial discovery—including, serving and responding to multiple sets of discovery requests, serving a subpoena on Sterling Talent Solutions, deposing 7-Eleven's corporate representative, defending Plaintiff's deposition, meeting and conferring regarding discovery disputes, and raising those disputes with the Court when appropriate. (*Id.* ¶ 16.) Moreover, the Settlement was reached following the close of all discovery and in the midst of trial preparations. (*Id.* ¶ 24.) Indeed, all that was left was trial. In short, Class Counsel possessed sufficient evidence to make an informed decision. This factor supports approval as well.

**F.    The Experience And Views Of Class Counsel.**

The next factor considers Class Counsel's experience and view of the adequacy of the Settlement. Generally, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Toys R Us*, 295 F.R.D. at 455 (quotation omitted). The presumption recognizes that experienced counsel "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Id.* (citing *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). The presumption is strengthen when

counsel have experience in the claims being litigated. *See Martin v. AmeriPride Services, Inc.*, No. 08cv440–MMA (JMA), 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011) ("Class Counsel have significant experience in both the substance of wage and hour claims as well as the procedures for class and collective actions. . . As such, their support of the settlement should be accorded significant consideration.").

Class Counsel support the Settlement as being in the best interests of the class members. (Woodrow Decl. ¶¶ 40, 44.) Further, given Class Counsel's significant experience in class actions generally and FCRA class actions specifically, a strong presumption is warranted here. (*See* Woodrow Decl. ¶ 39; *see also* Class Counsel's Firm Resume, attached hereto as Ex. C.) Moreover, the factor is bolstered when considering that Class Counsel faced seasoned defense counsel who were experienced in class litigation and prepared to mount a vigorous defense at trial and on appeal. (Woodrow Decl. ¶¶ 42-43.) Ultimately, the Settlement is the product of Class Counsel's diligent work litigating this case—including, defeating a bid to dismiss the case, certifying two Classes, attending a full-day mediation, engaging in substantial discovery, and briefing cross-motions for summary judgment. Based on their experience with respect to FCRA class actions in general and this litigation in particular, Class Counsel believe that the Settlement provides meaningful relief in the form of substantial monetary payments and prospective relief. (Woodrow Decl. ¶ 40.) Further, when considering the prospect of the class members receiving nothing at all, this is an exceptional result for the class members.

In short, this factor weighs in favor of approval.

### G.     The Presence Of A Government Participant.

No government entity intervened or otherwise participated in this lawsuit. As

such, this factor does not undermine final approval. *See Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. If anything, the absence of such a participant suggests that there is no other mechanism available for securing relief for the Class.

### H.      The Reaction Of The Class Members.

"In order to gauge the reaction of other class members, it is appropriate to evaluate the number of requests for exclusion, as well as the objections submitted." *In re Toys R Us*, 295 F.R.D. at 455. The deadline for class members to exclude themselves or file objections was October 4, 2019. In the end, no class member filed an objection to the Settlement. (Santiago Decl. ¶ 20.) Further, only 19 class members excluded themselves from the Settlement. (*Id.* ¶ 19.) The absence of objectors and relatively small number of opt-outs provides a strong signal of favorability by the class members. *In re Toys R Us*, 295 F.R.D. at 456 ("The negligible number of opt-outs and objections indicates that the class generally approves of the settlement.").

Further, the claims rate also suggests favorable reaction. The filing deadline has now passed, and 1,914 claims had been filed, or 3.67%. (Santiago Decl. ¶ 21.) The final claims rate is well within the typical claims rate for this Circuit. *See Forcellati v. Hyland's Inc.*, No. CV 12–1983–GHK (MRWx), 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (quoting *Ferrington v. McAfee, Inc.*, at * 13, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ("'[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent.'")). As such, the final factor weighs in favor of approval, as well.

In sum, the Settlement provides substantial relief for the class members, particularly in light of the risks faced in the litigation. The Settlement stacks up well against other similar settlements, and, perhaps not surprisingly, the response from the class members has been positive. As such, the Settlement warrants final

approval.

## VI.  Conclusion

For the reasons stated above, Plaintiff respectfully requests that the Court enter an Order granting Final Approval to the Settlement Agreement reached in this case and provide such additional relief as the Court deems necessary and just.

Respectfully Submitted,

**Edwardo Munoz**, individually and on behalf of all others similarly situated,

Dated: October 7, 2019                    By:  */s/ Steven L. Woodrow*
                                            One of Plaintiff's Attorneys

Mike Arias (CSB #115385)
     mike@asstlawyers.com
Alfredo Torrijos (CSB #222458)
     alfredo@asstlawyers.com
**ARIAS SANGUINETTI WANG &
TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696
Facsimile: (310) 861-0168

Steven L. Woodrow (*admitted pro hac vice*)
     swoodrow@woodrowpeluso.com
Patrick H. Peluso (*admitted pro hac vice*)
     ppeluso@woodrowpeluso.com
Taylor T. Smith (*admitted pro hac vice*)
     tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on October 7, 2019.

*/s/ Steven L. Woodrow*